UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 23-8010, 23-8035 _____ Securities and Exchange Commission v. GPB Capital Holdings, LLC

Motion for: stay pending appeal of District Court orders

appointing a receiver

Set forth below precise, complete statement of relief sought:

Defendants-appellants David Gentile, Jeffry Schneider,

and Ascendant Capital LLC move for a stay pending

appeal of the U.S. District Court for the Eastern District

of New York's Orders adopting the Report &

Recommendation of Magistrate Judge Vera M. Scanlon and

appointing a receiver over GPB Capital Holdings, LLC.

Securities and Exchange Commission v.
GPB Capital Holdings, LLC et al.

MOVING PARTY: David Gentile; Jeffry Schneider; Ascendant Capital, LLC    OPPOSING PARTY: Securities and Exchange Commission (unopposed)

☐ Plaintiff    ☑ Defendant

☑ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Jonathan Jeremias    OPPOSING ATTORNEY: Morgan Bradylyons (unopposed)

[name of attorney, with firm, address, phone number and e-mail]

McLaughlin & Stern, LLP    Securities and Exchange Commission

260 Madison Avenue, New York, New York 10016    100 F Street, N.E. Washington, D.C. 20549-9040

212-448-1100; jjeremias@mclaughlinstern.com    202-551-7926; BradylyonsM@SEC.GOV

Court- Judge/ Agency appealed from: United States District Court for the Eastern District of New York - Hon. Margo K. Brodie

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1)?
☑ Yes ☐ No (explain): _____

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

Is the oral argument on motion requested?    ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?    ☐ Yes ☑ No If yes, enter date: _____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:

Has this request for relief been made below?    ☑ Yes ☐ No
Has this relief been previously sought in this court?    ☐ Yes ☑ No

Requested return date and explanation of emergency: _____

Signature of Moving Attorney:
/s/ Jonathan R. Jeremias    Date: 12/21/2023    Service : ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

------------------------------------------------------------x
:
U.S. SECURITIES AND EXCHANGE :
COMMISSION, :
:
: **Case Nos. 23-8010,**
: **23-8035**
Plaintiff-Appellee, : **(Consolidated)**
-against- :
:
ASCENDANT CAPITAL, LLC; :
JEFFRY SCHNEIDER; :
DAVID GENTILE; :
:
:
Defendants-Appellants, :
:
GPB CAPITAL HOLDINGS, LLC; :
ASCENDANT ALTERNATIVE :
STRATEGIES, LLC;   AND :
JEFFREY LASH, :
:
Defendants. :
------------------------------------------------------------x


**UNOPPOSED MOTION TO STAY ORDER PENDING APPEAL**
**BY DEFENDANTS-APPELLANTS DAVID GENTILE, JEFFRY**
**SCHNEIDER, AND ASCENDANT CAPITAL, LLC**

## TABLE OF CONTENTS

ARGUMENT ....................................................................8

   I.   Defendants Would Suffer Irreparable Injury Absent a Stay. ....10

   II. Defendants Have a "Substantial Possibility" of Success on Appeal. .....................................................................13

    A. The District Court Applied the Wrong Standard of Proof. .......13

    B. The SEC Failed to Establish that the Drastic Remedy of a Receiver is Appropriate Under the Governing Factors.................14

      i.  The District Court Acknowledged that the SEC Failed to Show a Likelihood of Success.....................................................17

      ii. There is No "Imminent Danger" to GPB or its Assets. .........18

      iii. Alternative Legal Remedies are Available in Lieu of Receivership. ...................................................................20

      iv. No Fraudulent Conduct by Mr. Gentile.................................21

      v.  Probability of Harm to Defendants Outweighs Any Potential Harm to GPB and its Investors. .................................................21

      vi. This Case Does Not Present "Extreme Circumstances" Such That Appointment of a Receivership is Warranted. ..................23

      vii. A Purported Violation of the Amended Monitor Order Cannot, Without More, Justify the Appointment of a Receiver.25

   III. A Stay of the Order 18 Months After the SEC Requested It Will Not Harm a Party or the Public Interest.........................................26

CONCLUSION................................................................27

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Baliga v. Link Motion Inc.*,
2022 WL 2531535 (S.D.N.Y. Mar. 9, 2022), *report and recommendation adopted by* 2022 WL 3699339 (S.D.N.Y. Aug. 25, 2022) ................................................................. 20

*Brenntag Int'l Chems., Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) ........................................ 10

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
964 F.2d 159 (2d Cir. 1992) ........................................ 12

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
839 F.2d 93 (2d Cir.1988) ........................................... 14

*City of New York v. Golden Feather Smoke Shop, Inc.*,
597 F.3d 115 (2d Cir. 2010) .................................. 15, 18

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) ........................................ 17

*Ferguson v. Birrell*,
190 F. Supp. 506 (S.D.N.Y. 1960), *aff'd, sub nom. Ferguson v. Tabah*,
288 F.2d 665 (2d Cir. 1961) ........................................ 20

*Hirschfeld v. Bd. Of Elections in City of N.Y.*,
984 F.2d 35 (2d Cir. 1993) ....................................... 8, 13

*In re Faiveley Transp. Malmo AB*,
2009 WL 3270854 (S.D.N.Y. Oct. 7, 2009) ................... 19

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987) ..................................... 12, 13

*JDP Mortg. LLC v. Gosman*,
2020 WL 8082390 (E.D.N.Y. Dec. 21, 2020) ........... 17, 20, 24

*Liu v. SEC,*
   140 S. Ct. 1936 (2020) .......................................................... 26

*Meisels v. Meisels,*
   2020 WL 7000903 (E.D.N.Y. May 12, 2020), *report and
   recommendation adopted by* 2020 WL 6110827 (Oct. 16, 2020) ... 16, 26

*Mohawk Indus., Inc. v. Carpenter,*
   558 U.S. 100 (2009) ............................................................. 13

*Nken v. Holder,*
   556 U.S. 418 (2009) ............................................................. 27

*Rosen v. Siegel,*
   106 F.3d 28 (2d Cir. 1997) .................................... 3, 14, 16, 26

*Roso-Lino Beverage Distribs. Inc. v. Coca-Cola Bottling Co. of New York,
   Inc.*, 749 F.2d 124 (2d Cir. 1984) .......................................... 11

*S.E.C. v. Am. Bd. of Trade, Inc.,*
   645 F. Supp. 1047 (S.D.N.Y. 1986), *aff'd*, 830 F. 2d 431 (2d Cir. 1987)
   ..................................................................................... 16

*S.E.C. v. Amerindo Inv. Advisors Inc.,*
   2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013), *aff'd*, 639 F. App'x 752
   (2d Cir. 2016) .................................................................... 17

*S.E.C. v. H. S. Simmons & Co.,*
   190 F.Supp. 432 (S.D.N.Y. 1961) ......................................... 24

*S.E.C. v. Unifund SAL,*
   910 F.2d 1028 (2d Cir. 1990) .................................. 3, 14, 15, 18

*U.S. v. Ianniello,*
   No. 86 Civ. 1552 (CSH), 1986 WL 4685 (S.D.N.Y. Apr. 16, 1986).. ....23

*U.S. v. Philip Morris Inc.,,*
   314 F.3d 612 (D.C. Cir. 2003)............................................... 13

*Wells Fargo Bank, Nat'l Ass'n as Tr. for Benefit of Registered Holders of
   UBS Com. Mortg. Tr. 2017-C2, Com. Mortg. Pass-Through*

*Certificates, Series 2017-C2 v. 3708 Vestal Pkwy E., LLC*, 2023 WL
    4741216 (S.D.N.Y. July 25, 2023) ...................................................20, 23

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................15

*Yang v. Kosinski,*
    960 F. 3d 119 (2d Cir. 2020) .........................................................14, 18

**Statutes**

28 U.S.C.A. § 1292(a)(2) ...........................................................................8

**Rules**

Fed. R. Civ. P. 60(b)...................................................................................6

**Other Authorities**

Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure § 2983 (1999) ......................................17

## CORPORATE DISCLOSURE STATEMENT

No publicly held corporation, parent corporation, or other corporation owns or owns stock in Defendant-Appellant Ascendant Capital, LLC.

## **INTRODUCTION**

Defendants David Gentile, Jeffry Schneider, and Ascendant Capital, LLC respectfully move for a stay pending appeal of the extraordinary Orders issued by the U.S. District Court for the Eastern District of New York (Brodie, J.) on December 7, 2023, adopting the Report & Recommendation (the "R&R") of Magistrate Judge Vera M. Scanlon (the "Magistrate") and appointing a receiver. Dkt. Nos. 186, 187 ("the Orders").[1]

Well over a year after the SEC filed an "emergency motion" for the appointment of a receiver, and without oral argument or an evidentiary hearing, the District Court adopted the R&R and appointed a receiver over GPB Capital Holdings, LLC ("GPB"), a company that Gentile founded and owns.[2] The Orders deprive Gentile of the few remaining rights he has over his company, which has constituted the majority of his livelihood for the last ten years, all without any finding of liability (or even likelihood of such) in the underlying action, and with Gentile's criminal case less than six months away.

_____

[1] The District Court docket is attached at Exhibit A. The R&R is attached at Exhibit B. The Orders are attached at Exhibits C and D.
[2] The court also imposed a litigation injunction.

The District Court took this drastic step after applying the wrong standard of proof and despite finding that (1) "the SEC's probability of success [on the merits] is unclear," Dkt. No. 186 at 31, and (2) it is also "unclear" whether there are alternative legal remedies to a receivership (there are several). Dkt. No. 186 at 29. The District Court also found that it could order a receivership solely due to Gentile's purported violation of the underlying Amended Monitor Order—irrespective of whether the receivership was "clearly necessary"—a purported violation that arose because Gentile sought relief under Delaware Law, which the Monitor, GPB, and the Magistrate recognized as the proper authority governing their disputes.

Under Second Circuit precedent, the District Court's findings are fatal to a motion for receivership, as there is a high burden requiring: (1) a "clear" showing that a receivership is "necessary" to protect and preserve a company's assets, *Rosen v. Siegel,* 106 F.3d 28, 34 (2d Cir. 1997); and (2) the SEC to make a "more substantial showing of likelihood of success" on the underlying allegations than in cases seeking less onerous injunctions, *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990). The District Court instead held that the SEC could

3

meet its burden by a mere "preponderance of the evidence," a significantly lower standard than the "clear" showing this Court requires and without the necessary finding of likelihood of success on the merits.

Unless stayed, the putative Receiver intends to "liquidat[e] [the] remaining assets" of GPB's portfolio companies and wind up GPB as a going concern. *See, e.g.*, Dkt. No. 90 (Gardemal Decl. ¶¶ 24, 30). Further, the Receiver will be empowered to waive GPB's attorney-client privilege less than six months before Gentile's and Schneider's criminal trial. Liquidation of GPB and waiver of GPB's privileges, without any process that would prevent disclosure of material protected by joint privileges held by Defendants, are severe actions that once taken cannot be undone. Without a stay, Defendants' right to appeal will be eviscerated given the permanent nature of the Receiver's intended actions. Moreover, a stay is essential to allow this Court to reinforce the threshold requirements for taking the drastic step of appointing a receiver, which effectively permanently deprives a party of property and rights, and which the District Court erroneously overlooked. Given the substantial possibility of Defendants' success on appeal, a stay is

crucial.

## **BACKGROUND**

In response to an "emergency motion by the SEC" on February 8, 2021, the District Court entered an order on February 12, 2021, appointing Joseph T. Gardemal, III as the independent monitor ("Gardemal" or the "Monitor").  Dkt. No. 23 (later modified to the "Amended Monitor Order" on April 14, 2021, Dkt. No. 39).  Since the Monitor's appointment, Gentile has tried in good faith and through proper legal channels to clarify his rights with respect to GPB to obtain information from GPB and the Monitor in order to defend himself in the criminal case and to access records needed to file personal tax returns.

Gentile sought relief from the Court through the mediation provisions in the Amended Monitor Order regarding the scope of his rights as a Member of GPB under GPB's Operating Agreement and Delaware law.  The Monitor refused to engage with Gentile, GPB effectively rebuffed Gentile's efforts to resolve outstanding issues, and the District Court denied Gentile's motion for mediation, instead telling Gentile to seek relief under Delaware law.  *See, e.g.,* April 28, 2022 Order denying Motion to Request Mediation.  On May 27, 2022, after

consulting with counsel, Gentile provided written notice to GPB, as required by GPB's Operating Agreement, that he intended to appoint three new Managers pursuant to his rights under the Operating Agreement and Delaware law. *See* Dkt. No. 168-10.

On May 31, 2022, Gentile's counsel filed a motion under F.R.C.P. 60(b) to maintain but adjust the Monitor's responsibilities to clarify Gentile's rights with respect to GPB. Dkt. Nos. 79-83. On June 13, 2022, the SEC filed an emergency motion seeking an order appointing a receiver and imposing a litigation injunction (the "SEC's Motion"), arguing that Gentile's May 27, 2022 appointment of three additional Managers and amendment of GPB's Operating Agreement ("Appointments and Amendments") violated the Amended Monitor Order. Dkt. No. 89. Gentile, Schneider, and Ascendant Capital opposed the SEC's Motion and requested oral argument and an evidentiary hearing. Dkt. Nos. 99, 106; *see also* Dkt. Nos. 131, 141.

The Magistrate did not hold an evidentiary hearing or oral argument. Rather, on July 28, 2023, **over a year** after the SEC's "emergency" motion, and without pointing to any dissipation of assets or actual harm, the Magistrate issued the R&R. Dkt. No. 157. The

R&R found that the Appointments and Amendments caused GPB to violate the Amended Monitor Order. Despite GPB's immediate rejection of the Appointments and Amendments and refusal to give them any force or effect, *see* Dkt. No. 168-3 (attached at Exhibit G), the Magistrate ruled that GPB failed to cure the purported violation and recommended the appointment of a receiver, approval of the SEC's Receivership Order, and entry of the proposed litigation injunction. Dkt. No. 157. Defendants objected to the R&R and again requested oral argument and an evidentiary hearing. Dkt. Nos. 167, 168 ("Gentile Obj." and "Schneider Obj."); *see also* Dkt. Nos. 170, 171, 175, 176. On December 7, the District Court adopted the R&R without any argument or hearing and entered the Orders.

The following day, on December 8, Gentile's counsel wrote to the Receiver asking him to refrain from certain actions while Defendants sought a stay of the Orders or, in the alternative, meet and confer on issues that could have avoided the necessity of this motion. Dkt. No. 189-3 (attached at Exhibit E). On December 9, the Receiver made clear he would not meet and confer or otherwise consider Defendants' good faith request. Dkt. No. 189-4 (attached at Exhibit F). On December 12,

Defendants noticed an appeal of the Orders, and filed in the District Court a Motion for Order to Show Cause accompanied by a Motion to Stay the Orders pending appeal. Dkt. Nos. 188-189. On December 14, the District Court denied Defendants' Motion for Order to Show Cause but granted a temporary stay of the Orders pending this Court's review of a motion to stay. The Orders are immediately appealable under 28 U.S.C.A. § 1292(a)(2).

## **ARGUMENT**

In deciding whether to stay an order pending appeal, the Court considers: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Hirschfeld v. Bd. Of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (citations omitted) (quotation marks omitted).

Defendants are entitled to a stay pending appeal of the Orders. Absent a stay, Defendants will suffer irreparable harm as the Receiver aims to liquidate GPB and waive GPB's privileges, without any process

to ensure materials and communications in which Defendants have a privilege interest are protected from disclosure, all while criminal and civil cases are pending against Defendants—severe actions which cannot be undone.

Further, there is more than a substantial possibility that Defendants will prevail on appeal, as the District Court's appointment of a receiver contravenes controlling precedent. The District Court: (1) employed the wrong standard of proof in finding that appointment of a receiver is appropriate; (2) erred in its analysis of the governing factors warranting appointment of a receiver, particularly when, *in contravention of this Court's precedent*, it appointed a receiver despite the SEC's failure to make *any* showing of likelihood of success on the merits and risk of reoccurrence, let alone a substantial showing as required; and (3) held that a purported violation of the Amended Monitor Order—*without more*—can properly be grounds for receivership. Without a stay, the appeal will be rendered meaningless, and this Court will lose the opportunity to rule on the appropriate standard a district court should apply before taking the drastic and irreversible step of appointing a receiver.

Finally, neither the SEC nor the Monitor can credibly argue that the public interest will be harmed if the Orders are stayed. While the underlying motions for appointment of a receiver were pending *for eighteen months*, GPB's assets have remained unimpeded under the Monitor's watch, and nothing prevents the Monitor (who would remain in place if the Orders are stayed) from approving a distribution plan to investors, which GPB has repeatedly announced it intends to do since the appointment of the Monitor in February 2021.

## I. Defendants Would Suffer Irreparable Injury Absent a Stay.

Irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Defendants would suffer at least two forms of irreparable harm, and their right to appeal the Orders will be meaningless if this Court denies this motion.

<u>First</u>, if the monitorship is converted to a receivership, the putative Receiver intends to liquidate GPB and its portfolio companies

and wind up GPB as a going concern.[3]  *See, e.g.*, Dkt. No. 90 (Gardemal
Decl. ¶¶ 24, 30); Dkt. No. 85; *accord* Dkt. No. 89 at 2.  "The loss . . . of
an ongoing business representing many years of effort and the
livelihood of its . . . owners[] constitutes irreparable harm."  *Roso-Lino
Beverage Distribs. Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749
F.2d 124, 125-26 (2d Cir. 1984).

Gentile is the founder and sole owner of GPB, which has portfolio
companies with significant assets under management as part of GPB's
funds.  *See, e.g.*, Dkt. No. 171 (GPB representing that it still has
"remaining Portfolio Companies left to manage across the GPB Funds").
The sale of GPB's remaining portfolio companies would leave GPB and
its funds without any assets under management and would effectively
cease GPB's operations—a bell that cannot be un-rung.[4]

Second, the Orders give the Receiver "sole authority" to "waive,

---

[3] GPB also supports liquidation of its assets.  *See* Dkt. No. 171 at 24
(stating that "[t]he liquidation of [GPB's] assets can also be a proper
purpose" for appointment of a receiver).

[4] Although Gentile opposes liquidation of GPB's remaining assets, he and
Schneider have repeatedly encouraged GPB to propose a reasonable plan
for distributions to investors.  *See*, *e.g.*, Dkt. Nos. 131, 175 at Ex. B; *see
also* Dkt. Nos. 160, 167 at 17, 176 at 8.

assign or release" GPB's privileges, which includes "any and all attorney-client privilege, work product protection, common interest or joint defense privilege, or other privilege or immunity," including GPB's joint defense privileged communications with Defendants. Dkt. No. 187 ¶ 28. The putative Receiver has signaled that he intends to waive privilege, as he rebuffed Defendants' requests to refrain from doing so while Defendants sought a stay. Dkt. Nos. 189-3, 189-4. This could result in the disclosure of an enormous volume of joint-client and joint-defense communications, without any required prior notice to Defendants or procedure to safeguard Defendants' privilege interests in such materials. *See* Dkt. No. 99-1 at ¶¶ 3-6.

This Court has previously recognized that the harm arising from such disclosures is irreparable. *See, e.g.*, *In re von Bulow*, 828 F.2d 94 (2d Cir. 1987) (granting writ of mandamus to permit interlocutory review of discovery orders, based, in part, on the conclusion that disclosure of privileged information would create irreparable harm); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992) (same). When an order "brushes aside a litigant's claim of a privilege[,]" leading to disclosures of such material, subsequent

review by the Court as "a remedy is inadequate at best." *In re von Bulow*, 828 F.2d at 98.

The risk of harm is especially acute here, where the government may seek to use such privileged material to gain a tactical advantage against Defendants in pending criminal and civil litigation. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (recognizing injury where "attorneys for the United States would be able to use the [potentially privileged documents] to pursue new leads on discovery and witness questioning[,]" the harms of which "would be very difficult to remedy on appeal."), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). A stay of the Orders is necessary to avoid such irreparable harm and enable meaningful appellate review of the Orders.

## II. Defendants Have a "Substantial Possibility" of Success on Appeal.

A party seeking a stay pending appeal must show "a substantial possibility, although less than a likelihood, of success on appeal[.]" *Hirschfeld*, 984 F.2d at 39. As demonstrated below, Defendants have more than "a substantial possibility" of success on appeal.

## A. The District Court Applied the Wrong Standard of Proof.

The District Court held, without citing authority, that the proper standard of proof is "by a preponderance of the evidence." Dkt. No. 186 at 25. This standard directly contravenes Second Circuit precedent that appointment of a receiver must be based on a "clear" showing that such relief is "necessary" to protect the plaintiff's interest in the property. *See, e.g., Rosen*, 106 F.3d at 34 ("'[T]he appointment of a receiver is considered to be ***an extraordinary remedy'***, and should be employed cautiously and granted ***only when clearly necessary*** to protect plaintiff's interests in the property.") (emphasis added) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988)).

Further highlighting the court's error is the litany of Second Circuit cases holding that a movant must meet a higher burden in entering a mandatory injunction like a receivership. *See, e.g., Unifund*, 910 F.2d at 1039 ("[P]laintiffs have been put to a more rigorous burden in obtaining preliminary injunctions that order some form of mandatory relief. We have said that a ***clear showing*** is required where the injunction is mandatory.") (emphasis added) (citations omitted); *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (where the movant is

seeking to modify the status quo by virtue of a "mandatory preliminary injunction," the movant must "(1) make a ***strong showing of irreparable harm*** and (2) demonstrate a ***clear or substantial likelihood of success on the merits***.") (emphasis added) (citations omitted); *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010) (to issue a mandatory injunction, a court must find that the government has made a "***clear***" *and* "***substantial showing of a likelihood of success, both as to [the underlying] violation and risk of recurrence***") (emphasis added) (quoting *Unifund*, 910 F.2d at 1039).

Indeed, the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), held that "[i]ssuing a preliminary injunction based only on a ***possibility of irreparable harm*** is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a ***clear showing that the plaintiff is entitled to such relief***." *Id.* at 22 (emphasis added) (citations omitted).

This case law demonstrates that the District Court erred in relaxing one of the requirements for appointment of a receiver based on

the SEC's purported showing made on other prongs. Here, the SEC seeks the most onerous of burdens—appointment of a receiver that deprives Gentile of significant rights over his own company. Accordingly, a "clear" showing is required—a significantly higher burden than a mere preponderance of the evidence applied by the District Court.

At the very least, the standard of proof that applies when appointing a receiver is a "serious question" necessitating this Court's review. Indeed—in addition to contradicting clear Second Circuit and Supreme Court precedent—the District Court's interpretation of the governing standard is also contrary to numerous district court decisions applying Second Circuit law. *See, e.g.*, *Meisels v. Meisels*, 2020 WL 7000903, at *5 (E.D.N.Y. May 12, 2020) ("the burden is on the moving party to show by ***clear and convincing*** evidence that such relief is necessary.") (emphasis added) (citing *Rosen*, 106 F.3d at 34), *report and recommendation adopted by* 2020 WL 6110827 (Oct. 16, 2020); *S.E.C. v. Am. Bd. of Trade, Inc.*, 645 F. Supp. 1047, 1052 (S.D.N.Y. 1986) ("The appointment of a receiver is an extraordinary remedy to be invoked only in cases of necessity and upon a ***clear showing that an emergency***

*exists*.") (emphasis added) (citations omitted), *aff'd*, 830 F.2d 431 (2d Cir. 1987); *see also JDP Mortg. LLC v. Gosman*, 2020 WL 8082390, at *2 (E.D.N.Y. Dec. 21, 2020) ("In the Second Circuit, the appointment of a receiver is considered to be an extraordinary remedy that should be employed cautiously and granted only when ***clearly necessary*** to protect plaintiff's interests in the property.") (emphasis added) (citations omitted) (quotation marks omitted).

## B. The SEC Failed to Establish that the Drastic Remedy of a Receiver is Appropriate Under the Governing Factors.

The Order relies upon *Eberhard v. Marcu*, 530 F.3d 122 (2d Cir. 2008), *S.E.C. v. Amerindo Inv. Advisors Inc.*, 2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013), *aff'd*, 639 F. App'x 752 (2d Cir. 2016), and Wright & Miller § 2983, in determining appointment of a receivership is warranted. The court not only ignored binding precedent that a pre-requisite to appointment of a receivership is a substantial or "clear" showing of likelihood of success on the merits, risk of recurrence, and imminent harm, but also erroneously applied the factors imported from the aforementioned authorities.

> i. *The District Court Acknowledged that the SEC Failed to Show a Likelihood of Success.*

The District Court found "that the SEC's probability of success [on the merits] is unclear." Dkt. No. 186 at 30. Such a finding is fatal to the SEC's Motion under this Court's precedent, which dictates that the SEC must make a ***more substantial*** showing than just likelihood of success, a bar that (as the District Court recognized) the SEC failed to meet. *Unifund*, 910 F.2d at 1039 ("[E]ven when applying the traditional standard of 'likelihood of success,' a district court, exercising its equitable discretion, should bear in mind the nature of the preliminary relief the Commission is seeking, and ***should require a more substantial showing of likelihood of success, both as to [the underlying] violation and risk of recurrence, whenever the relief sought is more than preservation of the status quo***.") (emphasis added) (citations omitted); *see also Yang*, 960 F.3d at 127-28; *Golden Feather*, 597 F.3d at 121. This factor alone establishes Defendants' substantial possibility of success on appeal.

ii. *There is No "Imminent Danger" to GPB or its Assets.*

In finding there is "imminent harm" to GPB and its assets, the District Court pointed to: "(1) appointment of new managers, whose collective compensation could reach over $1.2 million annually to be

paid by GPB, and (2) [Gentile's] attempt to reinstate three terminated executives of a company directly overseen by GPB, whose collective compensation amounts to nearly $1.7 million annually to be paid by GPB[.]" Dkt. No. 186 at 29. Setting aside the undisputed fact that nothing happened (and no compensation was paid) as a result of the Appointments and Amendments because GPB rejected them outright, the court also ignored that GPB has substantial assets that have not been impacted in any way by Gentile's actions, and that the passage of time alone—*eighteen months* after the SEC filed its "emergency" motion for appointment of a receiver—demonstrates that Gentile's actions have not hurt GPB's finances. Instead, in keeping with its public announcements over nearly the last two years, GPB is and remains fully able to both distribute funds to investors and operate the remaining portfolio companies. *See In re Faiveley Transp. Malmo AB*, 2009 WL 3270854, at *2 (S.D.N.Y. Oct. 7, 2009) (finding no "imminent harm" justifying a preliminary injunction where most recent harmful conduct occurred one year prior); *see also Wells Fargo Bank, Nat'l Ass'n as Tr. for Benefit of Registered Holders of UBS Com. Mortg. Tr. 2017-C2, Com. Mortg. Pass-Through Certificates, Series 2017-C2 v. 3708*

*Vestal Pkwy E., LLC*, 2023 WL 4741216, at *5 (S.D.N.Y. July 25, 2023)
(no imminent threat of harm where—despite allegations of
misappropriating rents and/or mismanagement of assets—the value of
the asset at issue had not diminished).

      iii.    *Alternative Legal Remedies are Available in Lieu of
             Receivership.*

      The District Court found it "unclear" whether alternative legal
remedies—like imposition of a financial penalty—exist.  Dkt. No. 186 at
29.  This lack of clarity is fatal to its appointment of a receivership.  *See
Gosman*, 2020 WL 8082390, at *2 (appointment of a receiver "justified
only where there is a clear necessity to protect a party's interest in
property, [and] legal and ***less drastic equitable remedies are
inadequate***[.]") (emphasis added); *Baliga v. Link Motion Inc.*, 2022 WL
2531535, at *17 (S.D.N.Y. Mar. 9, 2022) (discharging receiver where
plaintiff failed to show inadequacy of available legal remedies, finding
plaintiff could not "meet his heavy burden") (citations omitted), *report
and recommendation adopted by* 2022 WL 3699339 (S.D.N.Y. Aug. 25,
2022); *Ferguson v. Birrell*, 190 F. Supp. 506, 511 (S.D.N.Y. 1960), *aff'd,
sub nom. Ferguson v. Tabah*, 288 F.2d 665 (2d Cir. 1961) (reserving
"decision on the request for the appointment of a receiver . . . to follow a

less stringent course designed to preserve the status quo") (citations omitted).

### iv. *No Fraudulent Conduct by Gentile.*

The Order points to "significant concerns" regarding Gentile's credibility, presumably in support of the first Wright & Miller factor the Order discusses—"[f]raudulent conduct on the part of [the] defendant." Dkt. No. 186 at 25, 27. The District Court adopted—without any fact-finding of its own—the SEC's allegation that "[i]n his sworn testimony under oath before the [SEC] in February 2020, Gentile admitted that he knew that investor money was being used to pay distributions to investors, contrary to GPB's representations to investors." Dkt. No. 186 at 27. Without full context, these isolated statements prove nothing, and, in any event, these issues will be resolved at trial in less than six months. Furthermore, the actions relevant to this inquiry—the Appointments and Amendments—were not fraudulent and Gentile took them only after the Magistrate expressly recognized that Gentile should seek relief under Delaware law. *See, e.g.,* Dkt. No. 102, Ex. F.

### v. *Probability of Harm to Defendants Outweighs Any Potential Harm to GPB and its Investors.*

The Order fails to conduct any review of the facts in balancing the

probability of harm to Defendants against that of GPB and its investors, merely stating "***Judge Scanlon found that***" GPB's investors will benefit from having a Receiver "preserve the status quo," "the existing estate," and prevent the dissipation of assets by preventing Gentile from "undermining GPB's finances through improper access to funds and information." Dkt. No. 186 at 30 (emphasis added). This finding was made without any evidentiary support, and in contravention to evidence that there has been absolutely no harm to GPB, supported by the fact that the motion was pending for eighteen months without the supposed harm coming to pass. Further, the current monitorship adequately preserves the status quo as the District Court intended when it appointed the Monitor in February 2021, whereas a receivership would significantly alter the status quo to the detriment of Defendants and likely to investors from premature liquidation of GPB's assets.

The Order also ignores the harm that would result from the Receiver's ability to waive privilege, and refusal to require any procedure to preserve the privileges that are jointly held by Defendants. This harm—particularly considering the impact that a full or even

partial privilege waiver and any resulting improper disclosure could have on Defendants' upcoming criminal trial—far outweighs the speculative harm to the investors while GPB's assets remain under continued monitorship, and all while GPB has consistently pronounced its readiness to make distributions to investors. Furthermore, the Receiver's stated intention to liquidate GPB's assets would cause substantial harm to Gentile as GPB's owner, a fact the District Court ignored.

> vi. *This Case Does Not Present "Extreme Circumstances" Warranting Appointment of a Receiver.*

The District Court found this case to be one of "extreme circumstances" warranting appointment of a receiver. Dkt. No. 186 at 32. But comparison with other cases in this circuit shows that is erroneous. *See e.g.*, *U.S. v. Ianniello*, No. 86 Civ. 1552 (CSH), 1986 WL 4685, at *5 (S.D.N.Y. Apr. 16, 1986) (declining to "appoint[] a receiver . . . on the basis of inference of continued wrongdoing alone[]" where underlying indictment had resulted in a conviction); *3708 Vestal Pkwy*, 2023 WL 4741216, at *5 (no imminent threat of harm where—despite allegations of misappropriating rents and/or mismanagement of assets—the value of the asset at issue had not diminished); *Gosman*,

2020 WL 8082390, at *3 (denying receivership motion where movant had not "submitted any reliable documentation regarding the amount by which [the nonmovant] ha[d] allegedly diminished the value of the [p]roperty."); *S.E.C. v. H. S. Simmons & Co.*, 190 F.Supp. 432, 432 (S.D.N.Y. 1961) (appointment of receiver appropriate because corporate defendant was insolvent and continued to engage in unauthorized use and sale of customers' securities).

The District Court also pointed to "the gravity of the allegations and that [another defendant charged in the indictment] has already pled guilty to criminal charges, that GPB's investors have been unable to access their funds for more than thirty-four months, and that GPB's management and Gentile have proven unable to agree or work together to implement GPB's future strategy." Dkt. No. 186 at 31. As recognized by the District Court, an indictment alone is not proof of guilt. Dkt. No. 186 at 30. Nor can a co-defendant's guilty plea be proof of Defendants' guilt. Second, that investors have been "unable to access their funds," is wholly unrelated to Gentile or his actions. The Monitor is currently empowered to approve a distribution plan by GPB, GPB has repeatedly announced its intention to make investor distributions, and Defendants

have repeatedly stated their support for an appropriate distribution

plan. *See, e.g.*, Dkt. Nos. 131, 175 at Ex. B.

> vii. *A Purported Violation of the Amended Monitor Order Cannot, Without More, Justify the Appointment of a Receiver.*

The Order reasons that, "[b]ecause of GPB's violations [of the

Amended Monitor Order] and failure to cure, the Court has authority to

convert the monitorship to a receivership pursuant to paragraph 21 of

the Amended Order[.]" Dkt. No. 186 at 22. Paragraphs 20 and 21 of

the Amended Monitor Order provide:

> If the Monitor believes GPB is in some way not materially in compliance with the terms of this Order, upon notice of noncompliance to GPB, GPB shall have 10 business days in which to cure any claimed material noncompliance . . . If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership.

Amended Monitor Order at ¶¶ 20-21.

Even if Gentile's actions caused a violation, that alone cannot

justify the appointment of a receiver. The conversion to a receivership

provided for in paragraphs 20 and 21 rests upon the Monitor's "belief" of

GPB's noncompliance with the Amended Monitor Order. This is plainly

contrary to law because the Amended Monitor Order does not require

that a receivership only be appointed "cautiously" and when "clearly necessary" to protect investors' interests in GPB, *see Rosen*, 106 F.3d at 34, nor does it require the SEC in its motion seeking a receiver to "show by clear and convincing evidence that such relief is necessary."[5] *Meisels*, 2020 WL 7000903, at *5. Stated differently, a district court cannot ignore binding precedent governing the standards for appointment of a receiver by simply issuing an order with lesser standards.[6]

### III. A Stay the Orders Eighteen Months After the SEC's Motion Will Not Harm a Party or the Public Interest.

The final two factors courts consider in deciding whether to grant a stay pending appeal are whether there would be harm to any party or to the public interest if the stay is granted. *See Nken v. Holder*, 556 U.S. 418, at 435 (2009). When the Government is a party, these two

---

[5] Ironically, the District Court relied on the Amended Monitor Order to lower the standard having already ruled that Gentile has no rights under and is not a party to the very same Amended Monitor Order. *See* April 28, 2022 Order denying Motion to Request Mediation.

[6] The District Court also rested the receivership on its purported "power to punish for a disobedience of" the Amended Order. Dkt. No. 186 at 13. To the contrary, the Supreme Court has recognized that "equity historically excludes punitive sanctions." *Liu v. SEC*, 140 S. Ct. 1936, 1937 (2020).

factors merge. *See id.* at 435. Neither GPB, its investors, the SEC, nor the public interest, will be harmed if the Orders are stayed: (1) GPB will continue to operate under the supervision of the Monitor and GPB management; (2) GPB's significant assets will be preserved under the Monitor's watch—assets that can and should be distributed to investors under an appropriate plan; and (3) Gentile has agreed not to take any further unilateral action with respect to GPB, *see* Dkt. No. 168-8. The fact that Gentile's Rule 60 Motion and the SEC's Motion remained unresolved for approximately eighteen months demonstrates that there will be no harm to the public if the Orders are stayed pending resolution of Defendants' appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants are entitled to a stay of the Orders pending appeal.

Dated: December 21, 2023

Respectfully submitted,

**MCLAUGHLIN & STERN, LLP**

By:
*/s/ Jonathan R. Jeremias*
Jonathan R. Jeremias
Daniel J. Horwitz
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
JJeremias@mclaughlinstern.com

**KOBRE & KIM LLP**

*/s/ Adriana Riviere-Badell*
Matthew I. Menchel
Adriana Riviere-Badell
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Tel.: (305) 967-6100
Fax: (305) 967-6120
Adriana.Riviere-Badell@kobrekim.com

*Attorneys for Defendant David Gentile*

**ARENTFOX SCHIFF LLP**

*/s/ Glenn C. Colton*
Glenn C. Colton
1301 Avenue of the Americas, 42nd
Floor
New York, NY 10019
Tel.: (212) 484-3900

Fax: (212) 484-3990
Glenn.Colton@afslaw.com

Michael Dearington
1717 K Street NW
Washington, D.C. 20006-5344
Tel.: (202) 857-6000
Fax: (202) 857-6395
Michael.Dearington@afslaw.com

*Attorneys for Defendants Jeffry*
*Schneider and Ascendant Capital, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Jonathan Jeremias, a partner at McLaughlin & Stern LLP, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 5,151 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

*/s/ Jonathan Jeremias*

# EXHIBIT A

Query    Reports    Utilities    Help    Log Out

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00583-MKB-VMS

Securities and Exchange Commission et al v. GPB Capital
Holdings, LLC et al
Assigned to: Chief Judge Margo K. Brodie
Referred to: Magistrate Judge Vera M. Scanlon
Cause: 12:22 Securities Fraud

Date Filed: 02/04/2021
Jury Demand: Plaintiff
Nature of Suit: 850 Securities/Commodities
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Securities and Exchange Commission**          represented by   **David Paul Stoelting**
Securities and Exchange Commission
100 Pearl Street
Ste 20-100
New York, NY 10004-2616
212-336-0174
Fax: 212-336-1323
Email: stoeltingd@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard R. Best**
U.S. Securities and Exchange Commission
New York Regional Office
200 Vesey Street
Ste 400
New York, NY 10281
212-336-0042
Email: bestr@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin McNamara Pauley**
Securities and Exchange Commission
175 W. Jackson Blvd.
Suite 1450
Chicago, IL 60604
312-886-3936
Email: pauleyk@sec.gov
*ATTORNEY TO BE NOTICED*

**Lindsay Senechal Moilanen**
Securities and Exchange Commission
100 Pearl Street
Ste 20-100
New York, NY 10004

212-336-1021
Email: moilanenl@sec.gov
*ATTORNEY TO BE NOTICED*

**Neal Jacobson**
US Securities & Exchange Commission
100 Pearl Street
Suite 20-100
New York, NY 10004
212-336-0095
Email: jacobsonn@sec.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**GPB Capital Holdings, LLC**                    represented by **Gina Marie Parlovecchio**
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
212-506-2522
Email: gparlovecchio@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Glen A. Kopp**
Mayer Brown LLP
Litigation
1221 Avenue of the Americas
New York, NY 10020
212-506-2648
Email: gkopp@mayerbrown.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen M. Medow**
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
212-592-1400
Fax: 212-545-2354
Email: smedow@herrick.com
*TERMINATED: 07/27/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Michael Rosenfield**
Lucosky Brookman
101 Wood Ave S
25th Floor
08832
Woodbridge, NJ 08832
732-712-2703

Email: drosenfield@lucbro.com
*TERMINATED: 07/27/2021*
*ATTORNEY TO BE NOTICED*

**Howard R. Elisofon**
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
212-592-1437
Fax: 212-545-3366
Email: helisofon@herrick.com
*TERMINATED: 07/27/2021*
*ATTORNEY TO BE NOTICED*

**Steven L Hayes**
Steven L. Hayes PA
P.O. Box 4929
Clearwater, FL 33758
727-238-5754
Email: steve@slhayespa.com
*TERMINATED: 03/13/2023*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ascendant Capital, LLC**　　　　represented by　**Apeksha Vora**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: apeksha.vora@afslaw.com
*ATTORNEY TO BE NOTICED*

**Glenn Charles Colton**
ArentFox Schiff LLP
1301 Avenue of the Americas 42, Fl
New York, NY 10019
212-484-3900
Fax: 212-484-3990
Email: glenn.colton@afslaw.com
*ATTORNEY TO BE NOTICED*

**Michael Dearington**
Arent Fox LLP
1717 K Street NW
Washington, DC 20006
202-715-8495
Email: michael.dearington@afslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ascendant Alternative Strategies, LLC**　　represented by　**Joseph Craig Lawlor**
Haynes Boone LLP
30 Rockefeller Plaza

26th Floor
New York, NY 10112
212-659-4985
Fax: 212-884-9574
Email: joseph.lawlor@haynesboone.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Gentile**                    represented by    **Gregory Scott Bruch**
Bruch Law Group PLLC
1099 New York Ave NW
Suite 500
Washington, DC 20001
202-969-1631
Email: gbruch@bruchlawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sandra Hanna**
Sandra M. Hanna
Bruch Hanna LLP
1250 I Street NW Suite 505
Washington, DC 20005
(202)969-1632
Fax: (202)969-1625
Email: shanna@milchev.com
*TERMINATED: 06/22/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel James Horwitz**
McLaughlin & Stern LLP
260 Madison Avenue
20th Floor
New York, NY 10016
212-448-1100
Email: dhorwitz@mclaughlinstern.com
*ATTORNEY TO BE NOTICED*

**Jonathan Robert Jeremias**
McLaughlin & Stern LLP
260 Madison Avenue
New York, NY 10016
212-448-1100
Fax: 212-448-0066
Email: jjeremias@mclaughlinstern.com
*ATTORNEY TO BE NOTICED*

**Kimberly Jones**
Dynamis LLP
261 Madison Ave
9th Floor
New York, NY 10016

212-471-8526
Email: kjones@mclaughlinstern.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeffry Schneider**                    represented by **Apeksha Vora**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Glenn Charles Colton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Dearington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeffrey Lash**                        represented by **Derrelle Marcel Janey**
The Janey Law Firm P.C.
111 Broadway
Suite 701
New York, NY 10006
646-289-5276
Email: djaney@thejaneylawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Curtis Gottlieb**
Robert C. Gottlieb Associates PLLC
Robert C. Gottlieb & Associates PLLC
111 Broadway
Suite 701
NY
New York, NY 10006
212-566-7766
Email: rgottlieb@robertcgottlieblaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Bohnenkamp Living Trust**             represented by **Joseph Evan Sarachek**
The Sarachek Law Firm
670 White Plains Road
Penthouse Suite
Scarsdale, NY 10583
646-517-5420
Fax: 646-861-4950
Email: joe@saracheklawfirm.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Joseph T. Gardemal III**              represented by **Robert B. Buehler**
Hogan Lovells US LLP

390 Madison Avenue
New York, NY 10017
212-918-3261
Fax: 212-918-3100
Email: robert.buehler@hoganlovells.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas A. Fellman**
Hogan Lovells US LLP
555 13th Street Nw
Washington, DC 20004
202-637-5714
Fax: 202-637-5910
Email: douglas.fellman@hoganlovells.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**People Of The State Of New York**          represented by   **Kevin Christopher Wallace**
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
212-416-6376
Fax: 212-416-8816
Email: kevin.wallace@ag.ny.gov
*LEAD ATTORNEY*

**Jesse Devine**
NYS Office of The Attorney General
Investor Protection Bureau
28 Liberty Street
Ste 21st Floor
New York, NY 10005
212-416-8741
Fax: 212-416-6042
Email: jesse.devine@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Interested Party**
**Barbara DeLuca**

**Interested Party**
**Drew R. Naylor**

**Interested Party**
**Peggy Rollo**

**Interested Party**
**Peter Beddia**

**Interested Party**

**Michael Oles**

**Interested Party**

**Robert Ricc**

**Interested Party**

**James Staples, as Trustee of the 616
Moved Trust**

V.

**Amicus**

**FSC Securities Corp.**                    represented by **Alan Smith**
                                            Markun Zusman & Compton LLP
                                            Markun Zusman & Compton LLP
                                            465 California Street
                                            Suite 401
                                            CA, Suite 401
                                            San Francisco, CA 94104
                                            415-438-4388
                                            Email: rsmith@mzclaw.com
                                            *ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**United States Attorney's Office for the
Eastern District of New York**              represented by **Lauren Howard Elbert**
                                            United States Attorney's Office, EDNY
                                            271 Cadman Plz E
                                            Brooklyn, NY 11201
                                            718-254-7577
                                            Fax: 718-254-6076
                                            Email: lauren.elbert@usdoj.gov
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/04/2021 | 1 | COMPLAINT against Ascendant Alternative Strategies, LLC, Ascendant Capital, LLC, GPB Capital Holdings, LLC, David Gentile, Jeffrey Lash, Jeffry Schneider Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by Securities and Exchange Commission. (Best, Richard) (Entered: 02/04/2021) |
| 02/04/2021 | 2 | Proposed Summons.Civil Cover Sheet.. by Securities and Exchange Commission (Attachments: # 1 Proposed Summons GPB Capital Holdings LLC, # 2 Proposed Summons Ascendant Capital, LLC, # 3 Proposed Summons Ascendant Alternative Strategies, LLC, # 4 Proposed Summons David Gentile, LLC, # 5 Proposed Summons Jeffry Schneider, # 6 Proposed Summons Jeffrey Lash) (Best, Richard) (Main Document 2 replaced on 2/5/2021) (Lee, Tiffeny). (Entered: 02/04/2021) |
| 02/04/2021 | 3 | NOTICE of Appearance by David Paul Stoelting on behalf of Securities and Exchange Commission (aty to be noticed) (Stoelting, David) (Entered: 02/04/2021) |

| 02/04/2021 | 4 | NOTICE of Appearance by Lindsay Senechal Moilanen on behalf of Securities and Exchange Commission (aty to be noticed) (Moilanen, Lindsay) (Entered: 02/04/2021) |
|---|---|---|
| 02/04/2021 | | Case Assigned to Chief Judge Margo K. Brodie and Magistrate Judge Vera M. Scanlon. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Bowens, Priscilla) Modified on 2/4/2021 (Bowens, Priscilla). (Entered: 02/04/2021) |
| 02/04/2021 | 5 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all parties wish to consent.** The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences.** Do NOT return or file the consent unless all parties have signed the consent. (Bowens, Priscilla) (Entered: 02/04/2021) |
| 02/04/2021 | 6 | Summons Issued as to All Defendants. (Attachments: # 1 Schneider summons, # 2 Lash summons, # 3 Gentile summons, # 4 A Capital summons, # 5 AAS summons) (Bowens, Priscilla) (Entered: 02/04/2021) |
| 02/04/2021 | 7 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Bowens, Priscilla) (Entered: 02/04/2021) |
| 02/04/2021 | 8 | NOTICE of Appearance by Kristin McNamara Pauley on behalf of Securities and Exchange Commission (aty to be noticed) (Pauley, Kristin) (Entered: 02/04/2021) |
| 02/08/2021 | 9 | NOTICE of Appearance by Derrelle Marcel Janey on behalf of Jeffrey Lash (aty to be noticed) (Janey, Derrelle) (Entered: 02/08/2021) |
| 02/08/2021 | 10 | Emergency MOTION for Order to Show Cause *why an order should not be entered, pending a final disposition of this action, appointing Joseph T. Gardemal III as the independent monitor for GPB Capital, LLC* by Securities and Exchange Commission. (Attachments: # 1 Proposed Order to Show Cause) (Stoelting, David) (Entered: 02/08/2021) |
| 02/08/2021 | 11 | DECLARATION re 10 Emergency MOTION for Order to Show Cause *why an order should not be entered, pending a final disposition of this action, appointing Joseph T. Gardemal III as the independent monitor for GPB Capital, LLC* by Securities and Exchange Commission (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8) (Stoelting, David) (Entered: 02/08/2021) |
| 02/08/2021 | 12 | MEMORANDUM in Support re 10 Emergency MOTION for Order to Show Cause *why an order should not be entered, pending a final disposition of this action, appointing Joseph T. Gardemal III as the independent monitor for GPB Capital, LLC* filed by Securities and Exchange Commission. (Stoelting, David) (Entered: 02/08/2021) |
| 02/10/2021 | | SCHEDULING ORDER: Hearing re 10 Emergency MOTION for Order to Show Cause set for 2/12/2021 at 10:00 AM before Chief Judge Margo K. Brodie. The parties are directed to call 1-888-684-8852 using access code 9801036. If any party has any difficulty accessing the telephone conference, please contact chambers at 718-613-2140. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media |

|  |  | credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Ordered by Chief Judge Margo K. Brodie on 2/10/2021. (Valentin, Winnethka) (Entered: 02/10/2021) |
|---|---|---|
| 02/10/2021 | 13 | NOTICE of Appearance by Joseph Evan Sarachek on behalf of Bohnenkamp Living Trust (aty to be noticed) (Sarachek, Joseph) (Entered: 02/10/2021) |
| 02/10/2021 | 14 | NOTICE of Appearance by Howard R. Elisofon on behalf of GPB Capital Holdings, LLC (aty to be noticed) (Elisofon, Howard) (Entered: 02/10/2021) |
| 02/10/2021 | 15 | NOTICE of Appearance by David Michael Rosenfield on behalf of GPB Capital Holdings, LLC (aty to be noticed) (Rosenfield, David) (Entered: 02/10/2021) |
| 02/10/2021 | 16 | NOTICE of Appearance by Gregory Scott Bruch on behalf of David Gentile (aty to be noticed) (Bruch, Gregory) (Entered: 02/10/2021) |
| 02/10/2021 | 17 | NOTICE of Appearance by Stephen M. Medow on behalf of GPB Capital Holdings, LLC (aty to be noticed) (Medow, Stephen) (Entered: 02/10/2021) |
| 02/10/2021 | 18 | SUMMONS Returned Executed by Securities and Exchange Commission. David Gentile served on 2/5/2021, answer due 2/26/2021. (Stoelting, David) (Entered: 02/10/2021) |
| 02/10/2021 | 19 | SUMMONS Returned Executed by Securities and Exchange Commission. GPB Capital Holdings, LLC served on 2/4/2021, answer due 2/25/2021. (Stoelting, David) (Entered: 02/10/2021) |
| 02/10/2021 | 20 | SUMMONS Returned Executed by Securities and Exchange Commission. Jeffrey Lash served on 2/4/2021, answer due 2/25/2021. (Stoelting, David) (Entered: 02/10/2021) |
| 02/11/2021 | 21 | Letter *re Application for Order to Show Cause (Dkt. Nos. 10-12) to inform Court of parties' agreement to terms of proposed Order Appointing Monitor* by Securities and Exchange Commission (Attachments: # 1 Proposed Order Appointing Monitor [On Consent]) (Stoelting, David) (Entered: 02/11/2021) |
| 02/11/2021 |  | ORDER: The parties are directed to explain why, in light of 21 the agreed upon proposed order appointing a monitor, the scheduled telephone conference is necessary. Ordered by Chief Judge Margo K. Brodie on 2/11/2021. (Goss, Natasha) (Entered: 02/11/2021) |
| 02/11/2021 | 22 | Letter *notifying Court re: telephone conference scheduled for 2/12/21* by GPB Capital Holdings, LLC (Elisofon, Howard) (Entered: 02/11/2021) |
| 02/12/2021 | 23 | ORDER APPOINTING MONITIOR. The hearing scheduled for February 12, 2021 is adjourned sine die. Ordered by Chief Judge Margo K. Brodie on 2/12/2021. (Valentin, Winnethka) (Entered: 02/12/2021) |
| 02/12/2021 |  | *Motions terminated: 10 Emergency MOTION for Order to Show Cause why an order should not be entered, pending a final disposition of this action, appointing Joseph T. Gardemal III as the independent monitor for GPB Capital. Ordered by Chief Judge Margo K. Brodie on 2/12/2021. (Valentin, Winnethka) (Entered: 02/12/2021)* |
| 02/16/2021 | 24 | SUMMONS Returned Executed by Securities and Exchange Commission. Ascendant Alternative Strategies, LLC served on 2/12/2021, answer due 3/5/2021. (Pauley, Kristin) (Entered: 02/16/2021) |
| 02/16/2021 | 25 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by GPB Capital Holdings, LLC. (Elisofon, Howard) (Entered: 02/16/2021) |
| 02/17/2021 |  | ORDER granting 25 Motion for Extension of Time to Answer as to GPB Capital Holdings, LLC. Defendant's deadline to answer the Complaint or otherwise move is |

| | | |
|---|---|---|
| | | extended to answer due 3/26/2021. Ordered by Magistrate Judge Vera M. Scanlon on 2/17/2021. (Quinlan, Krista) (Entered: 02/17/2021) |
| 02/17/2021 | 26 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Jeffrey Lash. (Janey, Derrelle) (Entered: 02/17/2021) |
| 02/17/2021 | 27 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by David Gentile. (Attachments: # 1 Proposed Order on Motion for Extension of Time to File Answer) (Bruch, Gregory) (Entered: 02/17/2021) |
| 02/18/2021 | | ORDER granting 26 and 27 Motions for Extension of Time to Answer as to Jeffrey Lash and David Gentile. Defendants' deadline to answer the Complaint or otherwise move is extended to 3/26/2021. Ordered by Magistrate Judge Vera M. Scanlon on 2/18/2021. (Quinlan, Krista) (Entered: 02/18/2021) |
| 02/18/2021 | 28 | Letter *from Joseph T. Gardemal III addressed to Chief Judge Brodie to request your approval, in accordance with paragraph 31 of the Order, to retain Douglas A. Fellman, Esq. and his law firm Hogan Lovells US LLP, as counsel* by Joseph T. Gardemal III (Attachments: # 1 Proposed Order) (Buehler, Robert) (Entered: 02/18/2021) |
| 02/19/2021 | 29 | NOTICE of Appearance by Glenn Charles Colton on behalf of Ascendant Capital, LLC, Jeffry Schneider (aty to be noticed) (Colton, Glenn) (Entered: 02/19/2021) |
| 02/19/2021 | 30 | WAIVER OF SERVICE Returned Executed by Securities and Exchange Commission. Ascendant Capital, LLC waiver sent on 2/16/2021, answer due 4/19/2021; Jeffry Schneider waiver sent on 2/16/2021, answer due 4/19/2021. (Pauley, Kristin) (Entered: 02/19/2021) |
| 02/24/2021 | 31 | MOTION for Extension of Time to File Answer re 1 Complaint, by Ascendant Alternative Strategies, LLC. (Lawlor, Joseph) (Entered: 02/24/2021) |
| 02/25/2021 | | ORDER granting 31 Motion for Extension of Time to Answer as to Ascendant Alternative Strategies, LLC. Defendant's deadline to answer the Complaint or otherwise move is extended to 4/9/2021. Ordered by Magistrate Judge Vera M. Scanlon on 2/25/2021. (Quinlan, Krista) (Entered: 02/25/2021) |
| 03/04/2021 | 32 | MOTION to Intervene , MOTION to Stay by United States Attorney's Office for the Eastern District of New York. (Attachments: # 1 Memorandum in Support of Motion to Intervene and Stay) (Elbert, Lauren) (Entered: 03/04/2021) |
| 03/05/2021 | | ORDER: The Court is in receipt of the United States Attorney's Office's motion 32 to intervene in and stay this action in light of a related criminal case. The government's memorandum does not state whether Defendants GPB Capital Holdings, LLC, Ascendant Capital, LLC, and Ascendant Alternative Strategies, LLC consent to the motion to stay. Those defendants are directed to respond to the application by Friday, March 12, 2021. Ordered by Chief Judge Margo K. Brodie on 3/5/2021. (Goss, Natasha) (Entered: 03/05/2021) |
| 03/08/2021 | | ORDER re: 28 Letter filed by Joseph T. Gardemal III. The monitor's request to retain Douglas A. Fellman, Esq. and his law firm Hogan Lovells US LLP as counsel is granted. Ordered by Chief Judge Margo K. Brodie on 3/8/2021. (Goss, Natasha) (Entered: 03/08/2021) |
| 03/09/2021 | 33 | MOTION to Appear Pro Hac Vice Filing fee $ 150, receipt number ANYEDC-14259589. by David Gentile. (Attachments: # 1 Affidavit of S. Hanna, # 2 Exhibit Exhibit A, # 3 Proposed Order Proposed Order) (Hanna, Sandra) (Entered: 03/09/2021) |
| 03/10/2021 | | ORDER granting 33 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the |

| | | attorney shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Also, the attorney shall ensure the &150 admission fee is submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Vera M. Scanlon on 3/10/2021. (Quinlan, Krista) (Entered: 03/10/2021) |
|---|---|---|
| 03/10/2021 | 34 | RESPONSE to Motion re 32 MOTION to Intervene MOTION to Stay */Consent of GPB Capital Holdings, LLC, Ascendant Capital, LLC, and Ascendant Alternative Holdings, LLC to SEC's Request for a Stay* filed by Ascendant Capital, LLC, Jeffry Schneider. (Colton, Glenn) Modified on 3/11/2021 to correct the filing party. (Piper, Francine). (Entered: 03/10/2021) |
| 03/10/2021 | 35 | NOTICE of Appearance by Sandra Hanna on behalf of David Gentile (notification declined or already on case) (Hanna, Sandra) (Entered: 03/10/2021) |
| 03/10/2021 | | ORDER granting 32 Motion to Intervene; granting 32 Motion to Stay. The Court grants, on consent of all parties, the government's motion to intervene in and to stay this civil case until the conclusion of the related criminal case and the ongoing grand jury investigation. The Court excludes from this stay any work performed by the Monitor, matters related to the Monitorship, or any future expansion of the Monitorship. The government shall inform the Court when the related criminal case has concluded. Ordered by Chief Judge Margo K. Brodie on 3/10/2021. (Goss, Natasha) (Entered: 03/10/2021) |
| 03/18/2021 | 36 | Letter *re: Continuing Investigation* by Securities and Exchange Commission (Pauley, Kristin) (Entered: 03/18/2021) |
| 04/12/2021 | 37 | Letter *addressed to Chief Judge Brodie to recommend continuation of the monitorship for a period of 180 days* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 04/12/2021) |
| 04/13/2021 | 38 | Consent MOTION to Amend/Correct/Supplement 23 Order *Appointing Monitor* by Securities and Exchange Commission. (Attachments: # 1 Amended Order Appointing Monitor, # 2 Blackline of Amended Order against February Order) (Stoelting, David) (Entered: 04/13/2021) |
| 04/14/2021 | 39 | AMENDED ORDER APPOINTING MONITOR. Ordered by Chief Judge Margo K. Brodie on 4/14/2021. (Piper, Francine) (Entered: 04/14/2021) |
| 04/20/2021 | 40 | NOTICE of Appearance by Jesse Devine on behalf of People Of The State Of New York (aty to be noticed) (Devine, Jesse) (Entered: 04/20/2021) |
| 04/20/2021 | 41 | NOTICE of Appearance by Kevin Christopher Wallace on behalf of People Of The State Of New York (notification declined or already on case) (Wallace, Kevin) (Entered: 04/20/2021) |
| 04/30/2021 | 42 | Letter *addressed to Chief Judge Brodie regarding Quarterly Report for the quarter ended March 31, 2021* by Joseph T. Gardemal III (Attachments: # 1 Quarterly Report for the quarter ended March 31, 2021) (Buehler, Robert) (Entered: 04/30/2021) |
| 06/23/2021 | 43 | MOTION for Leave to Electronically File Document under Seal by Joseph T. Gardemal III. (Attachments: # 1 Memorandum in Support) (Buehler, Robert) (Entered: 06/23/2021) |
| 07/16/2021 | | ORDER: The Monitor's 43 application for leave to file documents under seal is granted. In addition, the Monitor may file the monthly fee statements and quarterly fee applications described in the Court's April 14, 2021 amended order appointing the Monitor under seal, and without separately moving for leave to file under seal, until further order of the Court. Counsel is directed to file the original document under seal as a separate entry. Instructions on filing sealed documents on ECF are located at www.nyed.uscourts.gov. Ordered by Chief Judge Margo K. Brodie on 7/16/2021. (Goss, Natasha) (Entered: 07/16/2021) |

| 07/16/2021 | 44 | MOTION for Release of Funds by Joseph T. Gardemal III. (Attachments: # 1 Exhibit 1 - Invoice Summary for February 2021, # 2 Exhibit 2 - Invoice Summary for March 2021) (Buehler, Robert) (Entered: 07/16/2021) |
| 07/21/2021 | | ORDER granting 44 Motion for Release of Funds. Ordered by Magistrate Judge Vera M. Scanlon on 7/21/2021. (Scully, Nicole) (Entered: 07/21/2021) |
| 07/23/2021 | 45 | NOTICE of Appearance by Glen A. Kopp on behalf of GPB Capital Holdings, LLC (aty to be noticed) (Kopp, Glen) (Entered: 07/23/2021) |
| 07/26/2021 | 46 | MOTION to Withdraw as Attorney by GPB Capital Holdings, LLC. (Attachments: # 1 Declaration of Howard R. Elisofon in Support, # 2 Proposed Order) (Elisofon, Howard) (Entered: 07/26/2021) |
| 07/27/2021 | | ORDER granting 46 Motion to Withdraw as Attorney. Attorney David Michael Rosenfield; Howard R. Elisofon and Stephen M. Medow terminated. Ordered by Magistrate Judge Vera M. Scanlon on 7/27/2021. (Lozar, Ryan) (Entered: 07/27/2021) |
| 07/30/2021 | 47 | Letter *addressed to Chief Judge Brodie regarding Monitor's second quarterly report* by Joseph T. Gardemal III (Attachments: # 1 Second Quarterly Report) (Buehler, Robert) (Entered: 07/30/2021) |
| 08/20/2021 | 49 | Letter *addressed to Chief Judge Brodie to submit, under seal, the Monitors Monthly Fee Statement for July 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 08/20/2021) |
| 08/23/2021 | | ORDER granting 48 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 8/23/2021. (Scully, Nicole) (Entered: 08/23/2021) |
| 09/08/2021 | 50 | NOTICE of Appearance by Daniel James Horwitz on behalf of David Gentile (aty to be noticed) (Horwitz, Daniel) (Entered: 09/08/2021) |
| 09/08/2021 | 51 | Motion to Request Mediation by David Gentile. (Horwitz, Daniel) (Entered: 09/08/2021) |
| 09/13/2021 | 52 | Motion to Request Mediation - *Letter in Response to Defendant David Gentile's request, as set forth in a September 8, 2021 letter* by GPB Capital Holdings, LLC. (Attachments: # 1 Exhibit A) (Kopp, Glen) (Entered: 09/13/2021) |
| 09/13/2021 | 53 | Letter *from Robert B. Buehler dated September 13, 2021, in response to the September 8, 2021 letter to the Court 51* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 09/13/2021) |
| 09/14/2021 | 54 | RESPONSE in Opposition re 51 Motion to Request Mediation filed by Securities and Exchange Commission. (Stoelting, David) (Entered: 09/14/2021) |
| 09/20/2021 | 55 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for August 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 09/20/2021) |
| 09/21/2021 | 56 | Letter Motion to Request Mediation by David Gentile. (Horwitz, Daniel) (Entered: 09/21/2021) |
| 10/07/2021 | 57 | Letter *addressed to Chief Justice Brodie submitting, under seal, the Monitors Monthly Fee Statement for September 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/07/2021) |
| 10/12/2021 | 58 | Letter *addressed to Chief Judge Brodie, under seal, as the Monitors third Quarterly Fee Application, to seek the Courts approval for the payment of the Monitors compensation and expenses for July, August and September 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/12/2021) |

| 11/02/2021 | 59 | Letter *addressed to Chief Judge Brodie to submit the attached presentation as the Monitors quarterly report for the third quarter of 2021* by Joseph T. Gardemal III (Attachments: # 1 Exhibit A - Monitor's Third Quarter Report of 2021) (Buehler, Robert) (Entered: 11/02/2021) |
|---|---|---|
| 11/03/2021 | | ORDER granting 58 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 11/3/2021. (Scully, Nicole) (Entered: 11/03/2021) |
| 11/08/2021 | | SCHEDULING ORDER: The Court is in receipt of the submissions at 51 , 52 , 53 , 54 and 56 . A Telephone Conference is set for 12/1/2021 at 2:30 PM before Magistrate Judge Vera M. Scanlon. Counsel should be prepared to discuss the proper mechanism, if any, for Mr. Gentile to raise his concerns. The parties are to call 877-336-1829 and dial the access code 3581283 for the AT&T conference bridge. Ordered by Magistrate Judge Vera M. Scanlon on 11/8/2021. (Scully, Nicole) (Entered: 11/08/2021) |
| 11/23/2021 | 60 | NOTICE of Appearance by Gina Marie Parlovecchio on behalf of GPB Capital Holdings, LLC (aty to be noticed) (Parlovecchio, Gina) (Entered: 11/23/2021) |
| 11/23/2021 | 61 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for October 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 11/23/2021) |
| 12/01/2021 | | Minute Entry for proceedings held before Magistrate Judge Vera M. Scanlon: Telephone Conference held on 12/1/2021. Kristin McNamara Pauley appearing for Plaintiff. Gina Marie Parlovecchio and Glen A. Kopp appearing for Defendant GPB Capital Holdings, LLC. Glenn Charles Colton appearing for Defendants Ascandant Capital, LLC and Jeffry Schneider. Joseph Craig Lawlor appearing for Defendant Ascendant Alternative Strategies, LLC. Daniel James Horwitz appearing for Defendant David Gentile. Robert B. Buehler appearing for Interested Party Joseph T. Gardemal III. Jesse Devine appearing for Interested Party People Of The State Of New York. No appearance for Defendant Jeffrey Lash. See separate docket entry for Order issuing from this proceeding. (FTR Log #2:37-3:10.) (Scully, Nicole) (Entered: 12/01/2021) |
| 12/01/2021 | | ORDER: As discussed at the 12/1/2021 Telephone Conference, the Court has reviewed the parties' submissions at 51 , 52 , 53 , 54 and 56 , and Defendant David Gentile will submit a letter with supplemental authority by 12/3/2021. Any party that wishes to respond to Defendant David Gentile's submission should file a letter response by 12:00 PM on 12/8/2021. Ordered by Magistrate Judge Vera M. Scanlon on 12/1/2021. (Scully, Nicole) (Entered: 12/01/2021) |
| 12/03/2021 | 62 | Letter *to supplement letters dated September 8, 2021 and September 21, 2021* by David Gentile (Horwitz, Daniel) (Entered: 12/03/2021) |
| 12/06/2021 | 63 | TRANSCRIPT of Proceedings held on December 1, 2021, before Judge Scanlon. Court Reporter/Transcriber Transcriptions Plus II, Inc. Email address: RL.Transcriptions2@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 12/27/2021. Redacted Transcript Deadline set for 1/6/2022. Release of Transcript Restriction set for 3/6/2022. (Hong, Loan) (Entered: 12/06/2021) |
| 12/08/2021 | 64 | Letter - *Response to request for mediation* by GPB Capital Holdings, LLC (Parlovecchio, Gina) (Entered: 12/08/2021) |
| 12/08/2021 | 65 | Letter *to Judge Scanlon from Robert B. Buehler dated December 8, 2021* by Joseph T. |

| | | Gardemal III (Buehler, Robert) (Entered: 12/08/2021) |
|---|---|---|
| 12/08/2021 | 66 | Letter *to Judge Scanlon from Plaintiff dated December 8, 2021* by Securities and Exchange Commission (Pauley, Kristin) (Entered: 12/08/2021) |
| 12/20/2021 | 67 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for November 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 12/20/2021) |
| 01/10/2022 | 68 | Letter *Re Gentile Mediation Request* by GPB Capital Holdings, LLC (Parlovecchio, Gina) (Entered: 01/10/2022) |
| 01/12/2022 | 69 | Letter *in response to the letter dated January 10, 2022* by David Gentile (Horwitz, Daniel) (Entered: 01/12/2022) |
| 01/20/2022 | 70 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for December 2021* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 01/20/2022) |
| 01/28/2022 | 71 | Letter *addressed to Chief Judge Brodie submitting the attached presentation as the Monitors quarterly report for the fourth quarter of 2021* by Joseph T. Gardemal III (Attachments: # 1 Exhibit A - Monitors quarterly report for the fourth quarter of 2021) (Buehler, Robert) (Entered: 01/28/2022) |
| 02/14/2022 | 72 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors fourth Quarterly Fee Application, to seek the Courts approval for the payment of the Monitors compensation and expenses for October, November and December 2021, as well as the fees previously held back from payment of the Monitors Monthly Fee Statements for October, November and December 2021* by Joseph T. Gardemal III (Buehler, Robert) Modified on 2/15/2022 (Scully, Nicole). (Entered: 02/14/2022) |
| 02/15/2022 | | ORDER granting 72 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 2/15/2022. (Scully, Nicole) (Entered: 02/15/2022) |
| 02/24/2022 | 73 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for January 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 02/24/2022) |
| 03/22/2022 | 74 | Letter *addressed to Chief Judge Brodie to submit, under seal, the Monitors Monthly Fee Statement for February 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 03/22/2022) |
| 04/26/2022 | 75 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for March 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 04/26/2022) |
| 04/28/2022 | | ORDER denying 51 , 56 Mr. Gentile's Motion to Request Mediation. Mr. Gentile has requested that the Court send certain matters to mediation pursuant to the Amended Order Appointing Monitor ("Amended Order"), ECF No. 39 . The Amended Order provides that its mediation provision may only be invoked by either GPB Capital Holdings, LLC ("GPB") or the Monitor, and that the mediation provision may only be invoked when "GPB disagree[s] with any of the Monitor's decisions." ECF No. 39 para. 4. The Amended Order describes "the reasons GPB may disagree with the Monitor's decision or recommendation," id. para. 5 (emphasis added), as well as the types of actions taken by GPB that the Monitor has authority to either approve or disapprove, see id. para. 6. No other party to this action, whether it be Mr. Gentile, the SEC, or the four other defendants in this case, may avail themselves of this mediation provision, as it was drafted to provide only the entity that is actually being monitored, GPB, with a method for raising disputes regarding its oversight. |

Mr. Gentile raises a concern about what process he may have to pursue his disputes with GPB over what Mr. Gentile believes he is entitled to via "contractual and related obligations under Delaware law and [GPB]'s operating and other agreements." ECF No. 51 at 1. While the record is not complete before the Court, and the parties dispute the effectiveness of GPB's purported amended operating agreement, it appears that progress has been made on addressing Mr. Gentile's disputes. Based on the representations of counsel, Mr. Gentile has already commenced a books-and-records demand pursuant to Delaware law, ECF No. 63 , Tr. at 16:12-17:4, 20:17-21:11; GPB has engaged with Mr. Gentile regarding his tax documents and legal fees, see id. at 13:15-22, 21:12-20; and they have engaged in communications regarding whether GPB will indemnify Mr. Gentile, id. at 21:21-22:4. As he stated on the record, Mr. Gentile is prepared to go to Delaware Chancery Court to pursue his other complaints, see id. at 18:17-18, 19:3-7, which both GPB and the Monitor agree is a proper forum for the kind of disputes he raises. See id. at 12:16-24, 15:2-5, 20:10-16. In fact, Mr. Gentile has commenced proceedings in Delaware Chancery Court regarding his demands for advancement and indemnification of certain attorneys' fees and expenses from GPB. See ECF No. 68 ; ECF No. 69 (not disputing GPB's representation of proceedings in Delaware Chancery Court).

Although Mr. Gentile may be correct that a mediation to resolve his disputes could be more practical and efficient than litigating his disputes in court, the Amended Order does not authorize the Court to compel the parties to participate in mediation of Mr. Gentile's disputes. As such, Mr. Gentile's request is denied. Ordered by Magistrate Judge Vera M. Scanlon on 4/28/2022. (Scully, Nicole) (Entered: 04/28/2022)

| | | |
|---|---|---|
| 05/02/2022 | 76 | Letter *addressed to Chief Judge Brodie submitting presentation as the Monitor's quarterly report for the first quarter of 2022.* by Joseph T. Gardemal III (Attachments: # 1 Exhibit 1 - Monitor's Quarterly Report for the first quarter of 2022.) (Buehler, Robert) (Entered: 05/02/2022) |
| 05/13/2022 | 77 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors fifth Quarterly Fee Application* by Joseph T. Gardemal III (Buehler, Robert) Modified on 5/19/2022 (Scully, Nicole). (Entered: 05/13/2022) |
| 05/19/2022 | | ORDER granting 77 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 5/19/2022. (Scully, Nicole) (Entered: 05/19/2022) |
| 05/20/2022 | 78 | Letter *addressed to Chief Judge Brodie to submit, under seal, the Monitors Monthly Fee Statement for April 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 05/20/2022) |
| 05/31/2022 | 79 | Notice of MOTION to Amend/Correct/Supplement by David Gentile. (Horwitz, Daniel) Modified on 10/2/2023 (WV). (Entered: 05/31/2022) |
| 05/31/2022 | 80 | MEMORANDUM in Support re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile. (Horwitz, Daniel) (Entered: 05/31/2022) |
| 05/31/2022 | 81 | AFFIDAVIT/DECLARATION in Support re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Horwitz, Daniel) (Entered: 05/31/2022) |
| 05/31/2022 | 82 | AFFIDAVIT/DECLARATION in Support re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H) (Horwitz, Daniel) (Entered: 05/31/2022) |

| | | |
|---|---|---|
| 05/31/2022 | 83 | AFFIDAVIT/DECLARATION in Support re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile. (Horwitz, Daniel) (Entered: 05/31/2022) |
| 06/02/2022 | 84 | NOTICE of Appearance by Neal Jacobson on behalf of Securities and Exchange Commission (aty to be noticed) (Jacobson, Neal) (Entered: 06/02/2022) |
| 06/02/2022 | 85 | Letter *Requesting Conference* by Securities and Exchange Commission (Jacobson, Neal) (Entered: 06/02/2022) |
| 06/02/2022 | 86 | Letter *Response to Request for Conference* by Bohnenkamp Living Trust (Sarachek, Joseph) (Entered: 06/02/2022) |
| 06/03/2022 | 87 | Letter *Response to Request for Conference* by David Gentile (Attachments: # 1 Exhibit A) (Horwitz, Daniel) (Entered: 06/03/2022) |
| 06/13/2022 | 88 | MOTION for Order to Show Cause *Application for Order to Show Cause* by Securities and Exchange Commission. (Attachments: # 1 Affidavit Local Rule 6.1(d) Declaration of Neal Jacobson, # 2 Proposed Order Proposed Order to Show Cause) (Jacobson, Neal) Modified on 9/30/2023 (WV). (Entered: 06/13/2022) |
| 06/13/2022 | 89 | MEMORANDUM in Support re 88 MOTION for Order to Show Cause *Application for Order to Show Cause Plaintiff Securities and Exchange Commission's Memorandum of Law in Support of its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 06/13/2022) |
| 06/13/2022 | 90 | DECLARATION re 88 MOTION for Order to Show Cause *Application for Order to Show Cause Declaration of Joseph T. Gardemal III, Monitor, in Support of U.S. Securities and Exchange Commission's Motion for Appointment of a Receiver Over GPB Capital Holdings LLC and its Affiliates* by Securities and Exchange Commission (Jacobson, Neal) (Entered: 06/13/2022) |
| 06/13/2022 | 91 | DECLARATION *of Neal Jacobson* by Securities and Exchange Commission (Attachments: # 1 Proposed Order Proposed Order Appointing Receiver and Imposing Litigation Injunction) (Jacobson, Neal) (Entered: 06/13/2022) |
| 06/14/2022 | | SCHEDULING ORDER: The Court is in receipt of the parties' letters at 85 and 87 regarding Plaintiff's request for a conference. A Telephone Conference is set for 6/15/2022 at 4:30 PM before Magistrate Judge Vera M. Scanlon to discuss the recent filings. The parties are to call 877-336-1829 and dial the access code 3581283 for the AT&T conference bridge. Ordered by Magistrate Judge Vera M. Scanlon on 6/14/2022. (Scully, Nicole) (Entered: 06/14/2022) |
| 06/15/2022 | 92 | NOTICE of Appearance by Robert Curtis Gottlieb on behalf of Jeffrey Lash (aty to be noticed) (Gottlieb, Robert) (Entered: 06/15/2022) |
| 06/16/2022 | | ORDER. As discussed on the record, the briefing schedules in this action are as follows: for the Motion at 79 : Opposition due **6/21/2022**, and Reply due **6/24/2022**; for the motion at 88 : Opposition due **7/1/2022**, and Reply due **7/8/2022**. Counsel are reminded that each brief must address fully the motion as to which it is filed, and may not rely on the incorporation by reference of separate filings. Counsel for the Securities and Exchange Commission and for Mr. Gentile confirmed that they had not discussed the filing of the Order to Show Cause prior to its submission. As it is unreasonable to ask the Court to resolve a motion when counsel have not spoken to each other in an effort to reduce or eliminate the need for motion practice, the counsel involved are required to meet and confer in person or by video conference for **at least one hour on or before 6/22/2022** to explore whether a resolution of some or all of the issues raised in the Order |

| | | |
|---|---|---|
| | | to Show Cause can be resolved short of a decision by the Court. Ordered by Magistrate Judge Vera M. Scanlon on 6/15/2022. (Dessources, Jose) (Entered: 06/16/2022) |
| 06/16/2022 | 93 | NOTICE of Appearance by Kimberly Jones on behalf of David Gentile (aty to be noticed) (Jones, Kimberly) (Entered: 06/16/2022) |
| 06/16/2022 | | Minute Entry for proceedings held before Magistrate Judge Vera M. Scanlon: Telephone Conference held on 6/15/2022. David Paul Stoelting, Lindsay Senechal Moilanen, and Neal Jacobson appearing on behalf of Plaintiff. Gina Marie Parlovecchio and Glen A. Kopp appearing on behalf of Defendant GPB Capital Holdings, LLC. Glenn Charles Colton and Apeksha Vora appearing on behalf of Defendants Ascendant Capital, LLC and Jeffry Schneider. Joseph Craig Lawlor appearing on behalf of Defendant Ascendant Alternative Strategies, LLC. Daniel James Horwitz appearing on behalf of Defendant David Gentile. Derrelle Marcel Janey appearing on behalf of Defendant Jeffrey Lash. Robert B. Buehler appearing on behalf of Interested Party Joseph T. Gardemal III. Joseph Evan Sarachek appearing on behalf of Interested Party Bohnenkamp Living Trust and other investors. Jesse Devine appearing on behalf of Interested Party People Of The State Of New York. Counsel who have not yet appeared will file notices of appearance. See separate docket entry for Order issuing from this proceeding. (FTR Log #4:39-5:19.) (Scully, Nicole) (Entered: 06/16/2022) |
| 06/16/2022 | 94 | NOTICE of Appearance by Apeksha Vora on behalf of Ascendant Capital, LLC, Jeffry Schneider (aty to be noticed) (Vora, Apeksha) (Entered: 06/16/2022) |
| 06/16/2022 | 95 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for May 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 06/16/2022) |
| 06/21/2022 | 96 | MEMORANDUM in Opposition *to Defendant David Gentile's Motion for an Order Modifying the Court's Amended Order Appointing Monitor (Dkt. 39) Pursuant to Fed. R. Civ. P. 60(b)* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 06/21/2022) |
| 06/21/2022 | 97 | MOTION to Withdraw as Attorney by David Gentile. (Hanna, Sandra) (Entered: 06/21/2022) |
| 06/22/2022 | | ORDER granting 97 Motion to Withdraw as Attorney. Attorney Sandra Hanna terminated. Ordered by Magistrate Judge Vera M. Scanlon on 6/22/2022. (Lozar, Ryan) (Entered: 06/22/2022) |
| 06/24/2022 | 98 | REPLY in Support re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile. (Attachments: # 1 Declaration of Daniel J. Horwitz) (Horwitz, Daniel) (Entered: 06/24/2022) |
| 07/01/2022 | 99 | RESPONSE in Opposition re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Ascendant Capital, LLC, Jeffry Schneider. (Attachments: # 1 Declaration of Glenn Colton) (Colton, Glenn) (Entered: 07/01/2022) |
| 07/01/2022 | 100 | RESPONSE to Motion re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Jeffrey Lash. (Janey, Derrelle) (Entered: 07/01/2022) |
| 07/01/2022 | 101 | RESPONSE to Motion re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by GPB Capital Holdings, LLC. (Kopp, Glen) (Entered: 07/01/2022) |
| 07/01/2022 | 102 | RESPONSE in Opposition re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by David Gentile. (Attachments: # 1 Declaration of Daniel J. Horwitz, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G) (Jones, Kimberly) (Entered: 07/01/2022) |

| 07/08/2022 | 103 | REPLY in Support re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 07/08/2022) |
|---|---|---|
| 07/08/2022 | 104 | AFFIDAVIT/DECLARATION in Support re 88 MOTION for Order to Show Cause *Application for Order to Show Cause Supplemental Declaration of Joseph T. Gardemal* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 07/08/2022) |
| 07/08/2022 | 105 | AFFIDAVIT/DECLARATION in Support re 88 MOTION for Order to Show Cause *Application for Order to Show Cause Supplemental Declaration of Neal Jacobson* filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit Testimony Excerpts) (Jacobson, Neal) (Entered: 07/08/2022) |
| 07/08/2022 | 106 | Letter *addressed to Chief Judge Brodie requesting Oral Argument* by David Gentile (Jones, Kimberly) (Entered: 07/08/2022) |
| 07/12/2022 | 107 | MOTION to Appear Pro Hac Vice *of Douglas A. Fellman* Filing fee $ 150, receipt number ANYEDC-15741744. by Joseph T. Gardemal III. (Attachments: # 1 Affidavit in Support, # 2 Certificate of Good Standing-DC, # 3 Certificate of Good Standing - Maryland, # 4 Certificate of Good Standing- Virginia, # 5 Proposed Order) (Fellman, Douglas) (Entered: 07/12/2022) |
| 07/18/2022 | | ORDER granting 107 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF, registration is available online at www.pacer.gov. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure the 150 admission fee be submitted to the Clerks Office via filing the event *Pro Hac Vice Filing Fee*. Ordered by Magistrate Judge Vera M. Scanlon on 7/18/2022. (Scully, Nicole) (Entered: 07/18/2022) |
| 07/19/2022 | 108 | NOTICE of Appearance by Douglas A. Fellman on behalf of Joseph T. Gardemal III (notification declined or already on case) (Fellman, Douglas) (Entered: 07/19/2022) |
| 07/20/2022 | 109 | Letter *submitting, under seal, Monitor's Monthly Fee Statement for June 22* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 07/20/2022) |
| 07/21/2022 | 110 | Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes* Filing fee $ 150, receipt number ANYEDC-15771542. by GPB Capital Holdings, LLC. (Attachments: # 1 Affidavit in Support, # 2 Exhibit California Certificate of Good Standing, # 3 Exhibit Florida Certificate of Good Standing, # 4 Admission Information Additional Information) (Hayes, Steven) (Entered: 07/21/2022) |
| 07/26/2022 | | ORDER re 110 Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes*. The Court notes that in the application of Steven L. Hayes for admission pro hac vice, ECF No. 110 , Mr. Hayes requests that he be permitted to appear only for Matt Judkin, Rick Brown and Michael Fasano to request mediation, to respond to any opposition, and if granted, to participate in the mediation. On or before 8/1/2022, any party objecting to Mr. Hayes's proposed limited appearance should file an objection on the docket. Ordered by Magistrate Judge Vera M. Scanlon on 7/26/2022. (Scully, Nicole) (Entered: 07/26/2022) |
| 07/29/2022 | 111 | MEMORANDUM in Opposition re 110 Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes* Filing fee $ 150, receipt number ANYEDC-15771542. filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 07/29/2022) |
| 08/01/2022 | 112 | Letter *we respectfully submit the quarterly report of the Monitor for the second quarter of 2022 for the Courts review* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 08/01/2022) |

| 08/01/2022 | 113 | RESPONSE to Motion re 110 Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes* Filing fee $ 150, receipt number ANYEDC-15771542. filed by David Gentile. (Attachments: # 1 Exhibit A) (Jones, Kimberly) (Entered: 08/01/2022) |
| --- | --- | --- |
| 08/01/2022 | | ORDER. Matt Judkin, Rick Brown and Michael Fasano may file a response to the oppositions to the pro hac vice motion by 8/5/2022. Ordered by Magistrate Judge Vera M. Scanlon on 8/1/2022. (Scully, Nicole) (Entered: 08/01/2022) |
| 08/01/2022 | 114 | MEMORANDUM in Opposition re 110 Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes* Filing fee $ 150, receipt number ANYEDC-15771542. filed by GPB Capital Holdings, LLC. (Kopp, Glen) (Entered: 08/01/2022) |
| 08/05/2022 | 115 | MEMORANDUM in Support re 110 Notice of MOTION to Appear Pro Hac Vice *of Steven L. Hayes* Filing fee $ 150, receipt number ANYEDC-15771542. filed by GPB Capital Holdings, LLC. (Horwitz, Daniel) (Entered: 08/05/2022) |
| 08/22/2022 | 116 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitor's sixth Quarterly Fee Application, to seek the Court's approval for the payment of the Monitor's compensation and expenses for April, May and June 2022* by Joseph T. Gardemal III (Buehler, Robert) Modified on 8/29/2022 (Scully, Nicole). (Entered: 08/22/2022) |
| 08/23/2022 | 117 | Letter *addressed to Chief Judge Brodie to submit, under seal, the Monitor's Monthly Fee Statement for July 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 08/23/2022) |
| 08/29/2022 | | ORDER granting 116 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 8/29/2022. (Scully, Nicole) (Entered: 08/29/2022) |
| 09/21/2022 | 118 | Letter *submitting, under seal, Monitor's Monthly Fee Statement for August 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 09/21/2022) |
| 09/21/2022 | 119 | MEMORANDUM in Opposition re 118 1 - Sealed Document CV, Letter *Letter objection to filing monthly fee statements under seal* filed by Bohnenkamp Living Trust. (Sarachek, Joseph) (Entered: 09/21/2022) |
| 10/05/2022 | 120 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors Monthly Fee Statement for September 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/05/2022) |
| 10/12/2022 | 121 | Letter *addressed to Chief Judge Brodie submitting, under seal, the Monitors seventh Quarterly Fee Application, to seek the Courts approval for the payment of the Monitors compensation and expenses for July, August and September 2022, as well as the fees previously held back from payment of the Monitors Monthly Fee Statements for July, August and September 2022* by Joseph T. Gardemal III (Buehler, Robert) Modified on 3/7/2023 (GS). (Entered: 10/12/2022) |
| 10/13/2022 | 122 | Letter MOTION for Hearing , Letter MOTION to Unseal Document *Monthly Fee Statements Under Seal [e.g. 118, 121]* by Bohnenkamp Living Trust. (Sarachek, Joseph) (Entered: 10/13/2022) |
| 10/31/2022 | 123 | Letter *addressed to Chief Judge Brodie submitting monitor's quarterly report for the third quarter of 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/31/2022) |
| 11/21/2022 | 124 | Letter *addressed to Chief Judge Brodie to submit, under seal, the Monitor's Monthly Fee Statement for October 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 11/21/2022) |
| 12/21/2022 | 125 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for November 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 12/21/2022) |

| 01/25/2023 | 126 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for December 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 01/25/2023) |
| 01/30/2023 | 127 | Letter *addressed to Chief Judge Brodie to submit the attached presentation as the Monitor's quarterly report for the fourth quarter of 2022* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 01/30/2023) |
| 02/22/2023 | 128 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for January 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 02/22/2023) |
| 02/23/2023 | 129 | Letter *address to Chief Judge Brodie submitting the Monitor's eighth Quarterly Fee Application, to seek the Court's approval for the payment of the Monitor's compensation and expenses for October, November and December 2022, as well as the fees previously held back from payment of the Monitor's Monthly Fee Statements for October, November and December 2022* by Joseph T. Gardemal III (Buehler, Robert) Modified on 3/7/2023 (GS). (Entered: 02/23/2023) |
| 02/27/2023 | 130 | Letter *address to Chief Judge Brodie regarding the pending motion filed by the Securities and Exchange Commission to convert the Monitorship to a Receivership* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 02/27/2023) |
| 02/28/2023 | 131 | Letter *addressed to Chief Judge Brodie in response to the letter filed by Joseph T. Gardemal* by David Gentile (Jones, Kimberly) (Entered: 02/28/2023) |
| 03/07/2023 | | ORDER granting 121 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 3/7/2023. (GS) (Entered: 03/07/2023) |
| 03/07/2023 | | ORDER granting 129 Motion for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 3/7/2023. (GS) (Entered: 03/07/2023) |
| 03/13/2023 | 132 | ORDER denying without prejudice 110 Motion for Leave to Appear Pro Hac Vice. See attached Order. Ordered by Magistrate Judge Vera M. Scanlon on 3/13/2023. (JR) (Entered: 03/13/2023) |
| 03/22/2023 | 133 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for February 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 03/22/2023) |
| 04/24/2023 | 135 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for March 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 04/24/2023) |
| 04/24/2023 | | ORDER. Any opposition to the motion at 122 is to be filed on or before 5/5/2023. The reply to any opposition to the motion at 122 is to be filed on or before 5/12/2023. Ordered by Magistrate Judge Vera M. Scanlon on 4/24/2023. (JR) (Entered: 04/24/2023) |
| 04/27/2023 | 136 | RESPONSE in Opposition re 122 Letter MOTION for Hearing Letter MOTION to Unseal Document *Monthly Fee Statements Under Seal [e.g. 118, 121]* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 04/27/2023) |
| 04/28/2023 | 137 | Letter *addressed to Chief Judge Brodie to submit the attached presentation as the Monitor's quarterly report for the first quarter of 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 04/28/2023) |
| 04/28/2023 | | ORDER. On or before 5/8/2023, the parties are each permitted to file a letter, of no more than four pages, as to any fact-based updates related to the motion at 79 and the application for an order to show cause at 88 occurring from the date of the filing of the motion at 79 to the present. No responses are permitted. Ordered by Magistrate Judge Vera M. Scanlon on 4/28/2023. (JR) (Entered: 04/28/2023) |
| 05/05/2023 | 138 | RESPONSE to Motion re 122 Letter MOTION for Hearing Letter MOTION to Unseal Document *Monthly Fee Statements Under Seal [e.g. 118, 121]* filed by David Gentile. |

| | | (Jones, Kimberly) (Entered: 05/05/2023) |
|---|---|---|
| 05/08/2023 | 139 | NOTICE of Appearance by Jonathan Robert Jeremias on behalf of David Gentile (aty to be noticed) (Jeremias, Jonathan) (Entered: 05/08/2023) |
| 05/08/2023 | 140 | Letter MOTION for Disclosure *of Redacted Quarterly Reports* by Bohnenkamp Living Trust. (Sarachek, Joseph) (Entered: 05/08/2023) |
| 05/08/2023 | 141 | Letter *addressed to Magistrate Scanlon concerning fact-based updates to Motions 79 and 88* by David Gentile (Jeremias, Jonathan) (Entered: 05/08/2023) |
| 05/08/2023 | 142 | RESPONSE in Opposition re 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Securities and Exchange Commission. (Jacobson, Neal) (Entered: 05/08/2023) |
| 05/08/2023 | 143 | Letter *Response to Courts April 28, 2023 Order* by GPB Capital Holdings, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Kopp, Glen) (Entered: 05/08/2023) |
| 05/08/2023 | 144 | Letter *addressed to Judge Scanlon in response to the Court's Order dated 4/28/2023* by Joseph T. Gardemal III (Fellman, Douglas) (Entered: 05/08/2023) |
| 05/15/2023 | 145 | Letter *addressed to Chief Judge Brodie submitting the Monitor's ninth Quarterly Fee Application, to seek the Court's approval for the payment of the Monitor's compensation and expenses for January, February and March 2023, as well as the fees previously held back from payment of the Monitor's Monthly Fee Statements for January, February and March 2023* by Joseph T. Gardemal III (Buehler, Robert) Modified on 10/23/2023 (GS). (Entered: 05/15/2023) |
| 05/19/2023 | 147 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for April 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 05/19/2023) |
| 06/06/2023 | 148 | Consent MOTION to Approve Consent Judgment *as the Defendant Jeffrey Lash and to temporarily lift the stay for the purpose of entering the Proposed Judgment* by Securities and Exchange Commission. (Attachments: # 1 Proposed Judgment of Defendant Jeffrey Lash, # 2 Proposed Consent) (Stoelting, David) (Entered: 06/06/2023) |
| 06/07/2023 | 149 | Amicus Curiae APPEARANCE entered by Alan Smith on behalf of FSC Securities Corp. (Smith, Alan) (Entered: 06/07/2023) |
| 06/09/2023 | 150 | CONSENT JUDGMENT as to Defendant Jeffrey Lash. So Ordered by Chief Judge Margo K. Brodie on 6/7/2023. (TLH) (Entered: 06/09/2023) |
| 06/22/2023 | 153 | Letter *addressed to Chief Judge Brodie submitting the Monitor's Monthly Fee Statement for May 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 06/22/2023) |
| 06/27/2023 | 154 | Letter *to Judge Scanlon in Response to Amicus Curiae appearance [Dkt. No. 149]* by David Gentile (Jeremias, Jonathan) (Entered: 06/27/2023) |
| 07/21/2023 | 155 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for June 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 07/21/2023) |
| 07/28/2023 | 157 | SUA SPONTE REPORT AND RECOMMENDATION re: 79 MOTION for Relief from the Amended Order at 39 and 88 MOTION to Convert the Monitorship to a Receivership and for the Imposition of a Litigation Injunction. <br><br> The undersigned respectfully recommends that the motion at 79 be denied as moot and that the motion at 88 be granted, subsequent to the clarification to be provided by Plaintiff, as discussed in the attached report and recommendation, see n.3, with Paragraph 18 of the Proposed Order modified to add, as a final sentence, the following: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; |

| | | |
|---|---|---|
| | | the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets."<br><br>Objections to the report and recommendation are due by 8/11/2023.<br><br>Ordered by Magistrate Judge Vera M. Scanlon on 7/28/2023. (JR) (Entered: 07/28/2023) |
| 07/28/2023 | <u>158</u> | Letter *addressed to Chief Judge Brodie to submit the attached presentation as the Monitors quarterly report for the second quarter of 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 07/28/2023) |
| 08/01/2023 | <u>159</u> | MOTION for Extension of Time to File *Objections to Report and Recommendation* by David Gentile. (Horwitz, Daniel) (Entered: 08/01/2023) |
| 08/02/2023 | <u>160</u> | Letter MOTION for Extension of Time to File */Request to Join for Relief Asserted in Defendant David Gentile's Motion to File Objections to the Report & Recommendation of Magistrate Judge Vera M. Scanlon* by Ascendant Capital, LLC, Jeffry Schneider. (Colton, Glenn) (Entered: 08/02/2023) |
| 08/02/2023 | <u>161</u> | Letter *in response to Magistrate's Report and Recommendation* by Securities and Exchange Commission (Attachments: # <u>1</u> Exhibit Blacklined Order, # <u>2</u> Exhibit Proposed Order) (Jacobson, Neal) (Entered: 08/02/2023) |
| 08/04/2023 | | ORDER re <u>159</u> and <u>160</u> defendants' motion for an extension of time to file. The parties are directed to file their objections to <u>157</u> Magistrate Judge Vera M. Scanlon's *sua sponte* report and recommendation on or before September 8, 2023. Ordered by Chief Judge Margo K. Brodie on 8/4/2023. (EA) (Entered: 08/04/2023) |
| 08/10/2023 | <u>162</u> | Letter *re Plaintiff's intended scope of litigation injunction* by Securities and Exchange Commission (Jacobson, Neal) (Entered: 08/10/2023) |
| 08/16/2023 | <u>163</u> | Letter *addressed to Chief Judge Brodie to submit the Monitor's Tenth Quarterly Fee Application* by Joseph T. Gardemal III (Buehler, Robert) Modified on 10/23/2023 (GS). (Entered: 08/16/2023) |
| 08/21/2023 | <u>164</u> | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for July 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 08/21/2023) |
| 09/01/2023 | <u>166</u> | Letter dated August 21, 2023 to Thomas and Pamela Wolthoff from Judge Brodie, in response to their August 1 Letter. (FP) (Entered: 09/01/2023) |
| 09/08/2023 | <u>167</u> | OBJECTION to <u>157</u> Report and Recommendations filed by Ascendant Capital, LLC, Jeffry Schneider. (Attachments: # <u>1</u> Declaration of Glenn C. Colton, # <u>2</u> Exhibit A, # <u>3</u> Exhibit B, # <u>4</u> Exhibit C, # <u>5</u> Exhibit D, # <u>6</u> Exhibit E) (Colton, Glenn) (Entered: 09/08/2023) |
| 09/08/2023 | <u>168</u> | OBJECTION to <u>157</u> Report and Recommendations filed by David Gentile. (Attachments: # <u>1</u> Declaration Jeremias, # <u>2</u> Exhibit 1, # <u>3</u> Exhibit 2, # <u>4</u> Exhibit 3, # <u>5</u> Exhibit 4, # <u>6</u> Exhibit 5, # <u>7</u> Exhibit 6, # <u>8</u> Exhibit 7, # <u>9</u> Exhibit 8, # <u>10</u> Exhibit 9, # <u>11</u> Exhibit 10, # <u>12</u> Exhibit 11, # <u>13</u> Declaration Kirkham) (Jeremias, Jonathan) (Entered: 09/08/2023) |
| 09/14/2023 | <u>169</u> | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for August 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 09/14/2023) |
| 09/18/2023 | | ORDER. Interested party Bohnenkamp Living Trust ("Bohnenkamp") moved to unseal the monthly fee statements filed by the court-appointed monitor for Defendant GPB Capital Holdings, LLC, Joseph T. Gardemal III (the "Monitor"). See generally ECF Nos. 119 & 122. Plaintiff Securities and Exchange Commission ("Plaintiff") responded, |

arguing that the motion (1) should be denied on procedural grounds, as Bohnenkamp "failed to seek intervention under Federal Rule of Civil Procedure 24," and (2) should be denied as substantively moot, "as the Monitor disclosed his and his counsel's total fee requests submitted prior to the date of the [m]otion in the Monitor's quarterly report for the third quarter of 2022 filed October 31, 2022, and subsequently has filed his and his counsel's fee requests on the open public docket." ECF No. 136 at 1 (citation omitted). Defendant David Gentile ("Mr. Gentile") joined in Bohnenkamp's motion, requesting (1) "that the Court unseal all prior monthly fee statements," as well as the quarterly fee applications, and (2) that the Court "issue an order directing the Monitor [to] file publicly all future quarterly and monthly fee statements," as, in spite of the Monitor's practice of filing his monthly fee statements and quarterly fee applications publicly since December 21, 2022, pursuant to the Court's July 16, 2021 Order, "the Monitor retains his authority to seal his quarterly and monthly fee statements at any time and without leave of this Court." ECF No. 138 at 1 (citation omitted). Bohnenkamp replied, reiterating its argument as to the monthly fee statements and taking issue with the redactions imposed by the Monitor in his April 28, 2023 quarterly report at ECF No. 137. See ECF No. 140 at 1.

As a preliminary matter, the Court dispenses with Plaintiff's argument as to the alleged procedural impropriety of Bohnenkamp's motion, as Mr. Gentile, a party to this action, has joined in the motion.

As to the sealing of the monthly fee statements and quarterly fee applications, Paragraph 33(b) of the Amended Order Appointing Monitor (the "Amended Order") provides that, "[o]n or before the twentieth (20th) day of each month, following the month for which compensation is sought, the Monitor and Retained Personnel shall...file a Monthly Fee Statement with the Court." ECF No. 39 para. 33(b). Paragraph 34 of the Amended Order provides that, "[w]ithin forty-five (45) days after the end of each calendar quarter, the Monitor and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Subject Assets (the 'Quarterly Fee Applications')." ECF No. 39 para. 34. The District Court entered a subsequent Order permitting "the Monitor [to]...file the monthly fee statements and quarterly fee applications described in the Court's April 14, 2021 amended order appointing the Monitor under seal...until further order of the Court." 7/16/2021 Order. Bohnenkamp's motion to unseal the Monitor's monthly fee statements, and Mr. Gentile's motion to unseal the Monitor's monthly fee statements and quarterly fee applications, are granted as unopposed, with the exception that certain redactions may be allowed on further consideration and the process as to the April 28, 2023 filing, as set forth below. On or before September 27, 2023, the Monitor is to file a letter either (1) stating that he seeks to redact information from the currently sealed monthly fee statements and quarterly fee applications, in which case he is to file the proposed redactions, or (2) stating that he does not seek such redactions. If the Monitor takes the former position, on or before October 5, 2023, opposition thereto must be filed. No replies are permitted. If any proposed redactions are extensive, the Court may require the Monitor to submit an itemized log justifying the proposed redactions. Unsealing will then take place subsequent to resolution of any disputes as to proposed redactions. If the Monitor takes the latter position, the Court will unseal the currently sealed monthly fee statements and quarterly fee applications subsequent to the Monitor's September 27, 2023 filing.

As to the redactions in the April 28, 2023 quarterly report at ECF No. 137, Paragraph 23 of the Amended Order provides that, "[w]ithin 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status

| | | |
|---|---|---|
| | | of the reviews contemplated in paragraphs 8 through 14 (the 'Quarterly Report')." ECF No. 39 para. 23. The parties, the Monitor, and Bohnenkamp are to confer in an effort to resolve any disputes as to the redactions in the Monitor's quarterly reports, as well as to discuss a procedure for addressing any such disputes in relation to quarterly reports previously filed and to be filed in the future. If any disputed redactions are extensive, the Court may require the Monitor to submit an itemized log justifying the proposed redactions. On or before September 27, 2023, the parties, the Monitor, and Bohnenkamp are to file a joint letter informing the Court of the outcome of their conferral. Ordered by Magistrate Judge Vera M. Scanlon on 9/18/2023. (JR) (Entered: 09/18/2023) |
| 09/22/2023 | 170 | NOTICE by Securities and Exchange Commission re 157 SUA SPONTE REPORT AND RECOMMENDATIONS re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile, 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Securities and Exchange Commiss *Response to Objections to Report and Recommendation* (Jacobson, Neal) (Entered: 09/22/2023) |
| 09/22/2023 | 171 | NOTICE by GPB Capital Holdings, LLC re 157 SUA SPONTE REPORT AND RECOMMENDATIONS re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile, 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Securities and Exchange Commiss *Response to Objections to Report and Recommendation* (Kopp, Glen) (Entered: 09/22/2023) |
| 09/27/2023 | 172 | Letter MOTION for Leave to File Document by Ascendant Capital, LLC, Jeffry Schneider. (Colton, Glenn) (Entered: 09/27/2023) |
| 09/27/2023 | 173 | Letter *advising Court of delay in meet and confer concerning redactions to the Monitor's quarterly reports* by Securities and Exchange Commission (Jacobson, Neal) (Entered: 09/27/2023) |
| 09/27/2023 | 174 | Letter *addressed to Magistrate Judge Scanlon in response to the Court's Order dated September 18, 2023* by Joseph T. Gardemal III (Fellman, Douglas) (Entered: 09/27/2023) |
| 09/28/2023 | | ORDER granting 172 defendants' motion for leave to file additional responses. Defendants are directed to file any additional arguments they believe the Court should consider in order to decide the pending motions before 5:00 PM on September 29, 2023. Ordered by Chief Judge Margo K. Brodie on 9/28/2023. (EA) (Entered: 09/28/2023) |
| 09/29/2023 | | ORDER terminating 79 Motion to Amend/Correct/Supplement and 88 Motion for Order to Show Cause. Motions will be consolidated with 157 . Ordered by Chief Judge Margo K. Brodie on 9/29/2023. (WV) (Entered: 09/29/2023) |
| 09/29/2023 | 175 | REPLY in Support re 168 Objection to Report and Recommendations, 157 SUA SPONTE REPORT AND RECOMMENDATIONS re 79 Notice of MOTION to Amend/Correct/Supplement filed by David Gentile, 88 MOTION for Order to Show Cause *Application for Order to Show Cause* filed by Securities and Exchange Commiss filed by David Gentile. (Jeremias, Jonathan) (Entered: 09/29/2023) |
| 09/29/2023 | 176 | REPLY in Support re 167 Objection to Report and Recommendations, filed by Ascendant Capital, LLC, Jeffry Schneider. (Colton, Glenn) (Entered: 09/29/2023) |
| 10/03/2023 | 177 | Letter *regarding meet and confer concerning redactions to the Monitor's quarterly reports* by Securities and Exchange Commission (Jacobson, Neal) (Entered: 10/03/2023) |
| 10/03/2023 | 178 | Letter *to Honorable Margo K. Brodie regarding update to parties' meet and confer with respect to Defenants' objections to the Report and Recommendation of Magistrate Judge Vera M. Scanlon* by David Gentile (Jeremias, Jonathan) (Entered: 10/03/2023) |

| 10/04/2023 | 179 | Letter by Securities and Exchange Commission (Jacobson, Neal) (Entered: 10/04/2023) |
| --- | --- | --- |
| 10/13/2023 | 180 | Letter *addressed to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for September 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/13/2023) |
| 10/18/2023 | 181 | Letter *addressed to Chief Judge Brodie to submit the Monitor's eleventh Quarterly Fee Application* by Joseph T. Gardemal III (Buehler, Robert) Modified on 10/23/2023 (GS). (Entered: 10/18/2023) |
| 10/23/2023 | | ORDER granting 145 , 163 , 181 Motions for Release of Funds on consent. Ordered by Magistrate Judge Vera M. Scanlon on 10/23/2023. (GS) (Entered: 10/23/2023) |
| 10/30/2023 | 182 | Letter *addressed to Chief Judge Brodie submitting the Quarterly Report of the Monitor for the Third Quarter of 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 10/30/2023) |
| 11/03/2023 | 183 | Letter *addressed to Judge Scanlon regarding four quarterly reports that were previously filed with redactions (Dkt. Nos. 123 , 127 , 137 , and 158 )* by Joseph T. Gardemal III (Fellman, Douglas) (Entered: 11/03/2023) |
| 11/13/2023 | 184 | Letter *in Support of Receivership Order* by Barbara DeLuca, Drew R. Naylor, Peggy Rollo, Peter Beddia, Michael Oles, Robert Ricc, James Staples, as Trustee of the 616 Moved Trust (Berger, Daniel) (Entered: 11/13/2023) |
| 11/20/2023 | 185 | Letter *addressd to Chief Judge Brodie to submit the Monitor's Monthly Fee Statement for October 2023* by Joseph T. Gardemal III (Buehler, Robert) (Entered: 11/20/2023) |
| 12/07/2023 | 186 | ORDER ADOPTING REPORT AND RECOMMENDATIONS: The Court (1) grants the SEC's motion to convert the monitorship into a receivership and impose a litigation injunction, (2) adopts the Amended Proposed Order, and (3) denies Gentile's motion as moot. So ordered by Chief Judge Margo K. Brodie on 12/7/2023. (JP) (Entered: 12/07/2023) |
| 12/07/2023 | 187 | ORDER APPOINTING RECEIVER AND IMPOSING LITIGATION INJUNCTION. Ordered by Chief Judge Margo K. Brodie on 12/7/2023. (WV) (Entered: 12/08/2023) |
| 12/12/2023 | 188 | NOTICE OF APPEAL as to 186 Order Adopting Report and Recommendations,, Order on Motion to Amend/Correct/Supplement,, Order on Sua Sponte - Report and Recommendations, 187 Order by David Gentile. Filing fee $ 605, receipt number BNYEDC-17371810. (Attachments: # 1 Exhibit A - Memordandum & Order (Dkt. 186), # 2 Exhibit B - Order Appointing Receiver and Imposing Litigation Injunction (Dkt. 187)) (Jeremias, Jonathan) (Entered: 12/12/2023) |
| 12/12/2023 | 189 | MOTION for Order to Show Cause by Ascendant Capital, LLC, David Gentile, Jeffry Schneider. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jonathan R. Jeremias, # 3 Exhibit 1 - 12/8/2023 Letter, # 4 Exhibit 2 - 12/9/2023 Letter, # 5 Proposed Order) (Jeremias, Jonathan) (Entered: 12/12/2023) |
| 12/13/2023 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 188 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 12/13/2023) |
| 12/13/2023 | 190 | NOTICE of Appearance by Michael Dearington on behalf of Ascendant Capital, LLC, Jeffry Schneider (aty to be noticed) (Dearington, Michael) (Entered: 12/13/2023) |
| 12/13/2023 | 191 | NOTICE OF APPEAL as to 186 Order Adopting Report and Recommendations,, Order on Motion to Amend/Correct/Supplement,, Order on Sua Sponte - Report and Recommendations, 187 Order by Ascendant Capital, LLC, Jeffry Schneider. Filing fee $ |

| | | |
|---|---|---|
| | | 605, receipt number ANYEDC-17373576. (Attachments: # 1 Exhibit A - Memorandum & Order Adopting Report & Recommendation, # 2 Exhibit B - Order Appointing Receiver and Imposing Litigation Injunction) (Colton, Glenn) (Entered: 12/13/2023) |
| 12/13/2023 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 191 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 12/13/2023) |
| 12/14/2023 | | ORDER denying 189 Motion for Order to Show Cause. The Court exercises its discretion to grant a temporary stay so that the parties may seek a stay pending appeal from the Second Circuit. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, No. 12-CV-423, 2012 WL 2033548, at *1-2 (S.D.N.Y. June 5, 2012) (issuing a temporary stay for six days to allow an application to the Second Circuit to stay an order appointing a receiver for the duration of any appeal); *United States v. Ianniello*, No. 86-CV-1552, 1986 WL 13778, at *1 (S.D.N.Y. Dec. 4, 1986) (noting that the district court stayed its own "order [appointing a receiver] for fifteen days to permit defendants to file a notice of appeal and seek a further stay from the United States Court of Appeals for the Second Circuit"). The parties must file a motion for a stay pending appeal before the Second Circuit on or before December 21, 2023. If the parties file the motion in a timely manner, the temporary stay will remain in effect until the Second Circuit decides the stay motion. If the parties do not timely file the motion, the temporary stay will expire. Ordered by Chief Judge Margo K. Brodie on 12/14/2023. (AF) (Entered: 12/14/2023) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/20/2023 15:18:42 | | | |
| **PACER Login:** | ChloeSmithFrank | **Client Code:** | 04226.001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00583-MKB-VMS |
| **Billable Pages:** | 22 | **Cost:** | 2.20 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
SECURITIES AND EXCHANGE             :
COMMISSION,                         :
                                    :
                  Plaintiff,        :
                                    :
        -against-                   :          **REPORT AND RECOMMENDATION**
                                    :
GPB CAPITAL HOLDINGS, LLC,          :              21 Civ. 583 (MKB) (VMS)
ASCENDANT CAPITAL, LLC,             :
ASCENDANT ALTERNATIVE              :
STRATEGIES, LLC, DAVID GENTILE,     :
JEFFREY SCHNEIDER, and JEFFREY      :
LASH,                               :
                                    :
                  Defendants.       :
------------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Securities and Exchange Commission ("Plaintiff") commenced this action

against Defendants GPB Capital Holdings, LLC ("GPB"); Ascendant Capital, LLC ("Ascendant

Capital"); Ascendant Alternative Strategies, LLC ("Ascendant Strategies"); David Gentile ("Mr.

Gentile"); Jeffrey Schneider ("Mr. Schneider"); and Jeffrey Lash ("Mr. Lash"[1] and, collectively

with GPB, Ascendant Capital, Ascendant Strategies, Mr. Gentile and Mr. Schneider,

"Defendants"). See ECF No. 1. Plaintiff alleged claims (1) against GPB, Ascendant Capital,

Ascendant Strategies, Mr. Gentile and Mr. Schneider for violations of 15 U.S.C. § 77q(a); (2)

against Mr. Gentile, Mr. Schneider and Mr. Lash for aiding and abetting violations of 15 U.S.C.

§ 77q(a) pursuant to 15 U.S.C. § 77o(b); (3) against GPB, Ascendant Capital, Ascendant

Strategies, Mr. Gentile and Mr. Schneider for violations of 15 U.S.C. § 78j(b) and 17 C.F.R. §

_____

[1] The District Court entered a consent judgment as to Mr. Lash on June 9, 2023. See ECF No.
150.

1

240.10b-5; (4) against Mr. Gentile, Mr. Schneider and Mr. Lash for aiding and abetting

violations of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 pursuant to 15 U.S.C. § 78t(e); (5)

against GPB and Mr. Gentile for violations of 15 U.S.C. §§ 80b-6(1) and 80b-6(2); (6) against

Mr. Gentile for aiding and abetting violations of 15 U.S.C. §§ 80b-6(1) and 80b-6(2) pursuant to

15 U.S.C. §§ 80b-9(d) and 80b-9(f); and (7) against GPB for violations of 15 U.S.C. § 80b-6(4)

and 17 C.F.R. § 275.206(4)-2, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-7, 15 U.S.C. §

78l(g), and 15 U.S.C. § 78u-6 and 17 C.F.R. § 240.21F-17(a). See id.

     The Court appointed a monitor, Joseph T. Gardemal III (the "Monitor"), over GPB. See

ECF Nos. 23, 39. Mr. Gentile filed a motion for relief from the Amended Order Appointing

Monitor (the "Amended Order"), see ECF No. 39, pursuant to Fed. R. Civ. P. 60(b)(5), see ECF

Nos. 79, 80, 81, 82 & 83. Plaintiff, see ECF No. 85, and interested party Bohenkamp Living

Trust ("Bohenkamp"), see ECF No. 86, each filed informal letter responses to the motion. Mr.

Gentile then filed an informal letter response to Plaintiff's letter response. See ECF No. 87.

Plaintiff opposed. See ECF No. 96. Mr. Gentile replied. See ECF No. 98.

     Plaintiff filed a motion requesting that the Monitor be appointed as a receiver and that the

Court impose a litigation injunction. See ECF Nos. 88, 89, 90 & 91. Ascendant Capital and Mr.

Schneider opposed. See ECF No. 99. Mr. Lash filed a response in support of Plaintiff's

position. See ECF No. 100. GPB filed a response in support of Plaintiff's position. See ECF

No. 101. Mr. Gentile opposed. See ECF No. 102. Plaintiff replied. See ECF Nos. 103, 104 &

105. The Monitor filed an informal letter response to the motion. See ECF No. 130. Mr.

Gentile then filed an informal letter response to the Monitor's letter response. See ECF No. 131.

## I.    MR. GENTILE'S MOTION FOR RELIEF FROM THE AMENDED ORDER

Because the relief requested in Mr. Gentile's motion for relief from the Amended Order

and the relief requested in Plaintiff's motion are mutually exclusive, the Court's decision,

discussed below, to respectfully recommend that the District Court grant Plaintiff's motion

would render Mr. Gentile's motion for relief from the Amended Order moot, should the District

Court adopt the report and recommendation.[2]

## II.   PLAINTIFF'S MOTION TO CONVERT THE MONITORSHIP TO A RECEIVERSHIP AND IMPOSE A LITIGATION INJUNCTION

Plaintiff's motion has two components: a request for the conversion of the monitorship to

a receivership and a request for the imposition of a litigation injunction.  See ECF No. 89.  As an

initial matter, the Court notes that the chief executive officer of GPB and its wholly owned

subsidiary, Highline Management Inc. ("Highline"), both of which would be covered by the

---

[2] Mr. Gentile's motion for relief from the Amended Order was filed pursuant to Federal Rule of Civil Procedure 60(b), which provides, in pertinent part, that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged[,] . . . or applying it prospectively is no longer equitable."  The Advisory Committee notes to the Rule expressly state that the word "final" applies to the judgments, orders and proceedings within the scope of the Rule:

> [t]he addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment.  A final "order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision."  Petrello v. White, 533 F.3d 110, 113 (2d Cir. 2008) (citation omitted).  The Amended Order falls outside the scope of this definition.  Further, the Court's independent research has not located a decision of a federal court applying Federal Rule of Civil Procedure 60(b) to a non-final order appointing a monitor.  The filing of Mr. Gentile's motion pursuant to an inapplicable Federal Rule of Civil Procedure would constitute an independent basis for denial of the motion.  If the District Court were not to adopt the recommendation to appoint a receiver, the Court respectfully would recommend that Mr. Gentile's motion be denied on these procedural grounds.

receivership, have consented to the motion. See ECF No. 91-1 at 2.[3]  For the reasons set forth

below, the Court respectfully recommends that the District Court grant both requests.

### A.   Receivership

The Court addresses the positions of the parties as to the requested receivership, then

discusses the applicable legal standard in the context of the circumstances presently before the

Court.

#### i.   Positions Of The Parties[4]

Plaintiff, Ascendant Capital and Mr. Schneider, Mr. Lash, GPB and Mr. Gentile each

submitted filings in relation to Plaintiff's motion, as summarized below.[5]

##### a.   Plaintiff

Plaintiff argues for the conversion of the monitorship to a receivership on the basis of the

Court's equitable power to fashion remedies for federal securities law violations, see ECF No. 89

---

[3] The [Proposed] Order Appointing Receiver and Imposing Litigation Injunction (the "Proposed Order") sets forth the proposed receivership entities at Schedule 1: GPB, Highline, two entities characterized as "general partners," ten entities characterized as "LP (GPB Fund)," and six entities characterized as "SLP."  See ECF No. 91-1 at 27.  In the text of the Proposed Order, Plaintiff describes GPB as the general partner of eight limited partnerships, defined as the "GPB Funds," each owning or having owned controlling interests in various operating companies, and describes the "GPB Funds" as having approximately 17,000 limited partner investors.  See id. at 1-2.  The Proposed Order defines the proposed receivership assets as all assets and proceeds of the proposed receivership entities.  See id. at 2-3.  On or before August 2, 2023, Plaintiff is to file a letter clarifying the relationships among the proposed receivership entities, particularly as to the "GPB Funds," given the apparent inconsistency as to whether they amount to eight or ten.  If an amendment to the Proposed Order is needed, Plaintiff should submit the proposed revised text.

[4] By considering the submissions of Ascendant Capital and Mr. Schneider, Mr. Lash and Mr. Gentile, the Court does not find that they have standing to respond, but, rather, the Court considers the arguments in the interest of completeness.

[5] In his submission pertaining to factual updates invited by the Court, the Monitor states "that the Monitor has continued to hear directly from aggrieved investors seeking the return of their remaining investment capital."  ECF No. 144 at 1.

at 12, and GPB's violation of the Amended Order, through the actions of Mr. Gentile, see id. at

13-14.  By way of background, the original Order Appointing Monitor (the "Original Order")

was entered as "necessary and appropriate for the protection of investors."  ECF No. 23 at 1.

As to the former, Plaintiff contends that the need for the Court to exercise its equitable

powers to convert the monitorship to a receivership, both inherent and conferred by 15 U.S.C. §

78u(d)(5), arises from (1) Mr. Gentile's purported appointment of three new managers to GPB's

board of managers and direction of the current GPB chief executive officer to cooperate with

such newly appointed managers, see ECF No. 89 at 8, 13; (2) the purported subsequent

modification of the Limited Liability Company Agreement of GPB Capital Holdings, LLC, dated

March 20, 2013 (the "LLC Agreement"), by Mr. Gentile and the three purported new managers

"to benefit [Mr.] Gentile personally, continuing his pattern of self-dealing," by (a) providing for

increased access to information for Mr. Gentile and the three purported new managers, (b)

affording "lucrative compensation packages" to the three purported new managers, (c) permitting

further amendments to the LLC Agreement by unilateral action of Mr. Gentile, (d) requiring tax

distributions to Mr. Gentile, (e) conferring exclusive jurisdiction to the Delaware Chancery Court

for all actions relating to the LLC Agreement, and (f) providing for advanced expenses, see id.;

(3) Mr. "Gentile's distortion of the factual record in an effort to gain control over GPB, . . . [its

f]unds, and the $1 billion in cash earmarked for investors," including his contentions (a) that he

is the sole owner of GPB, where GPB is the general partner of its funds having beneficial owners

of approximately 17,000 investors, (b) that GPB's funds are required to follow Mr. Gentile's

original investment strategy, and (c) that the Monitor and current GPB management are not

properly managing the assets of GPB's funds, see id. at 9-10; and (4) the inability of GPB

management and Highline "to provide any actionable distribution plan or proposal to the

Monitor for his approval," despite "the availability of significant cash holdings approximating $1 billion," largely due to the "ill-defined duties" of Highline's board of directors "and the circuitous governance framework between it and GP[B] . . . management," see id. at 10.

As to the latter, Plaintiff relies upon the Amended Order in asserting that Mr. "[G]entile has caused GPB['s] . . . direct violation of . . . provisions" requiring approval by the Monitor of "appointment of any management-level professional or person, or any material change to compensation of any executive officer, affiliate, or related party." ECF No. 103 at 7. Plaintiff further notes that paragraphs 24 and 25 of the Amended Order contemplate the conversion of the monitorship to a receivership. See id.

In its reply, Plaintiff also responds to the assertion in Mr. Gentile's opposition, as well as the assertion in the opposition of Ascendant Capital and Mr. Schneider, as to Plaintiff's lack of discussion on the likelihood of success. See ECF No. 103 at 9-12.

In its supplemental submission pertaining to factual updates invited by the Court, Plaintiff states (1) that Mr. Gentile "still has made no attempt to bring GPB . . . back into compliance with the [Amended] . . . Order by rescinding his appointment of his nominees notwithstanding his knowledge that his action has further delayed a return of funds back to investors," ECF No. 142 at 2; (2) that "investors are no closer to having access to their funds," id.; and (3) that Mr. "Gentile's pre-trial motion to dismiss his indictment in his criminal case was denied," with that trial set for June 3, 2024, id. (citations omitted); see also USA v. Gentile, No. 21 Crim. 54 (DG) (PK), ECF No. 210 (E.D.N.Y. Apr. 17, 2023).

### b.   Ascendant Capital And Mr. Schneider

The Court notes that Ascendant Capital and Mr. Schneider do not address, let alone dispute, Plaintiff's contentions that Mr. Gentile purported to appoint three new managers and

that Mr. Gentile and the three new purported managers amended the LLC Agreement.  See supra,

Sec. II(A)(i)(a).  Instead, as to both, Ascendant Capital and Mr. Schneider disagree as to the legal

conclusions to be drawn from such conduct.  Thus, the Court does not need to conduct fact-

finding on this motion, but rather evaluates the legal arguments offered.  Nonetheless, for

completeness, the Court considers the position of Ascendant Capital and Mr. Schneider.

Ascendant Capital and Mr. Schneider contend that "the SEC has failed to meet [its] . . .

extremely high burden" including, for example, by failing to address its likelihood of success on

the merits of its claims.  ECF No. 99 at 10.

### c.    Mr. Lash

Mr. Lash supports Plaintiff's application.  See ECF No. 100 at 1; see also supra, n. 1.

### d.    GPB

GPB supports Plaintiff's motion, as GPB "supports [Plaintiff's] . . . efforts to expedite the

distribution of money to investors through the conversion of a monitorship to a receivership

under" the Monitor and to avoid "unnecessary and exorbitant expenditures flowing from [Mr.]

Gentile's recent purported amendments to the Company's operating agreement."  ECF No. 101

at 2-3.

In its supplemental submission pertaining to factual updates invited by the Court, GPB

states (1) that, "in the last year[, Mr. Gentile] . . . has at least twice falsely represented himself to

be a Manager of GPB or a GPB-related entity," ECF No. 143 at 1 n.1; (2) that "investors are

being taxed on income that they have not received," id. at 3; (3) that "[f]ive major financial

institutions . . . denied applications to open new accounts for [GPB] . . . and the Funds because of

Mr. Gentile's continued ownership of GPB and the financial institutions' concerns about the

limited controls offered by the Amended . . . Order," id.; and (4) that GPB "and the Funds have

continued to incur substantial litigation defense costs for several pre-existing civil cases which reduce the amount of cash available for distribution to limited partners," id. at 3-4.

### e.   Mr. Gentile

The Court notes that Mr. Gentile does not dispute the Plaintiff's contention, see supra, Sec. II(A)(i)(a), that Mr. Gentile purported to appoint three new managers. See, e.g., ECF No. 102 at 5 (referring to Mr. Gentile's "appointment of supplemental GPB managers"); id. at 6 (noting that Mr. Gentile "appoint[ed] supplemental managers"); id. at 7 (noting Mr. Gentile's "announce[ment] [of] his contemporaneous appointment of additional managers"); id. at 16 (stating that "Mr. Gentile . . . appointed three new managers"). Mr. Gentile does not directly address, let alone dispute, Plaintiff's contention, see supra, Sec. II(A)(i)(a), that Mr. Gentile and the three new purported managers attempted to amend the LLC Agreement; Mr. Gentile does, however, implicitly recognize such fact when referring, in the plural form, to "GPB[']s operating agreements." ECF No. 141 at 3. Instead, as to both, Mr. Gentile disagrees as to the legal conclusions to be drawn from such conduct. Thus, the Court need not conduct fact-finding on the alleged appointments and LLC Agreement amendment, but rather it evaluates the legal arguments offered.

Mr. Gentile opposes Plaintiff's application, arguing that no imminent danger of the diminution or loss of GPB's assets is present to necessitate the appointment of a receiver, as (1) Mr. Gentile's purported appointment of three new GPB managers (a) was done in view of the Court, the United States Attorney's Office, Plaintiff, the Monitor and investors, (b) does not infringe upon the Monitor's oversight authority, and (c) was of experienced individuals; (2) GPB has recently experienced "dramatic financial success," with its "maximum valuation . . . yet to be achieved"; (3) the Monitor, if appointed as a receiver, would be subject to "multiple claims of

8

breach of fiduciary duty by investors who are unsatisfied with their returns because the receiver prematurely liquidated GPB's assets and failed to act in keeping with GPB's business strategy"; (4) Plaintiff has not presented evidence as to its likelihood of success on the merits of its claims; and (5) the Monitor's continued oversight of GPB is sufficient. ECF No. 102 at 20-25.

In his supplemental submission pertaining to factual updates invited by the Court, in which Ascendant Capital and Mr. Schneider joined, Mr. Gentile states (1) that "the Monitor has admitted to already preparing a plan for distributions to investors" and being "in a position to make distributions"; (2) that Mr. Gentile has "affirmed his express support" for "GPB making distributions to investors" and for "GPB's ability to make distributions, without converting to a receivership, as supported by the relevant facts and circumstances related to each fund and investor . . . in accordance with the relevant funds' governing documents, applicable law, and binding court decisions"; (3) that "the Monitor has inexplicably failed to take any further action" as to making distributions to investors" and, along with GPB, has made "baseless claims to excuse their inaction and wrongfully deflect blame to Mr. Gentile and others," including in an April 27, 2023 letter to GPB investors referencing ongoing legal expenses in relation to the failure to make distributions; (4) that GPB investors have "unequivocally opposed the receivership and have expressed frustration with the . . . alienation of them and Mr. Gentile" by the Monitor and GPB; (5) that the Monitor and his counsel have incurred "significant fees . . . , including for work that exceeds the scope of the Amended . . . Order"; and (6) that "the Monitor has deliberately refused to engage and cooperate with Mr. Gentile – in his ongoing role as the 'Tax Matters Partner' responsible for all of . . . [GPB's] tax obligations – and with GPB creditors of past-due loans," resulting in "completely avoidable litigation" commenced by Mr. Gentile and creditors. ECF No. 141 at 1-3.

ii.    **Discussion**

Plaintiff seeks for the Court to appoint the Monitor as a receiver on two independent

bases: (1) the Amended Order, see ECF No. 89 at 13, and (2) the Court's statutory and equitable

power to remedy violations of federal securities laws, see id. at 12-15.  The Court addresses each

in turn below.

a.    **The Amended Order**

The Court below sets forth the legal standard for enforcing the Amended Order; identifies

and discusses the relevant provisions of the Amended Order; and respectfully recommends that

the District Court find that, based on the undisputed facts, GPB, through the actions of Mr.

Gentile and the three new managers purportedly appointed by him, violated the Amended Order.

1.    **Legal Standard**

Courts are empowered to "take any reasonable action . . . to secure compliance" with

their orders, with the "choice of how to enforce the order . . . reviewed for abuse of discretion."

In re Tronox Inc., 855 F.3d 84, 112 (2d Cir. 2017) (citations & quotations omitted).  As set forth

below, the Court has the authority to exercise the powers set forth in the Amended Order.  See

infra, Sec. II(A)(ii)(b).

2.    **Relevant Provisions Of The Amended Order**

Paragraph 6 of the Amended Order provides that

[t]he Monitor will have the authority to approve or disapprove the following
actions:
                             * * *
    d. any material change to compensation of any executive officer, affiliate,
    or related party of GPB, Highline, the GPB Funds, or the Portfolio
    Companies;
    e. any retention by GPB, Highline, the GPB Funds, or the Portfolio
    Companies of any management-level professional or person (with the
    exception of any professional retained in connection with litigation

> commenced prior to this Order, over which approval shall not be
> required), subject to an acceptable procedure agreed to with the Monitor.

ECF No. 39 at 3.

Paragraph 20 of the Amended Order provides that, "[i]f the Monitor believes GPB is in

some way not materially in compliance with the terms of this Order, upon notice of

noncompliance to GPB, GPB shall have 10 business days in which to cure any claimed material

noncompliance (the 'Cure Period')." Id. at 7.  Paragraph 21 of the Amended Order provides that,

> [i]f GPB does not comply with the above provisions and does not make requested
> changes within the Cure Period, upon motion of the SEC resulting in a Court
> Order, the Monitorship shall convert to a receivership.  GPB shall be afforded an
> opportunity to oppose any such application by the SEC before conversion to a
> receivership.

Id.[6]  Both Plaintiff and GPB consented to the entry of the Amended Order, as well as the

Original Order, see id. at 1, and Mr. Gentile did not oppose the imposition of the monitorship,

see ECF No. 102 at 12.

---

[6] Plaintiff also relies on paragraphs 24 and 25 of the Amended Order.

Paragraph 24 required the Monitor to "submit a report to the Court within 60 days of his initial
appointment recommending either continuation of the monitorship, converting it to a
receivership, and/or filing of bankruptcy petitions for one or more of the various entities.  The
Monitor may seek to extend the 60-day period for good cause shown." ECF No. 39 at 7.

Plaintiff does not seek relief pursuant to paragraph 24 of the Amended Order but rather cites it
(1) in the context of its explanation for the Monitor's decision to decline to earlier recommend
the conversion of the monitorship to a receivership and (2) to argue that "[t]he fact that the
Monitor Order itself, which [Mr.] Gentile was aware of and did not oppose, contains provisions
that contemplate the conversion of the monitorship to a receivership confirms that the
appointment of a receiver under the particular circumstances of this case is not an extraordinary
remedy." ECF No. 103 at 7.

Paragraph 25 permits the Monitor to,
> within 90 days of the expiration of the Monitor Order, or earlier if for good cause
> shown, recommend to the Court the contraction, expansion, continuation or
> discontinuation of the Monitorship.  GPB shall be afforded the opportunity to

### 3.   Analysis

In his capacity as "the Member holding 99% of the Distribution Percentage of GPB,"[7]

Mr. Gentile notified GPB of his appointment of "three new, additional Managers to direct GPB,"

pursuant to Article VI, Section 1[8] and Article VII, Section 1(e)[9] of the LLC Agreement.[10]  ECF

_____

respond to the Monitor's recommendation to the Court regarding any proposed
expansion or continuation of the Monitorship.
ECF No. 39 at 7-8.

The rationale for Plaintiff's citation to paragraph 25 of the Amended Order is not expressly
stated, but the Court construes such citation as an attempt to evidence the Amended Order's
contemplation of the Monitor's continuing review of his own authority, rather than as a request
for relief pursuant to that provision of the Amended Order.  See ECF No. 103 at 7.

[7] The LLC Agreement reflects that Mr. Gentile is the sole Member of GPB, with its entire
distribution percentage.  See ECF No. 102-4 at 35.  The source of the discrepancy in the
distribution percentages is unclear from the record; however, the recitation of facts assumed to
be true in the expert opinion of former Justice of the Delaware Supreme Court Jack B. Jacobs
(the "Expert") includes, without citation, the statements that Mr. "Gentile came to be the holder
of 99% of the Distribution Percentage (i.e., Member interests) in GPB . . . directly and in his
personal capacity" and that "Mr. Gentile controls indirectly the remaining 1% that is held of
record by GPB Capital Member, Inc., of which Mr. Gentile is the sole shareholder and the
President."  See ECF No. 102-7 at 4-5; see also id. at 9 (stating, without citation, that "GPB
Capital Member, Inc., an entity wholly owned by Mr. Gentile, was admitted as an additional
member with a 1% Distribution Percentage interest effective as of October 18, 2018").

[8] Article VI, Section 1 provides, among other things, that "[t]he number of Managers may be
increased or decreased by resolution of the Members[,] and any vacancies created by an increase
shall be filled by the Members."  ECF No. 102-4 at 18.

[9] Article VII, Section 1(e) provides, in pertinent part, that
    [a]ny action which may be taken at a meeting of Members may be taken without a
    meeting, without prior notice and without a vote, if a consent or consents in
    writing, setting forth the action so taken, shall be signed by the Members having
    not less than a majority of the total Distribution Percentages and shall be
    delivered to the Company by delivery to its registered office, its principal place of
    business or to an officer or agent of the Company having custody of the books in
    which proceedings of Members are recorded.
ECF No. 102-4 at 20.

[10] The LLC Agreement defines various terms pertinent to the discussion here.

No. 102-3 at 2.  Per paragraph 20 of the Amended Order, the Monitor notified GPB, with copies

to his counsel, GPB's counsel, Plaintiff, and Mr. Gentile and his counsel, that the Monitor had

been informed that Mr. Gentile had purported to take the following actions: "(i) expanding the

number of Managers of the Company from one to four and appointing each of Rick Murphy,

Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company

agreement of the Company to, among other things, provide for new compensation with respect to

non-employee Managers."  ECF No. 102-6 at 2.  The Monitor therefore provided the GPB notice

that these purported actions, among other things, violated Sections 6(d) and 6(e) of the Amended

---

"Member" is defined as
> any Person named as a member of the Company on Schedule A hereto and includes any Person admitted as an Additional Member or a Substitute Member pursuant to the provisions of this Agreement, and "Members" means two or more of such Persons when acting in their capacities as members of the Company.  For purposes of the Delaware Act, the Members shall constitute one class or group of members.

ECF No. 102-4 at 12.

"Manager" or "Managers" is defined as "the Persons designated by Members in Article VI, Section 1 hereof to act collectively as the manager of the Company within the meaning of the Delaware Act and shall include all successors appointed pursuant to the provisions of this Agreement."  Id. at 12.  Article VI, Section 1 provides, among other things, that "[t]he management of the Company's business shall be vested in its Managers designated as provided in this Article VI, Section 1 and referred to as Managers in this Agreement."  Id. at 18.

"Person" is defined as "any individual, corporation, association, partnership (general or limited), joint venture, trust, estate, limited liability company, or other legal entity or organization."  Id. at 12.

"Company" is defined as "GPB Capital Holdings, LLC, the limited liability company formed under and pursuant to the Delaware Act and this Agreement."  Id. at 11.

"Delaware Act" is defined as the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 et seq.  See id.

"Agreement" is defined as "this Limited Liability Company Agreement, as amended, modified, supplemented or restated from time to time."  Id. at 10.

Order, "that the Company ha[d] ten . . . business days in which to cure the Material Non-Compliance, and [that] if such cure does not occur . . . , the remedies described in Section 21 of the Amended Order may be invoked with immediate effect." Id. at 2-3. The absence of curative action is not in dispute by any of the parties addressing the issue, namely Plaintiff and Mr. Gentile. See ECF No. 89 at 14 (Plaintiff stating that, "[u]pon information and belief, [Mr.] Gentile has failed to cure these GPB . . . breaches, which he caused"); ECF No. 102 at 21 (Mr. Gentile contending that "there was nothing illegal, inappropriate or untoward in Mr. Gentile's appointment of additional managers"); ECF No. 103 at 8 (Plaintiff referring to Mr. "Gentile's attempt to assert managerial control resulting in a serious uncured breach of the Monitor Order"). Plaintiff and Mr. Gentile do, however, disagree as to whether curative action was required.

As explained below, the Court respectfully recommends that the District Court find that Mr. Gentile's actions caused GPB to violate both paragraph 6(e) and paragraph 6(d) of the Amended Order.

> **(a) Mr. Gentile's Actions Caused GPB To Violate Paragraph 6(e) Of The Amended Order, Warranting Relief Pursuant To Paragraph 21 Of The Amended Order.**

Mr. Gentile's actions in purportedly appointing three new managers to GPB caused GPB to violate paragraph 6(e) of the Amended Order.

Mr. Gentile's raises two arguments as to why GPB did not violate paragraph 6(e) of the Amended Order, the first of which being a purported challenge to the effect of the Amended Order on his rights and the second of which being a textual argument based on the opinion of Mr. Gentile's expert, neither of which the Court finds persuasive.

First, Mr. Gentile contends that GPB is not empowered to unilaterally limit his right to appoint additional managers. See ECF No. 102 at 13 (stating that "without Mr. Gentile's

14

consent, the Company has no authority to limit his appointment rights"); id. at 21 (arguing that

"Mr. Gentile was duly authorized under Delaware law and the Operating Agreement to appoint

additional managers and that the Company cannot limit – even in its consent to the Monitor

Order – those rights").

      In support of this argument, Mr. Gentile cites paragraphs 16 and 17 of his Expert's

opinion.  See id. at 13, 21.  Those portions of the Expert's opinion provide as follows:

> 16. The Operating Agreement contains no provision that limits or otherwise
> qualifies or restricts the power legally conferred upon the Members holding a
> majority of the Distribution Percentages to determine the number of Managers or
> to fill any newly created Manager positions.  That statement is pertinent here,
> because I understand that the SEC has taken the position that Mr. Gentile is not a
> party to the Monitor Order entered by this Court (the Eastern District of New
> York).  To the extent the SEC's contention presents a question of federal law, this
> Opinion expresses no view.  However, if and to the extent the SEC's position
> rests on a claim that it or the Monitor has a superseding consent right to appoint
> the Managers for GPB, and insofar as that claim, in turn, rests on the proposition
> that GPB—the entity itself—was lawfully empowered to—and did—supersede
> the power of the Members to appoint Managers, (a) that proposition has no basis
> or support in Delaware law or the Operating Agreement; and (b) no Delaware
> court would validate or give legal effect to a Delaware LLC unilaterally
> arrogating unto itself its Members' exclusive contractual right to determine the
> number and identity of the LLC managers without the Members' prior consent.
>
>                                     * * *
>
> 17. The foregoing analysis leads me to conclude that Mr. Gentile, as the Member
> holding a majority of the Distribution Percentages of the Company, was the
> person exclusively empowered to increase the number of its Manager positions
> and to fill the resulting Manager vacancies by written consent, so long as he
> satisfied the conditions prescribed by the Operating Agreement.  Based upon the
> facts assumed here, Mr. Gentile satisfied those conditions.  Therefore,
> a Delaware court would determine that the written consent actions Mr. Gentile
> took to increase the number of Managers and to fill the resulting vacancies were
> legally valid under Delaware law.

ECF No. 102-7 at 9-10.

      Mr. Gentile's argument is not on point.  The portion of the Expert's opinion cited

concerns constraints on GPB's authority to limit Mr. Gentile's right to appoint managers.  See id.

Mr. Gentile's reliance on the Expert's assessment that GPB limited its own authority in a way

that thwarts Mr. Gentile's authority under the LLC Agreement, contrary to Delaware law, is

based on a fundamentally incorrect assessment of the nature of the controlling document.  GPB

has not placed conditions on Mr. Gentile's right to appoint managers.  Rather, by entering the

Amended Order, the Court placed conditions on GPB retaining any "management-level"

professional, which the Court understands to include the three new proposed managers, as

discussed next.  Both Plaintiff and GPB consented to the entry of the Amended Order, as well as

entry of the Original Order, see ECF No. 39 at 1, and Mr. Gentile did not oppose the imposition

of the monitorship, see ECF No. 102 at 12.  Neither the Original Order nor the Amended Order

has been appealed, and the Amended Order is the governing Order for limits on how GPB may

operate.  The question here is not whether Mr. Gentile can appoint managers under the LLC

Agreement, but, rather, is whether any such managers may be retained by GPB; without the

Monitor's approval, the answer is no.  Mr. Gentile's attempted appointment has placed GPB in

the untenable position of being able to comply only with either the Court's Amended Order or

Mr. Gentile's attempted action.  Because it can only choose to follow the Court's Amended

Order, the attempted action by Mr. Gentile contrary to that of the Amended Order is a violation

of the Amended Order.  The Amended Order is not a contract entered into by GPB but an Order

issued by the District Court, exercising its statutory and equitable authority.  If that indirectly

limits Mr. Gentile's powers under state law, so be it.

      Second, Mr. Gentile argues that the Amended Order does not address the type of manager

that he purportedly appointed.  He contends that the "management-level professionals" described

in paragraph 6(e) of the Amended Order, and over which the Monitor has the authority to

approve or disapprove retention, are different than the "managers" defined in the LLC

Agreement, three of which Mr. Gentile purported to newly appoint.  See ECF No. 102 at 13

16

(stating that, "under Delaware law, ['managers'] are distinct from the 'management-level

professionals' contemplated under Section 6(e) of the Amended Monitor Order" because

"'managers' . . . are akin to corporate directors – whose appointment is not subject to approval

by the Monitor – and not individuals bearing operational responsibilities, whose appointment <u>is</u>

subject to approval by the Monitor" (emphasis in original)).  In support of this argument, Mr.

Gentile relies upon the following statements in the Expert's opinion, as well as paragraphs 16

and 17 of the Expert's opinion referenced above:

> 9. The issues addressed in this Opinion are governed by the text of the Operating
> Agreement, which in turn derives its legal authority and force from the Delaware
> Limited Liability Act, 6 <u>Del. C.</u> § 18-101 <u>et. seq.</u> (the "LLC Act").  The Operating
> Agreement (described generically in the LLC Act as a "limited liability company
> agreement") is an agreement among its members that sets forth their collective
> intention "as to the affairs of a limited liability company and the conduct of its
> business."  LLC Act at § 101(9).  A "Member" of an LLC is an owner of the
> LLC, analogous to a stockholder of a corporation.  Membership typically requires
> formal admission to the LLC in accordance with LLC Act Section 18-301.  A
> "Manager" of an LLC, analogous to a director of a corporation, is "a person who
> is named as a manager of [the LLC] pursuant to [an LLC] agreement."  LLC Act
> at § 101[](12).

ECF No. 102-7 at 6.

Mr. Gentile's argument on this point is unpersuasive.  First, the Amended Order

generally gives the Monitor two traunches of responsibility.  The first is to approve or disapprove

major action that would fundamentally affect the structure, assets or liabilities of GPB.  The

second is to review and comment on GPB operations in detail and to report on the findings of

that review.  Paragraph 6(e) is the only subparagraph in the approval/disapproval paragraph 6

that relates to personnel and leadership of GPB.  In order for the Monitor to exercise sufficient

control to support the legal and operational integrity of GPB, it is necessary and consistent with

the Monitor's overall authority to bring within such authority oversight over all key leadership

positions.  To permit the dilution of centralized authority without the Monitor's approval would

be inconsistent with the overall structure of the Monitor's powers and responsibilities.  Mr. Gentile's view that the voting authority of the sole manager could be diluted to one quarter of its current voting power, see ECF No. 89 at 6 n.5 (citation omitted); see ECF No. 102-4 at 18-19, Art. VI(2), without the Monitor's approval is inconsistent with the stewardship and oversight responsibilities required of the Monitor by paragraph 6 and would undermine the entire Amended Order.

Second, although Mr. Gentile cites paragraphs 9, 16 and 17 of his Expert's opinion in support of Mr. Gentile's contention that "managers" in the LLC Agreement and "management-level professionals" in the Amended Order are different, paragraphs 16 and 17 do not address this point, and paragraph 9 only partially addresses this point.  Paragraph 9 of the Expert's opinion partially addresses Mr. Gentile's contention, to the extent that it defines "[a] 'Manager' of an LLC, analogous to a director of a corporation, [as] . . . 'a person who is named as a manager of [the LLC] pursuant to [an LLC] agreement.  LLC Act at § 101[](12)."  Id. at 6.  The Expert does not take a position, however, on whether "management-level professionals" fall within the scope of this definition.  In fact, the Expert did not rely upon, let alone review, the Amended Order in rendering his opinion, and his opinion expressly states that it "addresses only the application of Delaware law to the facts assumed in this specific setting and is not intended to express any view on matters of federal law or the law of any other state or jurisdiction."  Id. at 5, 10.  Mr. Gentile's conclusory assertion that "management-level professionals" are those "bearing operational responsibilities" and that, because of such unsubstantiated definition, "management-level professionals" are not "managers" is unaddressed and unsupported by its sole citation to the Expert's opinion.  ECF No. 102 at 13.

Given the absence of a definition of "management-level professionals" provided by Mr. Gentile's Expert, the Court looks to the plain language meaning of the words "managers" and "management-level professionals" and determines that the respective meanings of such words are not distinct. Black's Law Dictionary defines a "manager" as "[s]omeone who administers or supervises the affairs of a business, office, or other organization." Manager, Black's Law Dictionary (11th ed. 2019); see also Advanced Litig., LLC v. Herzka, No. 19789, 2006 WL 4782445, at *10 (Del. Ch. Aug. 10, 2006) (considering whether an individual counter-defendant was a manager of the plaintiff limited liability company, reciting the evidence presented on the issue, noting Black's Law Dictionary's now prior definition of "a manager as [a] person who administers the affairs of a business, office, or other organization," and concluding that factual disputes precluded resolution of the issue on a motion for summary judgment (citation & quotations omitted)). Black's Law Dictionary defines "management" as "[t]he people in an organization who are vested with a certain amount of discretion and independent judgment in managing its affairs," with the subcategory of "top management" defined as "[a] high level of company management at which major policy decisions and long-term business plans are made." Management, Black's Law Dictionary (11th ed. 2019). This text supports the conclusion that the LLC Agreement[11] and the Amended Order use the terms "manger" and "management" with their common understandings.

---

[11] Mr. Gentile's argument is also unsupported by the LLC Agreement. Article VI, Section I, provides that

> [t]he management of the Company's business shall be vested in its Managers designated as provided in this Article VI, Section 1 and referred to as Managers in this Agreement. The Managers may be but need not be Members. The Members hereby agree that there shall initially be one Manager who shall be David Gentile. Managers shall serve at the pleasure of the Members and may be removed at any time with or without cause. The number of Managers may be increased or

Issues arising from Mr. Gentile's retention of control over GPB, whether on his own or through individuals selected by him, were expressly contemplated and sought to be protected against in Plaintiff's application for an order to show cause that resulted in entry of the Original Order;[12] Plaintiff specifically argued that "Gentile and his handpicked management team should not have unchecked authority over incoming cash that could be used to redeem investors." ECF No. 12 at 5. Both the terms of the Amended Order and the context in which it, and the Original Order, were entered support the deduction that "managers" are not distinct from "management-level professionals."

In sum, Mr. Gentile, in his capacity as a member of GPB, unilaterally attempted to appoint three new managers without the approval of the Monitor, thus violating paragraph 6(e) of the Amended Order. This act was a legal nullity, to the extent GPB retained these individuals, which was attempted without the Monitor's approval. The Monitor notified GPB, among others, of breach of the Amended Order and the need for curative action, in accordance with paragraph 20 of the Amended Order. No curative action has been taken in response to either the Monitor's notice or the Court's request for an update. See 4/28/2023 Order; ECF Nos. 141, 142, 143 & 144. Given the breach, paragraph 21 of the Amended Order, which provides that, "[i]f GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership," ECF No. 39 at 7, authorizes the Court to convert the monitorship to a receivership.

---

decreased by resolution of the Members[,] and any vacancies created by an increase shall be filled by the Members.
ECF No. 102-4 at 18.

[12] The Original Order and the Amended Order contain do not differ in any way relevant to the analysis here. See generally ECF No. 38.

**(b) Mr. Gentile's Actions Caused GPB To Violate Paragraph 6(d) Of The Amended Order, Warranting Relief Pursuant To Paragraph 21 Of The Amended Order.**

As discussed above, Mr. Gentile's actions in purportedly appointing three new managers to GPB caused GPB to violate paragraph 6(e) of the Amended Order. Given that the three purported new managers should never have been appointed or retained without the Monitor's approval, their compensation is contrary to paragraph 6(d) of the Amended Order.

Plaintiff and Mr. Gentile do not dispute that Mr. Gentile purported to appoint three new managers, see ECF No. 89 at 8; ECF No. 102 at 16-17, who were given compensation packages of up to $400,000 per year, see ECF No. 89 at 8. Plaintiff argues that these changes constitute a "material change to compensation of any executive officer, affiliate, or related party of GPB," per paragraph 6(d) of the Amended Order. ECF No. 39 at 3; see also ECF No. 89 at 13 n.7. Mr. Gentile fails to present an argument as to how or why his unilateral attempted appointment of three new managers, with their attendant compensation packages, did not violate paragraph 6(d) of the Amended Order. See generally ECF No. 102. Mr. Gentile's actions contravened the Amended Order such that he placed GPB in violation of paragraph 6(d) thereof, authorizing the imposition of a receivership pursuant to paragraph 21 of the Amended Order. See ECF No. 39 at 7.

**b.      The Court's Power To Remedy Violations Of Federal Securities Laws**

The Court below identifies the legal standard for exercising judicial power to appoint a receiver; analyzes whether such exercise is warranted in this case; and, in view of the foregoing, as well as GPB's qualifying violations of the Amended Order discussed, supra, Sec. II(A)(ii)(a), respectfully recommends that the District Court convert the monitorship to a receivership by so-

ordering the Proposed Order, with the sole proposed modification discussed below and

subsequent to the clarification to be provided by Plaintiff, see supra, n.3.

### 1.    Legal Standard

15 U.S.C. § 78u(d)(5) provides that, "[i]n any action or proceeding brought or instituted

by the Commission under any provision of the securities laws, the Commission may seek, and

any Federal court may grant, any equitable relief that may be appropriate or necessary for the

benefit of investors."  As such, district courts are vested with "broad power to remedy violations

of federal securities laws," Eberhard v. Marcu, 530 F.3d 122, 131 (2d Cir. 2008) (citation

omitted), which includes "the power to appoint trustees or receivers," S.E.C. v. Am. Bd. of

Trade, Inc., 830 F.2d 431, 436 (2d Cir. 1987) (citation omitted).  Reasons for exercising such

power to appoint a receiver in such a case include

> preserv[ing] the status quo while the various transactions [are] unraveled . . . to
> obtain an accurate picture of what transpired[,] . . . conserv[ing] the existing
> estate[,] . . . marshal[ing] the assets of the defendant[,] prevent[ing] the
> dissipation of [the] defendant's assets pending further action by the court[,] . . .
> [and] investigat[ing] the defendant's transactions.

Eberhard, 530 F.3d at 131 (citations & quotations omitted).  Factors weighing in favor of

appointment of a receiver include:

> [f]raudulent conduct on the part of defendant; the imminent danger of the property
> being lost, concealed, injured, diminished in value, or squandered; the inadequacy
> of the available legal remedies; the probability that harm to plaintiff by denial of
> the appointment would be greater than the injury to the parties opposing
> appointment; and, in more general terms, plaintiff['']s probable success in the
> action and the possibility of irreparable injury to his interests in the property.

S.E.C. v. Amerindo Inv. Advisors Inc., No. 5 Civ. 5231 (RJS), 2013 WL 1385013, at *13

(S.D.N.Y. Mar. 11, 2013) (citation & quotations omitted) (concluding that, "[b]ased on the

Individual Defendants' extensive fraudulent conduct, the risk that the value of restrained assets

will irreversibly dissipate, and the risk of harm to the SEC, the individual victims, and other

investors, the Court finds that the appointment of a receiver is warranted in the instant case"),

modified on reconsid. on other grounds, No. 5 Civ. 5231 (RJS), 2014 WL 405339 (S.D.N.Y.

Feb. 3, 2014), aff'd, 639 F. App'x 752, 755 (2d Cir. 2016) (rejecting the appellants' argument

"that the district court erred in its appointment of a receiver," as "[t]here is no question that

district courts may appoint receivers as part of their broad power to remedy violations of federal

securities laws" (citation & quotations omitted)).

### 2.   Analysis

The Court respectfully recommends that the grounds for and factors that may be

considered in appointing a receiver warrant such relief here.  The Court notes that it is applying

the factors set forth in Eberhard and Amerindo, and not the standard suggested by Mr. Gentile,

see supra, Sec. II(A)(i)(e), which is not consistent with the statutes or case law.  The Court has

already determined that the Monitor is necessary to protect investors; the question here is

whether recent events require the additional step of converting the monitorship to a receivership.

As to preserving the status quo, conserving the existing estate, and preventing the

dissipation of assets discussed in Eberhard, and the danger of property loss and irreparable injury

discussed in Amerindo, the three purported managers newly appointed by Mr. Gentile, without

approval of the Monitor, will receive "up to $400,000 per year in compensation," have caused

"GPB . . . and the Monitor [to] incur[] substantial legal expenses," and "have already attempted

to reverse a reduction in force implemented by GPB . . . with Monitor consent to reduce

unnecessary expense," whereas, "[i]f a receiver is appointed, the streamlined management

structure will help to reduce the current $7 million quarterly expense related to management and

operating service fees charged by GPB . . . and Highline to the GPB Funds."  ECF No. 103 at 10.

23

As to marshaling assets discussed in <u>Eberhard</u>, "sales of GPB assets have returned approximately $1 billion in gross proceeds to the GPB limited partnerships," which, "[f]ollowing the appointment of a [r]eceiver, . . . would begin to be returned to the limited partners themselves, namely the investors in the GPB partnerships, to whom these monies belong." ECF No. 144 at 2. The Court gave Defendants an opportunity to update the record as to progress in resolving outstanding issues of concern, such as the claimed appointment of unauthorized managers and distribution of assets, but Defendants did not report any meaningful progress. <u>See generally</u> ECF Nos. 141 & 143.

As to the inadequacy of legal remedies discussed in <u>Amerindo</u>, in view of the current role of the Monitor, legal remedies have proven inadequate under the Original Order and the Amended Order and appear to be inadequate to redress the ongoing harms. <u>See</u> ECF No. 103 at 11. Thus, while Plaintiff pursued a cautious approach in requesting the initial appointment of the Monitor, the undisputed self-serving conduct of Mr. Gentile and the actions of the three managers purportedly appointed by him, both of which caused GPB to violate the Amended Order, necessitate consideration of the more fulsome restrictions of a receivership.

As to the balancing of the parties' interests discussed in <u>Amerindo</u>, Plaintiff and, by extension, GPB's investors, will obtain the aforementioned benefits if a receiver is appointed, and GPB supports such relief, <u>see generally</u> ECF Nos. 101 & 143, whereas Mr. Gentile has "already relinquished control over GPB . . . voluntarily in February 2021." ECF No. 103 at 11. Plaintiff has also highlighted the need to protect the investors by preventing Mr. Gentile and the new purported managers from undermining GPB's finances through improper access to funds and information. <u>See</u> ECF No. 89 at 10. The investors' and GPB's interests outweigh Mr. Gentile's interests.

As to the fraudulent conduct and the likelihood of Plaintiff's success in the action

discussed in Amerindo, Mr. Gentile takes the position that, because "there has been no judicial

determination as to Mr. Gentile's liability[,] . . . [there is] no evidence of the SEC's likelihood of

success warranting a receivership"; in support of this position, he contends (1) that "courts in the

Second Circuit must consider," among other things, the "plaintiff's probable success in the

related action" and (2) that "the allegations against Mr. Gentile remain pending without a trial

date."[13] He points out that Plaintiff's application "largely relies on authority in which the

defendant had already pled guilty or there had been a finding of civil liability against the

defendant at the time that a receiver was appointed," implying that a receiver may not be

appointed without such a plea or finding.  ECF No. 102 at 19-20, 24 n. 26, 25 (citations omitted).

As to the former, Mr. Gentile's statement that consideration of all factors cited in Amerindo is

mandatory is incorrect, as the Amerindo Court only recited factors that, if present, would support

the appointment of a receiver.  See Amerindo, 2013 WL 1385013, at *13 (citation omitted).  As

to the latter, Mr. Gentile's implicit position that a court may not appoint a receiver until after a

finding of civil liability or criminal culpability is belied by decisions in the Second Circuit doing

so.  See generally, e.g., S.E.C. v. Credit Bancorp, Ltd., 290 F.3d 80, 85 (2d Cir. 2002); S.E.C. v.

Legend Venture Partners LLC, 23 Civ. 5326 (LAK), 2023 WL 4719659, at * 3 (S.D.N.Y. July

11, 2023); Baliga v. Link Motion Inc., 385 F. Supp. 3d 212, 221-23 (S.D.N.Y. 2019); S.E.C. v.

Callahan, 193 F. Supp. 3d 177, 182-83 (E.D.N.Y. 2016), reconsid. denied, No. 12 Civ. 1065

(ADS) (AYS), 2016 WL 11499455 (E.D.N.Y. Oct. 4, 2016), appeal withdrawn, No. 16-3737,

2017 WL 5201905 (Feb. 13, 2017); S.E.C. v. H.S. Simmons & Co., 190 F. Supp. 432, 433

---

[13] A trial date of June 3, 2024 has since been set in the criminal case.  See USA v. Gentile, No.
21 Crim. 54 (DG) (PK), ECF No. 210 (E.D.N.Y. Apr. 17, 2023).

(S.D.N.Y. 1961). Mr. Gentile's argument is inconsistent with the goal of the receivership to protect investors and the limited liability company. He essentially argues that, despite his indictment, he should be permitted to continue running the company pending his trial, despite his continued disregard of the corporate form, conduct similar to that which formed part of the underlying indictment as well. See generally USA v. Gentile, No. 21 Crim. 54 (DG) (PK), ECF No. 1 (E.D.N.Y. Jan. 29, 2021). To permit this would be contrary to the goal of redress for victims and investors. See S.E.C. v. Credit Bancorp, Ltd., No. 99 Civ. 11395 (RWS), 2000 WL 1752979, at *1 (S.D.N.Y. Nov. 29, 2000), aff'd, 290 F.3d 80 (2d Cir. 2002).

In sum, the actions of Mr. Gentile and the three new managers that he purportedly appointed, as they affect GPB, have resulted in a fracture in GPB's leadership that is irremediable without Court intervention. On one hand, GPB, under the purview of the Monitor, has been working to address the state in which Mr. Gentile left it and move forward in a manner that is productive to its investors. On the other hand, GPB is in the precarious position of operating with three new "purported" managers and a "purportedly" amended LLC Agreement, both of which may actively undermine the aforementioned efforts. Two tangible examples are (1) the compensation packages of up to $400,000 per year provided to the three new purported managers, who were appointed by Mr. Gentile without approval of the Monitor, which are depleting GPB assets, see ECF No. 89 at 8, and (2) the decision of "[f]ive major financial institutions . . . [to] den[y] applications to open new accounts for [GPB] . . . and the Funds because of Mr. Gentile's continued ownership of GPB and the financial institutions' concerns about the limited controls offered by the Amended . . . Order," ECF No. 143 at 3. The uncertainty of GPB's position is creating significant consequences, which are damaging its financial health and, by extension, the finances of its investors. At this point, the conversion of

the monitorship to a receivership is necessary to cabin the damages.  As such, the Court respectfully recommends that the District Court find that it has the statutory and equitable power to appoint a receiver, and, given Mr. Gentile's conduct and failure to correct such conduct, in contravention of the Amended Order, as discussed, supra, Sec. II(A)(ii)(a), that the Court exercise such authority.

**B.      Litigation Injunction**

The Court first addresses the positions of the parties as to the requested litigation injunction, then discusses the applicable legal standard in the context of the circumstances presently before the Court.

**i.      Positions Of The Parties[14]**

Plaintiff, Ascendant Capital and Mr. Schneider, Mr. Lash, GPB and Mr. Gentile each submitted filings in relation to Plaintiff's application.

**a.      Plaintiff**

Plaintiff requests the entry of a litigation injunction "to consolidate all claims against GPB . . . and . . . [its f]unds in order to effectuate an orderly claims and distribution process." ECF No. 89 at 15.  Plaintiff argues that GPB and its funds "are facing a number of complicated and uncertain actions by investors and others that threaten to delay distributions to investors" and result in "potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control."  Id. at 16.

---

[14] By considering the submissions of Ascendant Capital and Mr. Schneider, Mr. Lash and Mr. Gentile, the Court does not find that they have standing to respond, but, rather, the Court considers the arguments in the interest of completeness.

### b.     Ascendant Capital and Mr. Schneider

Ascendant Capital and Mr. Schneider oppose the imposition of a litigation injunction.
See ECF No. 99 at 14.

### c.     Mr. Lash

Mr. Lash supports the imposition of a litigation injunction.  See ECF No. 100 at 1.

### d.     GPB

GPB supports the imposition of a litigation injunction.  See ECF No. 101 at 4.

In its supplemental submission, GPB noted that "the Funds have continued to incur
substantial litigation defense costs for several pre-existing civil cases which reduce the amount
of cash available for distribution to limited partners."  ECF No. 143 at 3-4.

### e.     Mr. Gentile

Mr. Gentile contends that the imposition of a litigation injunction is premature.  See ECF
No. 102 at 28.

### ii.     Discussion

The Court below identifies the legal standard for the imposition of a litigation injunction
and analyzes whether a litigation injunction is warranted here.

Where a "stay provides that parties may seek leave of the district court to proceed against
the receivership entities, . . . a district court in an SEC enforcement action may, upon an
appropriate showing of necessity, stay proceedings against a court-imposed receivership, and . . .
such a stay can be made effective against persons not parties to the SEC action who have notice
of the stay." S.E.C. v. Wencke, 622 F.2d 1363, 1371, 1373 (9th Cir. 1980).  The rationale is that

> [a] receiver appointed by a court in the wake of a securities fraud scheme may
> encounter difficulties sorting out the financial status of the defrauded entity or
> entities[,] . . . a genuine danger that some litigation against receivership entities
> amounts to little more than a continuation of the original fraudulent scheme[,] . . .

> finances of the receivership entities so obscure or complex that the receiver is
> hampered in conducting litigation[, and] expense involved in defending the many
> lawsuits which are often filed against an entity in the wake of a securities fraud
> scheme,

such that "[a] stay of proceeding against receivership entities except by leave of the court may be

an appropriate response to the above concerns." Id. In sum, "[o]nce assets are placed in

receivership, a district court's equitable purpose demands that the court be able to exercise

control over claims brought against those assets," given its "interest in both the value of the

claims themselves and the costs of defending any suit as a drain on receivership assets," such

that "the receivership court may issue a blanket injunction, staying litigation against the named

receiver and the entities under his control unless leave of court is first obtained," which extends

to "non-parties to the underlying litigation . . . , so long as the non-parties have notice of the

injunction." Liberte Capital Grp. v. Capwill, 462 F.3d 543, 551-52 (6th Cir. 2006) (citations

omitted).[15] Although "[a]n anti-litigation injunction is simply one of the tools available to courts

to help further the goals of the receivership" such that it is "to be used sparingly, there are

situations in which [it is] . . . entirely appropriate." Byers, 609 F.3d at 92-93 (noting that "this

litigation[, where] the receivership must manage hundreds of Wextrust entities that sprawl across

the Middle East, Africa and the United States, Many of which have co-mingled assets[,] . . . is

precisely the situation in which an anti-litigation injunction may assist the district court and

receiver who will want to maintain maximum control over the assets").

The litigation injunction set forth in section 7 of the Proposed Order, see ECF No. 91-1 at

13-14, as modified, is warranted in this case. Plaintiff has invoked the reasoning, which the

---

[15] The Court of Appeals for the Second Circuit has adopted the reasoning and holding of the
Wencke and Liberte Courts as to the imposition of litigation injunctions in the receivership
context that are beyond the scope of Federal Rule of Procedure 65. See S.E.C. v. Byers, 609
F.3d 87, 91 (2d Cir. 2010).

Court finds persuasive, held to justify the imposition of litigation injunction by the Wencke and Liberte Courts, including that GPB and its "[f]unds are facing a number of complicated and uncertain actions by investors and others that threaten to delay distributions to investors" and that the relief requested "is necessary to centralize all claims to the assets before this Court" and "prevent potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control." ECF No. 89 at 16.

### C.   Proposed Order

Plaintiff submitted the Proposed Order with its application. See generally ECF No. 91-1. Ascendant Capital and Mr. Schneider raise two issues with the Proposed Order. See ECF No. 99 at 10-13. Plaintiff contends that these objections are premature. See ECF No. 103 at 12-13.

The Monitor has explained:

> [T]he proposed Receivership order provides for a litigation injunction to centralize the claims process in this Court. There are a number of pending litigation proceedings, including class action litigation, that will require potential reserves, and there are limited funds available for these purposes. I would also note that the proposed litigation injunction includes a carve-out for federal and state regulatory actions, and it will be my priority to resolve such proceedings for the benefit of investors.

ECF No. 90 at 12.

To comply with the dictates of Wencke and Liberte, the undersigned respectfully recommends that Paragraph 18 of the Proposed Order be modified to add, as a final sentence, the following: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets."

As to the objections raised by Ascendant Capital and Mr. Schneider, first, they argue that

paragraphs 6(g)[16] and 16(c)[17] of the Proposed Order are in apparent conflict with Delaware

orders and judgments providing for the advancement of legal fees and expenses to Mr.

Schneider, which, if entered, could result in the infringement of Mr. Schneider's "Sixth

Amendment right[] to counsel in the companion criminal case" or violation of "the requirement

that lawfully obtained Delaware Court Orders and Judgments are entitled to full faith and credit."

---

[16] Paragraph 6(g) of the Proposed Order provides the receiver with the following powers and duties:

> Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, but in no event shall the Receiver, without prior order of the Court, make any payments or transfers of property of a value in excess of $50,000 (fifty-thousand dollars), except that the Receiver may pay the following fees, costs, expenses and other charges in the ordinary course without regard to the foregoing cap and without prior order of the Court: (i) compensation and benefits to employees, including temporary non-payroll staff, (ii) rent, (iii) insurance premiums and related costs, (iv) the fees and costs of Phoenix American Financial Services related to administering the GPB Funds and all other expenses necessary to administer and operate the GPB Funds, (v) the fees and costs of TransPerfect related to records management, (vi) other routine costs and expenses of the Receivership Estate, including, without limitation, those related to: information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal and other utilities and services, and (vii) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court.

ECF No. 91-1 at 4-6.

[17] Paragraph 16(c) of the Proposed Order enjoins the receivership entities and all persons or entities who receive the Proposed Order from taking or causing to be taken any action that, without the receiver's express written agreement, would:

> Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets.

ECF No. 91-1 at 12-13.

ECF No. 99 at 10-12. Ascendant Capital and Mr. Schneider have not provided the Court with a copy of the judgments and orders to which they refer, so the Court cannot evaluate the interaction of the judgments and orders referenced and the Proposed Order, if any. Even assuming that Ascendant Capital and Mr. Schneider have accurately described that the referenced judgments and orders provide for the advancement of legal fees and expenses to Mr. Schneider, neither paragraph 6(g) nor paragraph 16(c) of the Proposed Order would prohibit the payment of such fees and expenses. As to paragraph 6(g), the provision would require that this Court authorize any such payment of a value exceeding $50,000. See ECF No. 91-1 at 5-6. As to paragraph 16(c), the provision would essentially prohibit the dissipation or diminution of assets without written agreement of the receiver. See id. at 12-13. This provision must be read in the context of the entire Proposed Order; for example, paragraph 6(g) expressly provides for the dissipation and diminution of assets, including by, among other things, payments ordered by the Court. See id. at 5-6. In context, paragraph 16(c) cannot be read as a wholesale bar to the dissipation or diminution of assets if funds were to be spent on approved activities.

Second, they contend that paragraph 28 of the Proposed Order, permitting the receiver to waive, assign or release privileges, is unnecessary and would implicate common interest and joint defense privileges among GPB, Ascendant Capital and Mr. Schneider. See ECF No. 99 at 12-13. Paragraph 28 provides that any privileges or immunities either (1) held by the receivership entities, which amount to a list of twenty entities, see id. at 27, the Monitor and the monitorship or (2) attaching to or arising from their documents, data or communications are transferred to the receiver and may be enforced, waived, assigned or released by the receiver. See id. at 16-17. The holder of any privileges or immunities may exercise those privileges or immunities as he, she, or it sees fit, subject to applicable law. See, e.g., U.S. v. Agnello, 135 F.

Supp. 2d 380, 383 (E.D.N.Y. 2001) (stating that "[a] client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so"), aff'd, 16 F. App'x 57 (2d Cir. 2001). The Proposed Order does not excuse the receiver from its obligation to comply with applicable law in the exercise of such privileges or immunities. Therefore, if GPB, Ascendant Capital and Mr. Schneider share certain common interest and joint defense privileges, whether by operation of law or by agreement, which has not been provided to the Court, the receiver would be bound by any applicable limitations imposed by law.

## IV.    CONCLUSION

The undersigned respectfully recommends that Mr. Gentile's motion for relief from the Amended Order be denied as moot and that Plaintiff's application for conversion of the monitorship to a receivership and for the imposition of a litigation injunction be granted, subsequent to the clarification to be provided by Plaintiff, see supra, n.3, with Paragraph 18 of the Proposed Order modified to add, as a final sentence, the following: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets."[18]

---

[18] The application for leave to submit amicus curiae briefs by Western International Securities, Inc., FSC Securities Corp., Triad Advisors, LLC, royal Alliance Associates, Inc., Sagepoint Financial, Inc., Woodbury Financial Services, Inc., and twenty-six other broker-dealers and investment adviser firms, see ECF No. 149 at 1, is denied as moot. As such, the Court has not addressed Mr. Gentile's opposition thereto, in which Mr. Schneider and Ascendant Capital joined. See generally ECF No. 154.

## IV.    OBJECTIONS

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F. 4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision" (internal citation & quotations omitted)).

Dated: Brooklyn, New York
July 28, 2023

_____
Vera M. Scanlon
VERA M. SCANLON
United States Magistrate Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

               v.

GPB CAPITAL HOLDINGS, LLC, ASCENDANT
CAPITAL, LLC, ASCENDANT ALTERNATIVE
STRATEGIES, LLC, DAVID GENTILE, JEFFRY
SCHNEIDER, and JEFFREY LASH,

                  Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-583 (MKB) (VMS)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Securities and Exchange Commission (the "SEC") commenced the above-captioned action on February 4, 2021, against Defendants GPB Capital Holdings, LLC ("GPB"), Ascendant Capital, LLC ("Ascendant Capital"), Ascendant Alternative Strategies, LLC ("Ascendant Strategies"), David Gentile, Jeffry Schneider, and Jeffrey Lash (the "Individual Defendants"). (*See* Compl., Docket Entry No. 1.) The SEC alleged claims (1) against GPB, Ascendant Capital, Ascendant Strategies, Gentile, and Schneider for violations of the Securities Act, 15 U.S.C. § 77q(a); (2) against Gentile, Schneider, and Lash for aiding and abetting violations of the Securities Act, 15 U.S.C. § 77q(a) as controlling persons pursuant to 15 U.S.C. § 77o(b); (3) against GPB, Ascendant Capital, Ascendant Strategies, Gentile, and Schneider for violations of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; (4) against Gentile, Schneider, and Lash for aiding and abetting violations of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 pursuant to 15 U.S.C. § 78t(e); (5) against GPB and Gentile for violations of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2); (6) against Gentile for aiding and abetting

violations of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2) pursuant to 15 U.S.C.

§§ 80b-9(d) and 80b-9(f); and (7) against GPB for violations of the Advisers Act, 15 U.S.C.

§ 80b-6(4) and 17 C.F.R. § 275.206(4)-2, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-7, 15

U.S.C. § 78l(g), and 15 U.S.C. § 78u-6 and 17 C.F.R. § 240.21F-17(a).[1] (*See id.*)

On February 12, 2021, the Court appointed a monitor, Joseph T. Gardemal III (the

"Monitor"), to oversee GPB, (Order Appointing Monitor (the "Order"), Docket Entry No. 23),

and on April 14, 2021, on consent of the SEC and GPB, the Court amended the Order (the

"Amended Order"), (Am. Order, Docket Entry No. 39). On May 31, 2022, Gentile moved for

relief from the Amended Order, and on June 13, 2022, the SEC cross-moved to convert the

monitorship into a receivership and impose a litigation injunction.

Currently before the Court is a report and recommendation dated July 28, 2023, from

Magistrate Judge Vera M. Scanlon recommending that the Court (1) grant the SEC's application

to convert the monitorship into a receivership and impose a litigation injunction, and (2) deny

Gentile's motion as moot (the "R&R"). (R&R 33, Docket Entry No. 157.) On September 8,

2023, Schneider and Ascendant Capital filed an objection to the R&R, and Gentile filed a

separate objection. On September 22, 2023, the SEC and GPB filed responses in support of the

R&R, and on September 29, 2023, Gentile, Schneider, and Ascendant Capital filed replies.

For the reasons discussed below, the Court grants the SEC's motion, adopts the Amended

Proposed Order, and denies Gentile's motion as moot.

---

[1] The SEC alleged that Defendants perpetrated a fraudulent scheme in which they used
investor funds to satisfy an annualized 8% distribution to investors, while representing to the
investors that the distributions represented profits from the companies GPB invested in; failed to
deliver audited financial statements; failed to register two funds with the SEC; impeded former
employees from communicating with the SEC; and retaliated against a whistleblower. (*See*
Compl. ¶¶ 1–7.)

## I.  Background

### a.  Factual and procedural background

GPB is a Delaware limited liability company with a principal place of business in New York, New York, which holds approximately $238,637,198 in assets under management. (Compl. ¶ 21.)  Ascendant Strategies is a Delaware limited liability company with a principal place of business in New York, New York, and since March of 2017, "offers and sales of the interests in GPB Capital limited partnership funds have been sourced through [Ascendant Strategies]." (*Id.* ¶ 23.)  Ascendant Capital is a Delaware limited liability company with a principal place of business in West Lake Hills, Texas, and serves as the placement agent for GPB. (*Id.* ¶ 22.)  Ascendant Capital is a branch office of Ascendant Strategies. (*Id.* ¶ 23.)  Gentile is the founder, owner, and former CEO of GPB.[2] (*Id.* ¶ 24.)  Schneider is a minority owner of Ascendant Strategies and the sole owner and CEO of Ascendant Capital. (*Id.* ¶ 25.)  Lash served as managing partner of GPB from 2013 to early 2018 and was responsible for formulating GPB's automotive retail strategy. (*Id.* ¶ 26.)

The SEC alleged in the Complaint that between April of 2014 and December of 2018, GPB served as the general partner and/or fund manager in five limited partnership funds: Automotive Portfolio, Holdings I, Holdings II, Waste Management, and Cold Storage (the "Funds"). (*Id.* ¶ 29.)  GPB marketed its investments exclusively through Ascendant Capital, and Ascendant Strategies promoted the investments to dozens of broker-dealers nationwide. (*Id.* ¶ 31.)  Investors in the Funds paid significant fees and expenses, including $79 million in

---

[2] On February 5, 2021, Gentile resigned as CEO and sole manager of GPB and appointed Rob Chmiel as interim CEO and sole manager. (Decl. of Joseph T. Gardemal III ("Gardemal Decl.") ¶ 10, Docket Entry No. 90.)  On July 1, 2021, GPB officially named Chmiel as CEO. (*Id.*)

management fees to GPB, $26 million in acquisition fees to Ascendant Strategies and another broker-dealer, and $187 million in selling fees to Ascendant Capital and other broker-dealers. (*Id.* ¶ 33.) To attract investors, GPB promised an 8% per annum distribution as well as additional "special distributions." (*Id.* ¶¶ 34–35.) GPB represented that the source of the distributions would be profits from operations of the Funds' portfolio companies. (*Id.* ¶ 36.) Starting "as early as August 2015," instead of paying distributions based on operations of the portfolio companies, GPB used investor funds to cover the shortfall between the profits from operations of the Funds' portfolio companies and the amounts needed for the distribution payments. (*Id.* ¶¶ 41–42.) The Individual Defendants[3] "manipulated certain of the Funds' financial statements to give the false appearance that the income [was being] earned by the Funds" rather than inform investors that the Funds were not performing as projected. (*Id.* ¶ 49.)

---

[3] On February 4, 2021, Gentile, Schneider, and Lash were publicly charged in a criminal action in the Eastern District of New York (the "Criminal Action"). *See* Indictment, *United States v. Gentile*, No. 21-CR-54 (E.D.N.Y. Feb. 4, 2021). The indictment alleges, among other things, that Gentile, Schneider, and Lash "together with others, engaged in a scheme to defraud investors and prospective investors" relating to GPB and its Funds. *See id.* On July 26, 2023, Lash pleaded guilty to one count of wire fraud. *See* Order Accepting Guilty Plea, *United States v. Gentile*, No. 21-CR-54 (E.D.N.Y. July 26, 2023). Gentile and Schneider are scheduled to proceed to trial on June 3, 2024. *See* Minute Entry, *United States v. Gentile*, No. 21-CR-54 (E.D.N.Y. Apr. 17, 2023). On November 9, 2021, Schneider filed an action in Delaware Chancery Court against GPB and related entities, seeking advancement of legal expenses for the various actions pending against himself, including the criminal prosecution in the Eastern District of New York (the "Delaware Action"). (*See* Schneider & Ascendant Capital's Objs. to the R&R ("Schneider's Objs.") 4, Docket Entry No. 167.) The Delaware Action resulted in an order granting summary judgment, (*see* Final Order Granting Summ. J., annexed to Decl. of Glenn C. Colton ("Colton Decl.") as Ex. A, Docket Entry No. 167-2), and two orders regarding advancement, one of which sets forth specific procedures for the evaluation and then advancement of attorneys' fees and other expenses (the "*Fitracks* Order"). (*See* Schneider's Objs. 4; *Fitracks* Order, annexed to the Colton Decl. as Ex. B, Docket Entry No. 167-3; Judicial Action Form, annexed to the Colton Decl. as Ex. C, Docket Entry No. 167-4.) On December 20, 2021, Gentile filed a similar action in Delaware Chancery Court, which granted a similar advancement order. (*See* Stipulation and Advancement Order, annexed to the Decl. of Jonathan R. Jeremias ("Jeremias Decl.") as Ex. 10, Docket Entry No. 168-11.)

In addition, Gentile and Schneider engaged in conflicted transactions, including overpaying for acquisitions to inflate their own acquisition fees and otherwise inflating their own compensation without disclosing these conflicted transactions to investors. (*Id.* ¶¶ 71–73, 74.) Finally, the SEC alleged that GPB failed to comply with the applicable regulatory requirements, including by failing to deliver audited financial statements, (*id.* ¶¶ 77–81), failing to register certain of its Funds, (*id.* ¶¶ 82–83), requiring employees to sign termination agreements that restricted their ability to report misconduct at GPB, (*id.* ¶¶ 84–91), and retaliating against whistleblowers, (*id.* ¶¶ 92–111).

On February 12, 2021, the Court appointed the Monitor, and on April 14, 2021, amended the Order. (*See* Order; Am. Order.) On May 31, 2022, Gentile moved for relief from the Amended Order, arguing that the Monitor had completed his work and therefore the scope of his duties should be narrowed.[4] (*See* Gentile's Relief Mem. 6, 25.) In support of his motion, Gentile argued that GPB, its interim management, and the Monitor had "steadfastly blocked" his repeated efforts to assist the company and benefit its investors. (*Id.* at 16.) He contends that he saw "no other option . . . [than] to appoint new managers" in order to "carry out GPB's business plan, instead of merely liquidating assets." (*Id.* at 24.)

On June 13, 2022, the SEC moved for an order to show cause why the monitorship should not be converted into a receivership.[5] (SEC's Mot.) The SEC alleged that on or about

---

[4] (Gentile's Not. of Mot. for Relief ("Gentile's Relief Mot."), Docket Entry No. 79; Gentile's Mem. in Supp. of Gentile's Relief Mot. ("Gentile's Relief Mem."), Docket Entry No. 80.)

[5] (SEC's Mot. for an Order to Show Cause ("SEC's Mot."), Docket Entry No. 88; SEC's Mem. in Supp. of SEC's Mot. ("SEC's Mem."), Docket Entry No. 89; Gentile's Mem. in Opp'n to SEC's Mot. ("Gentile's Opp'n"), Docket Entry No. 102; SEC's Reply in Supp. of SEC's Mot. ("SEC's Reply"), Docket Entry No. 103.)

May 27, 2022, Gentile advised GPB's CEO and sole manager, Rob Chmiel, that he had

appointed three new managers. (SEC's Mem. 5.) Gentile directed GPB's CEO to cooperate

with his newly-installed managers and "seek consensus" with them regarding GPB's future

course. (*Id.* at 5.) In addition, the SEC alleged that Gentile and the new managers modified

GPB's Operating Agreement[6] so that it provided (1) Gentile and the new managers expanded

information rights, (2) compensation packages for the new managers of up to $400,000 per year,

(3) Gentile with the ability to unilaterally amend the Operating Agreement, (4) mandatory tax

distributions to Gentile, (5) exclusive jurisdiction to the Delaware Chancery Court for all actions

related to the Operating Agreement, and (6) advancement of expenses. (*Id.* at 5; *see also*

Gardemal Decl. ¶ 21.) The SEC argued that Gentile's "distortion of the factual record" in an

effort to gain control of GPB "require[d] that a receiver be appointed to take exclusive

managerial control over [GPB] and the GPB Funds . . . for the benefit of investors." (SEC's

Mem. 7.) The SEC also argued that Gentile's actions constituted a breach of the Amended Order

and a separate basis for converting the monitorship to a receivership. (*See id.* at 5 n.6; SEC's

June 2, 2022 Letter 1–2, Docket Entry No. 85.) In addition to its motion, the SEC filed a

proposed order that detailed its proposed terms of the receivership (the "Proposed Order"). (*See*

Proposed Order, annexed to the Decl. of Neal Jacobson as Ex. 1, Docket Entry No. 91-1.)

By report and recommendation dated July 28, 2023, Judge Scanlon recommended that the

Court (1) grant the SEC's application to convert the monitorship into a receivership and impose a

litigation injunction, and (2) deny Gentile's motion as moot. (R&R 33.) Judge Scanlon also

directed the SEC to submit a revised order that included certain minor revisions and

---

[6] (Limited Liability Company Agreement of GPB Capital Holdings, LLC ("Operating Agreement"), annexed to the Decl. of David Gentile as Ex. A, Docket Entry No. 82-1.)

clarifications, which the SEC filed on August 2, 2023 (the "Amended Proposed Order"). (*See* R&R 30; Am. Proposed Order, annexed to the SEC's Aug. 2, 2023 Letter, Docket Entry No. 161-2.)

On September 8, 2023, Schneider and Ascendant Capital filed an objection to the R&R, and Gentile filed a separate objection (collectively, the "Objectors"). (*See* Schneider's Objs.; Gentile's Objs. to the R&R ("Gentile's Objs."), Docket Entry No. 168.) On September 22, 2023, the SEC and GPB filed responses urging the Court to adopt the R&R.[7] (*See* SEC's Resp. 18; GPB's Resp. 23.) On September 29, 2023, Gentile, Schneider, and Ascendant Capital filed replies.[8] (*See* Gentile's Reply; Schneider's Reply.)

   **b.   The R&R**

Judge Scanlon recommended that the Court grant the SEC's motion to convert the monitorship to a receivership and impose a litigation injunction, subject to certain clarifications and amendments,[9] and deny as moot Gentile's motion for relief from the Amended Order. (R&R 33.)

_____

   [7] (SEC's Resp. to Defs.' Objs. ("SEC's Resp."), Docket Entry No. 170; GPB's Resp. to Defs.' Objs. ("GPB's Resp."), Docket Entry No. 171.)

   [8] (Gentile's Reply in Supp. of Objs. to the R&R ("Gentile's Reply"), Docket Entry No. 175; Schneider & Ascendant Capital's Reply in Supp. of Objs. to the R&R ("Schneider's Reply"), Docket Entry No. 176.)

   [9] Judge Scanlon also recommended that the SEC provide clarification regarding "the relationships among the proposed receivership entities, particularly as to the 'GPB Funds,'" due to inconsistency in the Proposed Order as to whether there are eight or ten receivership entities, and "[i]f an amendment to the Proposed Order is needed, [the SEC] should submit the proposed revised text." (R&R 4 n.3.) In addition, Judge Scanlon recommended that the Proposed Order be amended to add the final sentence: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets." (R&R 33.) On August 2, 2023, the SEC filed a letter

Judge Scanlon found that by (1) appointing three new managers to direct GPB and thus expanding the number of managers from one to four, (2) amending the Operating Agreement of the company to provide new compensation for non-employee managers, and (3) failing to take curative action when notified that he had violated the terms of the Amended Order, Gentile caused GPB to breach the terms of the Amended Order. (*Id.* at 13–14.) She found that under the terms of the Amended Order, a breach "authorizes the Court to convert the monitorship to a receivership." (*Id.* at 20.) Judge Scanlon then considered whether "recent events require the additional step of converting the monitorship to a receivership," (*id.* at 23), and concluded that Gentile's actions had caused "a fracture in GPB's leadership that is irremediable without [c]ourt intervention," (*id.* at 26). She noted that "[o]n one hand, GPB, under the purview of the Monitor, has been working to address the state in which Mr. Gentile left it and move forward in a manner that is productive to its investors," while "[o]n the other hand, GPB is in the precarious position of operating with three new 'purported' managers and a 'purportedly' amended [Operating] Agreement, both of which may actively undermine the aforementioned efforts." (*Id.* at 26.) She concluded that "[t]he uncertainty of GPB's position is creating significant consequences, which are damaging its financial health and, by extension, the finances of its investors" and therefore recommended that the Court convert the monitorship into a receivership. (*Id.* at 33.)

In addressing the litigation injunction, Judge Scanlon concluded that it was "warranted in this case." (*Id.* at 29.) She found *SEC v. Wencke*, 622 F.2d 1363, 1371, 1373 (9th Cir. 1980), and *Liberte Cap. Grp. v. Capwill*, 462 F.3d 543, 551–52 (6th Cir. 2006) "persuasive" as applied to the facts of this case given that "GPB and its [F]unds face a number of complicated litigations

---

providing such clarification and submitted an amended proposed order. (SEC's Aug. 2, 2023 Letter, Docket Entry No. 161; Am. Proposed Order.)

that threaten to delay distributions to investors." (*Id.* at 30.) Judge Scanlon determined that a litigation injunction "is necessary to centralize all claims to the assets before this Court" and "prevent potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control." (*Id.* (quoting SEC's Mem. 13).)

    **c. Objections to the R&R**

    Gentile objects to the R&R on the grounds that (1) the legal standard for appointing a receiver sets an "[e]xtremely [h]igh [b]ar" which has not been met by the circumstances of this case, (Gentile's Objs. 5–20; *see also* Gentile's Reply 5–8); (2) the litigation injunction would "run afoul" of rulings made in the Delaware Action and impose an "extreme burden" on the Court, (Gentile's Objs. 23–24; *see also* Gentile's Reply 10–11); and (3) the receiver should not be empowered to waive privilege, (Gentile's Objs. 24–25.) In support of his argument that the legal standard for appointing a receiver has not been met in this case, Gentile argues that (1) his actions did not cause an "imminent danger" to GPB or its assets, (Gentile's Objs. 7–9; *see also* Gentile's Reply 6–8); (2) the conversion of the monitorship to a receivership "[t]hreatens to [d]isrupt the [s]tatus [q]uo" and will not conserve GPB's assets, (Gentile's Objs. 9–11); (3) the appointment of a receiver is not necessary to protect GPB's investors' interests and is an improper remedy to reach a distribution plan, (*id.* at 11–15); (4) there are less drastic alternative remedies available, (*id.* at 15–16); (5) Judge Scanlon did not properly analyze the likelihood of success on the merits and did not identify any allegedly fraudulent conduct by Gentile, (*id.* at 16–20); and (6) the probability of harm to Gentile outweighs the harm to GPB and its investors, (*id.* at 20–21).

    Schneider and Ascendant Capital raise the same objections as Gentile with respect to whether the facts of this case warrant converting the monitorship into a receivership under the

applicable legal standard. (Schneider's Objs. 9–18.) Schneider and Ascendant Capital also argue that the Court lacks subject matter jurisdiction to impose a receivership over property that is not the subject of the Complaint. (*Id.* at 19–21.) Finally, Schneider and Ascendant Capital argue in the alternative that if the Court converts the monitorship into a receivership, the Court should hold an evidentiary hearing to determine whether the SEC has met its burden and should not empower the receiver to waive privilege. (*Id.* at 21–25; *see also* Schneider's Reply 7–8.)

In opposing Gentile's objections, the SEC argues that they "are contradicted by the record," (SEC's Resp. 3; *see also* GPB's Resp. 3–10), a record that supports Judge Scanlon's recommendation that "appointment of a receiver is the appropriate remedy for Gentile's violations of the Amended Order," and her independent recommendation that "appointment of a receiver and the imposition of a litigation injunction is warranted here to remedy violations of the federal securities laws," (SEC's Resp. 4–18). The SEC also argues that, as Judge Scanlon noted regarding Gentile's violations of the Amended Order, "[i]t is not clear that Gentile or Schneider even have standing to object to the appointment of a receiver as a remedy for violations of the Amended Order." (*Id.* at 2 n.3.) In addition, the SEC argues that Schneider's jurisdictional argument is without merit because "the SEC clarified that all of the entities that would be subject to the receivership are GPB itself, are affiliates of or are controlled by GPB, and thus are the proper subject of the receivership." (*Id.* at 16.) GPB raises many of the same arguments as the SEC and also argues that Judge Scanlon did not err by recommending a receivership without holding an evidentiary hearing. (*See* GPB's Resp. 11–22.)

In response to the SEC's and GPB's submissions, Gentile reiterates many of his original objections, including that "the SEC has failed to meet its high burden of showing that appoint[ment] of a receivership is warranted," (Gentile's Reply 5–6), there was no threat of

imminent financial harm to GPB because of Gentile's appointment of managers, (*id.* at 6–7), and appointment of a receiver and an imposition of a litigation injunction would be "an extraordinary imposition on this Court's time and resources," (*id.* at 10). In addition, Gentile argues that there is no basis for the assertions by the SEC and GPB that Gentile's actions "(i) disrupted the operations of GPB and its ability to begin the distribution process by causing 'uncertainty in [its] corporate authority,' or (ii) caused the expenditure of 'substantial resources to determine which actions could be taken with or without manager authority,'" (*id.* at 7 (quoting SEC's Resp. 3); *see also* GPB's Resp. 6, 8–9, 13–16), and that appointment of a receiver cannot be "predicated on a belief that . . . Gentile may act similarly in the future if one is not appointed," (Gentile's Reply 8–10). Schneider and Ascendant Capital similarly reiterate their original objections. (*See* Schneider's Reply.)

## II. Discussion

### a. Standard of review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, No. 15-CR-992, 2022 WL 402394, at *3 (2d Cir. Feb. 10, 2022) (citing *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015)). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *See S.J. v. N.Y.C. Dep't of Educ.*, No. 21-CV-240, 2022 WL 1409578, at *1 n.1 (2d Cir. May 4, 2022) (noting that the district court applied correct legal standard in conducting *de novo*

review of portions of the magistrate judge's report to which specific objections were made and

reviewing portions not objected to for clear error).  The clear error standard also applies when a

"party makes only conclusory or general objections, or simply reiterates his original

arguments." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (quoting *Thomas v.

Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)); *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815

F. App'x 575, 579 (2d Cir. 2020) ("Merely referring the court to previously filed papers or

arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting

*Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); Fed. R. Civ. P. 72(b)(2)

("[A] party may serve and file specific written objections to the [magistrate judge's] proposed

findings and recommendations.").  Where, however, a party "t[akes] issue with a specific legal

conclusion in the report and recommendation," a district court reviews the objected-to portions

of the report and recommendation *de novo*. *Miller*, 43 F.4th at 120–21 (concluding that the

plaintiff's objection, although revisiting an issue already argued, should have been reviewed *de

novo* where the plaintiff objected to a "specific legal conclusion in the report and

recommendation," and noting that clear error is normally applied "when the objections are

nonspecific or 'merely perfunctory responses . . . argued in an attempt to engage the district court

in a rehashing of the same arguments set forth in the original petition'" (quoting *Edwards v.

Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (alteration in original))).

     **b.  The Court exercises its inherent equitable power to enforce a prior court
order to convert the monitorship to a receivership**

"A court can take 'any reasonable action . . . to secure compliance [with a court order],'

and the 'scope of a district court's equitable powers to remedy past wrongs is broad.'" *In re

Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) (quoting *Berger v. Heckler*, 771 F.2d 1556, 1568

(2d Cir. 1985) (alteration in original)); *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 337, 344

(S.D.N.Y. 2012) ("Courts have inherent power to enforce their orders."). "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order." *Hunt*, 904 F. Supp. 2d at 344 (quoting *In re Debs*, 158 U.S. 564, 594 (1895) (alteration in original)); *see also In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) ("[A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity."). "Moreover, courts have inherent power to issue orders designed to correct wrongs committed through its process." *Hunt*, 904 F. Supp. 2d at 344 (citing *Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 146 (1919)); *see also Arkadelphia Milling Co.*, 249 U.S. at 145–46 ("It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process."); *In re Lafayette Radio Elec. Corp.*, 761 F.2d at 92–93 ("[I]t is established that a federal court sitting in equity that has jurisdiction to issue a decree necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designed to effectuate that decree." (first citing *Dugas v. Am. Surety Co.*, 300 U.S. 414 (1937); and then citing *Root v. Woolworth*, 150 U.S. 401 (1893))). A "court's choice of how to enforce the order is reviewed for abuse of discretion." *In re Tronox Inc.*, 855 F.3d at 112 (citing *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, Joint Apprentice-Journeyman Educ. Fund*, 925 F.2d 588, 595 (2d Cir. 1991)).

### i.   Gentile's actions caused GPB to violate the terms of the Amended Order

The Court converts the monitorship into a receivership pursuant to the terms of the Amended Order based on GPB's violations of the order, caused by Gentile's actions, and GPB's failure to cure the violations.

Gentile does not dispute that he appointed new managers and altered GPB's Operating

Agreement by, *inter alia*, giving compensation packages of up to $400,000 per year to these new

managers. (*See, e.g.,* Gentile's Objs. 1 (stating that Gentile's position has not changed in the

time since he "sought to appoint three new managers to GPB . . . and amend certain aspects of

the [c]ompany's Operating Agreement").) Instead, he argues that "there was nothing illegal,

inappropriate or untoward" in his "appointment of additional managers" because (1) the

Amended Order does not govern the type of managers he appointed, and (2) the Amended Order

did not divest him of his appointment authority and GPB cannot limit his appointment authority

without his consent.[10] (Gentile's Opp'n 9, 17.) The Court is not persuaded by either of Gentile's

arguments.

### 1. There is no meaningful distinction between "management-level professionals" and "managers"

Gentile first argues that the Amended Order does not govern the type of managers he

appointed, drawing a distinction between "management-level professionals," as referred to in the

Amended Order, and "managers," as defined in the Operating Agreement. (*Id.* at 9.) Gentile

argues that "[u]nder Delaware law, the 'managers' of a limited liability company such as GPB

subject to the member's appointment authority are akin to corporate directors — whose

appointment is not subject to approval by the Monitor — and not individuals bearing operational

---

[10] Although Gentile has since "withdrawn" his appointment of managers and amendments to the Operating Agreement, he maintains that he has a "good faith belief that he has the right to do so," but will "refrain from taking any unilateral action regarding the management and corporate governance of GPB." (Gentile's Objs. 12; *see also* Gentile's Aug. 28, 2023 Letter 1, annexed to the Jeremias Decl. as Ex. 7, Docket Entry No. 168-8 ("Notwithstanding Mr. Gentile's right as the sole member of GPB to make such lawful modifications and appointments to the Company's management structure and amendments to the Operating Agreement[,] . . . Mr. Gentile has withdrawn the three Manager appointments and amendments to the Operating Agreement that were made on May 27, 2022.").)

responsibilities, whose appointment *is* subject to approval by the Monitor."[11]  (*Id.*)  Given the

plain meaning of the terms of the Operating Agreement and the Amended Order and the purpose

of the appointment of the Monitor, the Court is not persuaded that there is any meaningful

distinction between the terms "manager" and "management-level professional."

As a general rule, "words and phrases should be given their plain meaning." *Com.*

*Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2017 WL 3432073, at *7 (E.D.N.Y.

Aug. 8, 2017) (quoting *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152,

157 (2d Cir. 2016)); *see also Briscoe v. City of New Haven*, No. 09-CV-1642, 2010 WL

2794231, at *4 (D. Conn. July 12, 2010) (noting that, in response to the defendant's motion for

clarification of a prior court order, "the [c]ourt does not believe such clarification is necessary in

light of the plain language of the opinion" but nevertheless providing such clarification).

The Operating Agreement uses the defined term "Manager."  (Operating Agreement 3

(defining "Manager" as "the Persons designated by the Members in Article VI, Section 1 hereof

to act collectively as the manager of the Company within the meaning of the Delaware Act and

shall include all successors appointed pursuant to the provisions of this Agreement").)  Black's

Law Dictionary defines a "manager" as "[s]omeone who administers or supervises the affairs of

---

[11] Gentile cites opinions of his expert — Jack B. Jacobs, former Justice of the Delaware Supreme Court — in support of his conclusion.  (*See, e.g.*, Gentile's Opp'n 9 (citing Expert Opinion of Jack B. Jacobs ("Gentile's Expert Op.") ¶ 9, annexed to the Decl. of Daniel J. Horwitz as Ex. F, Docket Entry No. 102-7 ("A 'Manager' of an LLC, analogous to a director of a corporation, is 'a person who is named as a manager of [the LLC] pursuant to an [LLC] agreement.'" (quoting Del. Limited Liability Act, 6 Del. C. § 101(12)))); *id.* (citing Gentile's Expert Op. ¶ 16 ("The Operating Agreement contains no provision that limits or otherwise qualifies or restricts the power legally conferred upon the Members holding a majority of the Distribution Percentages to determine the number of Managers or to fill any newly created Manager positions.")); *id.* (citing Gentile's Expert Op. ¶ 17 (concluding that "Gentile . . . was the person exclusively empowered to increase the number of its Manager positions and to fill the resulting Manager vacancies by written consent, so long as he satisfied the conditions prescribed by the Operating Agreement" and that "Gentile satisfied those conditions")).)

a business, office, or other organization." *Manager*, Black's Law Dictionary (11th ed. 2019).

Notably, the Operating Agreement specifies that "[t]he *management* of the Company's business

shall be vested in its Managers." (Operating Agreement 9 (emphasis added); *see also* Gentile's

Expert Op. ¶ 13.) The Amended Order uses the term "management-level professional" without

definition. (Am. Order ¶ 6(e).) Black's Law Dictionary defines "management" as "[t]he people

in an organization who are vested with a certain amount of discretion and independent judgment

in managing its affairs" and "top management" as "[a] high level of company management at

which major policy decisions and long-term business plans are made." *Management*, Black's

Law Dictionary. Thus, the plain meaning of the terms "manager" and "management" — and the

Operating Agreement's own reference that managers are vested with the "management" of the

business — support the Court's finding that there is no textual distinction between the terms

"manager" and "management-level professional" as used in the Operating Agreement and the

Amended Order, respectively.

Contrary to Gentile's arguments, Gentile's expert opinion does not support any textual

distinction between the terms "manager" and "management-level professional." The expert

opinion paragraphs Gentile cites either do not address this distinction, (Gentile's Expert Op.

¶¶ 16–17), or do not support such a distinction, (*id.* ¶ 9). For example, in paragraph 9, Gentile's

expert recites the definition of a "manager" under Delaware law, but he does not take a position

on whether a "manager" falls within the scope of a "management-level professional," as referred

to in the Amended Order. (*Id.*) In fact, the expert did not rely upon nor review the Amended

Order in rendering his opinion. (*Id.* ¶¶ 5, 8; *see also* R&R 18.) The expert expressly stated that

he "addressed only the application of Delaware law to the facts assumed in this specific setting

and [his opinion] is not intended to express any view on matters of federal law or the law of any

16

other state or jurisdiction." (Gentile's Expert Op. ¶ 18.; *see also id.* ¶ 16 ("To the extent the

SEC's contention presents a question of federal law, this Opinion expresses no view.").) Thus,

Gentile's expert's conclusions do not support Gentile's argument.

The purpose of the appointment of the Monitor — to protect investors — further

demonstrates that there is no textual distinction between the terms. (*See* Order 1 ("[T]he Court

finds that . . . the appointment of a monitor in this action . . . is necessary and appropriate for the

protection of investors.").) The SEC moved to appoint a monitor[12] to, *inter alia*, prevent Gentile

from retaining control over GPB — whether on his own or through others selected by him — at

the expense of investors. (SEC's Emergency Mem. 2 ("Gentile and his handpicked management

team should not have unchecked authority over incoming cash that could be used to redeem

investors."); *id.* ("In short, an independent monitor . . . would provide much-needed assurances

to the investors . . . that an unbiased and qualified person who is not beholden to Gentile is

vetting any significant transactions and decisions and looking out for the interests of investors.");

*see also* SEC's June 2, 2022 Letter 1 ("Gentile's Motion seeks to curtail the authority and

powers of the Court-appointed Monitor and to have the Court retroactively approve Gentile's

installation . . . of himself and his hand-picked team as new management over GPB CH.");

GPB's Resp. 5 ("The purpose of the Monitorship was thus . . . to protect Investors' money from

the threat posed by Gentile and those associated with him.").) To protect investors, the Court

appointed the Monitor, granting him the authority to review, approve, or disapprove material

changes that would fundamentally affect the structure, assets, or liabilities of GPB. (Am. Order

¶ 6; R&R 17; *see also* Gentile's Opp'n 8 ("The Monitor Order extends certain powers to the

---

[12] (SEC's Emergency Mot. for an Order to Show Cause ("SEC's Emergency Mot."), Docket Entry No. 10; SEC's Mem. in Supp. of SEC's Emergency Mot. ("SEC's Emergency Mem."), Docket Entry No. 12.)

Monitor, principally authorizing him to review, approve, or disapprove certain material actions by the GPB Businesses.")).

Specifically, the Amended Order gives the Monitor "authority to approve or disapprove . . . any material change to compensation of any executive officer, affiliate, or related party of GPB, . . . [and] any retention by GPB . . . of any management-level professional or person. (Am. Order ¶ 6(d)–(e).) Paragraphs 6(d) and 6(e) are the only subparagraphs addressing the Monitor's authority regarding leadership of GPB and their compensation. (*Id.* ¶ 6.) Pursuant to Gentile's argument, the Monitor would only have authority to approve or disapprove individuals "bearing operational responsibilities," but not any GPB leadership (i.e., corporate directors).[13] (Gentile's Opp'n 9.) To accept Gentile's argument would require the Court to ignore the purpose of the Monitor and the repeated concerns raised by the SEC that Gentile would retain control of GPB through GPB's leadership at the expense of investors. (SEC's Emergency Mem. 2; *see also* SEC's June 2, 2022 Letter 1.) In view of the fact that paragraphs 6(d) and 6(e) are the only references to the Monitor's approval authority over GPB leadership, the Court finds that the Monitor must be able to exercise authority over key GPB leadership positions to prevent "Gentile and his handpicked management team [from having] unchecked authority over incoming cash that could be used to redeem investors." (SEC's Emergency Mem. 2.) As Judge Scanlon explained:

---

[13] As Judge Scanlon noted, Gentile's expert's opinion does not support Gentile's assertion that "management-level professionals" are those "bearing operational responsibilities" and thus are not "managers." (R&R 18 ("Mr. Gentile's conclusory assertion that 'management-level professionals' are those 'bearing operational responsibilities' and that, because of such unsubstantiated definition, 'management-level professionals' are not 'managers' is unaddressed and unsupported by its sole citation to the Expert's opinion.").) As the Court noted above, Gentile's expert did not analyze nor opine on the meaning of the term "management-level professionals."

18

> In order for the Monitor to exercise sufficient control to support the
> legal and operational integrity of GPB, it is necessary and consistent
> with the Monitor's overall authority to bring within such authority
> oversight over all key leadership positions.  To permit the dilution
> of centralized authority without the Monitor's approval would be
> inconsistent with the overall structure of the Monitor's powers and
> responsibilities.  Mr. Gentile's view that the voting authority of the
> sole manager could be diluted to one quarter of its current voting
> power, . . . without the Monitor's approval is inconsistent with the
> stewardship and oversight responsibilities required of the Monitor
> by paragraph 6 and would undermine the entire Amended Order.

(R&R 17–18.)  Thus, based on the plain meaning of the terms of the Operating Agreement and

the Amended Order and the purpose of the appointment of the Monitor, the Court finds that there

is no meaningful distinction between "management-level professionals" and "managers."

### 2. The Amended Order, not GPB, places limitations on Gentile's appointment and amendment rights

Gentile also argues that he "was duly authorized under Delaware law and the Operating

Agreement to appoint additional managers and . . . [GPB] cannot limit — even in its consent to

the [Amended] Order — those rights."  (Gentile's Opp'n 17; *see also id.* at 9 ("[W]ithout Mr.

Gentile's consent, [GPB] has no authority to limit his appointment rights.").)  Gentile is

mistaken.  The Court, not GPB, has placed limits on Gentile's right to appoint managers.  As

discussed above, the Amended Order provides the Monitor with the authority to review, approve,

or disapprove GPB's retention of any "management-level professional," including the three

managers Gentile appointed.  (*See supra* Section II.b.i.)  Whether Gentile was permitted to

appoint managers under the Operating Agreement, as Gentile's expert argues, is not the issue.

The issue is whether any such appointed managers may be retained by GPB without the

Monitor's approval.  (R&R 16 ("The question is not whether Mr. Gentile can appoint managers

under the [Operating] Agreement, but, rather, is whether any such managers may be retained by

GPB; without the Monitor's approval, the answer is no.").)  In May of 2022, Gentile appointed

the new managers and instructed GPB's CEO and sole manager to "cease any and all actions taken or to be taken in the capacity as [m]anager, and [to] seek consensus with [the new managers] regarding the course of GPB and any actions to be taken by the [new m]anagers," (Gentile's May 27, 2022 Letter 1, annexed to Gentile's Opp'n as Ex. B, Docket Entry No. 102-3; *see also* SEC's Mem. 5; GPB's Resp. 6–7), and the new managers immediately exercised their managerial powers by modifying the Operating Agreement upon appointment, (SEC's Mem. 5; GPB's Resp. 6–7), all without the Monitor's approval. As discussed above, the specific terms of the Amended Order and the purpose of the appointment of the Monitor do not support Gentile's conclusion that he can retain managers without the approval of the Monitor. Therefore, the Court finds that Gentile's actions caused GPB to violate the Amended Order when he appointed the new managers, instructed GPB's CEO to recognize and work with the managers, and the new managers modified the Operating Agreement, all without the approval of the Monitor.

In addition, Gentile amended the Operating Agreement to, *inter alia*, provide compensation packages of up to $400,000 to each new purported manager. (SEC's Mem. 5; GPB's Resp. 1–2; *see also* Gardemal Decl. ¶ 21(b) ("GPB CH's new managers would now be entitled to be paid between $10,000 and $35,000 per month, . . . so each of the three managers could be paid over $400,000 per year.").) Under the Amended Order, the Monitor has approval authority over "any material change to compensation of any executive officer, affiliate, or related party of GPB." (Am. Order ¶ 6(d).) Black's Law Dictionary defines "material" as "significant" or "essential." *Material*, Black's Law Dictionary. The parties do not dispute that the creation of an entirely new compensation package qualifies as a "material change" in compensation, requiring approval by the Monitor under paragraph 6(d). Thus, the Court finds that Gentile's actions caused GPB to violate the Amended Order when he and the three new managers

20

amended the Operating Agreement to provide each new manager with a compensation package

without the Monitor's approval.

### ii. GPB failed to cure the violations caused by Gentile's actions within ten business days of being notified of the violations

Without the approval of the Monitor, Gentile's actions caused GPB to violate the

Amended Order.  Under the Amended Order:

> 20. If the Monitor believes GPB is in some way not materially in compliance with the terms of this Order, upon notice of noncompliance to GPB, GPB shall have 10 business days in which to cure any claimed material noncompliance (the "Cure Period").

> 21. If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership.  GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership.

(Am. Order ¶¶ 20, 21.)  Pursuant to the terms of the Amended Order, GPB's violations would

trigger the conversion of the monitorship to a receivership, upon the SEC's motion, unless cured

within ten days of being provided notice of such violations.  (*Id.* ¶ 21.)  The parties do not

dispute that GPB was provided sufficient notice.[14]  (Monitor's May 31, 2022 Letter, as annexed

---

[14]  Gentile admits that GPB "was put on notice of a purported breach of the Amended Monitor Order by the Monitor and given ten business days to cure" and that he was "copied on the Monitor's notice to GPB." (Gentile's Reply 3.)  He nevertheless argues that he "was never given notice or an opportunity to cure by either the Monitor or the Magistrate [Judge]." (*Id.*)  He further argues that he "was neither subject to nor could avail himself of the [Amended] Order's provisions, thus vitiating any ability for him to 'cure' under its provisions," pursuant to Judge Scanlon's April 28, 2022 Order (the "April 2022 Order"). (*Id.*)

Gentile misunderstands the April 2022 Order.  Under the April 2022 Order, Judge Scanlon ruled that neither Gentile nor any non-party to the Amended Order could avail himself of the mediation provision "as it was drafted to provide only the entity that is actually being monitored, GPB, with a method for raising disputes regarding its oversight." (Apr. 2022 Order.)  The April 2022 Order does not prevent Gentile from taking steps to remedy a violation that *he caused* by his unilateral action.  The fact that Gentile cured his violations approximately one month after Judge Scanlon issued the R&R further undermines Gentile's argument. (*See* Gentile's Objs. 12 ("As of August 28, 2023, Mr. Gentile informed GPB, the Monitor, and the

21

to Gentile's Opp'n as Ex. E, Docket Entry No. 102-6.)  At the time Judge Scanlon issued the

R&R, there was no dispute that Gentile did not take any curative action within ten days of

notification of the violations,[15] although Gentile "alone was able to do so."  (GPB's Resp. 7.)

Accordingly, GPB did not cure the violations caused by Gentile within ten days of being notified

of such violations.  Because of GPB's violations and failure to cure, the Court has authority to

convert the monitorship to a receivership pursuant to paragraph 21 of the Amended Order, and

does so for the reasons discussed.

> ### c.  The Court also exercises its statutory and equitable power to convert the monitorship to a receivership

"In any action or proceeding brought or instituted by the Commission under any

provision of the securities laws, the Commission may seek, and any Federal court may grant, any

equitable relief that may be appropriate or necessary for the benefit of investors."  15 U.S.C.

§ 78u(d)(5); *see also SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("There is no question that

district courts may appoint receivers as part of their broad power to remedy violations of federal

securities laws."); *Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) ("District courts possess

broad power to remedy violations of federal securities laws." (citing *SEC v. Manor Nursing

Ctrs.*, 458 F.2d 1082, 1103 (2d Cir. 1972), *abrogated on other grounds by SEC v. Ahmed*, 72

---

SEC that he had withdrawn the Appointments and Amendments."); SEC's Resp. 2 n.2; GPB's Resp. 10–11.)

[15] (SEC's Mem. 11 n.7 ("Upon information and belief, Gentile has failed to cure these GPB breaches, which he caused."); Gentile's Opp'n 17 (arguing that "there was nothing illegal, inappropriate or untoward in Mr. Gentile's appointment of additional managers"); SEC's Reply 5 ("Gentile's attempt to assert managerial control result[ed] in a serious uncured breach of the [Amended] Order."); Order dated Apr. 28, 2023 ("April 2023 Order") (directing the parties to file letters as to any fact-based updates); Gentile's May 8, 2023 Letter re April 2023 Order, Docket Entry No. 141; SEC's May 8, 2023 Letter re April 2023 Order, Docket Entry No. 142; GPB's May 8, 2023 Letter re April 2023 Order, Docket Entry No. 143; Monitor's May 8, 2023 Letter re April 2023 Order, Docket Entry No. 144.)

F.4th 379 (2d Cir. 2023))); *SEC v. Friedlander*, 49 F. App'x 358, 360 (2d Cir. 2002) (affirming the district court's appointment of a receiver where the court "carefully considered the costs of a receiver, and weighed the equities with care"); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (noting that although "'the appointment of . . . receivers[] should not follow requests by the SEC as a matter of course,' a district court's decision to appoint a . . . receiver may be disturbed on appeal only if the district court has abused its discretion" (quoting *Manor Nursing Ctrs., Inc.*, 458 F.2d at 1105)); *Manor Nursing Ctrs.*, 458 F.2d at 1105 (concluding that the district court "appropriate[ly] exercise[d] . . . its equity powers" to appoint a trustee and noting that "we repeatedly have upheld the appointment of trustees or receivers to effectuate the purposes of the federal securities laws" (citations omitted)); *Ferguson v. Tabah*, 288 F.2d 665, 673–74 (2d Cir. 1961) (affirming the district court's appointment of a receiver since although receivership is a "drastic remedy," it was "within the discretion of the court"); *see also Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 895 (5th Cir. 2019) ("Exercising their jurisdiction under the securities laws, federal district courts can utilize a receivership where a troubled entity, bedeviled by their violation, will be unable to satisfy all of its liabilities to similarly situated investors in its securities." (citing *Capwill*, 462 F.3d at 552–53)). "Although neither the Securities Act of 1933 nor the Securities Exchange Act of 1934 expressly vests the power to appoint receivers in the district courts, 'courts have consistently held that such power exists, where necessary to prevent the dissipation of a defendant's assets pending further action by the court.'" *SEC v. Malek*, 397 F. App'x 711, 713 (2d Cir. 2010) (quoting *Am. Bd. of Trade*, 830 F.2d at 436); *Eberhard*, 530 F.3d at 131 (same); *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) ("In appointing the receiver, the district court was . . . exercising its exclusive federal jurisdiction for the purpose of enforcing the Securities Exchange Act of 1934.

While it is true that the Act does not explicitly provide for appointment of receivers, there is little reason to doubt that equitable power to do so exists." (internal citation omitted)).

"Receivers appointed at the SEC's request are equipped with a variety of tools 'to help preserve the status quo while the various transactions [are] unraveled . . . to obtain an accurate picture of what transpired.'" *Eberhard*, 530 F.3d at 131 (quoting *Manor Nursing Ctrs.*, 458 F.2d at 1103 (alterations in original)). "[A] federal receiver is appointed, under the district court's broad equitable discretion, 'to restore to a defrauded entity or defrauded persons that which was fraudulently diverted from its or their custody and control.'" *Malek*, 397 F. App'x at 713 (quoting *SEC v. Shiv*, 379 F. Supp. 2d 609, 618 (S.D.N.Y. 2005)). Their responsibilities include, *inter alia*, "marshal[ing] the assets" of the defendant, "prevent[ing] the dissipation of [the] defendant's assets pending further action by the court," and, where the entity in receivership is a corporation, "report[ing] to the SEC and conven[ing] shareholder meetings on [the corporation's] behalf." *Eberhard*, 530 F.3d at 131–32 (first quoting *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964); then quoting *Am. Bd. of Trade*, 830 F.2d at 436; and then citing *SEC v. Koenig*, 469 F.2d 198, 202 (2d Cir. 1972) (third alteration in original)); *see also Manor Nursing Ctrs.*, 458 F.2d at 1106 (affirming "the district court's decision temporarily to freeze appellants' assets"); *Esbitt*, 335 F.2d at 143 (noting that "[a] primary purpose of appointing a receiver is to conserve the existing estate"). "[T]he power of a securities receiver is not without limits." *Eberhard*, 530 F.3d at 132. The Second Circuit has "expressed strong reservations as to the propriety of allowing a receiver to liquidate [an estate]," *id.* (quoting *Lankenau*, 350 F.2d at 63 (alteration in original)), has found that "receivership should not be used as an alternative to bankruptcy," and has "disapproved of district courts using receivership as a means to process

24

claim forms and set priorities among various classes of creditors," *see id.* (citing *Am. Bd. of Trade*, 830 F.2d at 437–38).

"'[T]he appointment of a receiver is considered to be an extraordinary remedy,' and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interest in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (alterations in original)). Even so, "[a] decision to appoint or not to appoint a receiver is committed to the sound discretion of the trial court." *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing *Rosen*, 106 F.3d at 34). In determining whether a receiver should be appointed, courts in this Circuit routinely consider the factors set forth in Charles A. Wright and Arthur R. Miller's treatise *Federal Practice and Procedure*, including:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1999) (the "Wright and Miller factors"); *Varsames*, 96 F. Supp. 2d at 365 (quoting the Wright and Miller factors); *see also Carbone v. Martin*, No. 18-CV-3509, 2023 WL 2477682, at *7 (E.D.N.Y. Mar. 13, 2023) (quoting *Varsames*, 96 F. Supp. 2d at 365); *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012) (quoting *Varsames*, 96 F. Supp. 2d at 365). A court reviews these factors by a preponderance of the evidence.[16]

---

[16] The Objectors rely on two 2020 cases, *Meisels v. Meisels*, No. 19-CV-4767, 2020 WL 7000903 (E.D.N.Y. May 21, 2020), *report and recommendation adopted by* 2020 WL 6110827 (Oct. 16, 2020), and *JDP Mortg. LLC v. Gosman*, No. 19-CV-5968, 2020 WL 8082390

The Court finds that this case is "extraordinary" under the Wright and Miller factors and

Second Circuit caselaw and independently converts the monitorship into a receivership pursuant

to the Court's statutory and equitable powers to enforce federal securities laws.[17] *See* 15 U.S.C.

§ 78u(d)(5); *Byers*, 609 F.3d at 91; *Eberhard*, 530 F.3d at 131.

---

(E.D.N.Y. Dec. 21, 2020), *report and recommendation adopted by* 2021 WL 66290 (Jan. 7, 2021), to argue that the appropriate standard by which the Court should consider these factors is "clear and convincing evidence." (Gentile's Objs. 5; Schneider's Objs. 9–10.) These cases rely, in part, on *In re Oakland Lumber Co.*, a 1909 Second Circuit case reviewing an ex parte order appointing a receiver over an alleged bankrupt corporation. 174 F. 634 (2d Cir. 1909). In *Oakland Lumber Co.*, the district court appointed a receiver based on the plaintiff's moving papers and "without notice to the bankrupt [corporation] or the assignee." *Id.* at 635. The Second Circuit vacated the appointment, explaining:

> The power to take from a man his property, without giving him an opportunity to be heard, is both arbitrary and drastic and should not be exercised except in the clearest cases. Congress recognized the necessity for caution by limiting the appointment of receivers to cases where it is "absolutely necessary" for the preservation of the estate. In other words the reason for such an interference with the rights of property must be clear, positive and certain. . . . [I]n no case should a remedy so far reaching in its effects be resorted to except upon clear and convincing proof.

*Id.* at 636–37 (quoting Act of July 1, 1898, 30 Stat. 545). The statutory authority to appoint a receiver in *Oakland Lumber Co.* stemmed from the 1898 Bankruptcy Act, which was repealed in 1978, *see* Pub. L. No. 95-598, tit. IV, 92 Stat. 2682; *id.* at § 105(b), 92 Stat. 2555 ("[A] bankruptcy court may not appoint a receiver in a case under this title."), and not federal securities laws, *Oakland Lumber Co.*, 174 F. at 636. The Objectors have provided no arguments or caselaw to support application of the "clear and convincing" standard in this context. Rather, the appointment of a receiver "lies in the discretion of the court" and "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." Wright & Miller, Federal Practice and Procedure § 2983.

[17] Schneider argues for the first time in his objections to the R&R that the Court lacks subject matter jurisdiction over most of the twenty different entities listed by the SEC as part of the "Receivership Estate" in the Proposed Amended Order because such entities were not included in the SEC's complaint. (Schneider's Objs. 20 ("[T]he SEC's complaint alleges that Defendants defrauded investors of only six funds." (citing Compl. ¶¶ 23–27)).) The SEC responds that it "clarified that all of the entities that would be subject to the receivership are GPB itself, are affiliates of or are controlled by GPB, and thus are the proper subject of the receivership." (SEC's Resp. 16.) Because the SEC submitted this list of entities in its original Proposed Order and Schneider did not object at that time, (*see* Schedule 1 of Proposed Order),

First, the Court finds that Gentile's actions and sworn testimony have raised "significant concerns about [his] credibility." *Carbone*, 2023 WL 2477682, at *7 (citing discrepancies between the defendant's assertions and prior court orders "raises significant concerns about [the d]efendant's credibility" under the first Wright and Miller factor); *see also SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011) (finding that allegations of fraud in a complaint can be sufficient to warrant injunctive relief because "fraudulent past conduct gives rise to an inference of a reasonable expectation of continued violations" (quoting *Manor Nursing Ctrs.*, 458 F.2d at 1100)), *rev'd on other grounds by Gabelli v. SEC*, 568 U.S. 442 (2013), *aff'd in part, rev'd in part by Gabelli v. SEC*, 518 F. App'x 32, 33 (2d Cir. 2013). For example, the SEC stated in its reply to Gentile's opposition of appointment of a receiver that "[i]n his sworn testimony under oath before the [SEC] in February 2020, Gentile admitted that he knew that investor money, and not only money from the portfolio companies' operations, was being used to pay distributions to investors," contrary to GPB's representations to investors.[18] (SEC's Reply 6–7; *see also* SEC's Resp. 13 (same).)

Second, the Court finds that there is an imminent risk that the assets of GPB will diminish in value — harming investors — based on Gentile's prior conduct. "[T]he existence of any imminent danger of the diminution of the value of the propert[y] . . . is a critical factor in the

---

the Court declines to consider Schneider's belated argument. *See, e.g.*, *Gov. Emps. Ins. Co. v. Grody*, No. 22-CV-6187, 2023 WL 6307340, at *2 (E.D.N.Y. Sept. 28, 2023) ("Even on *de novo* review, . . . the Court 'will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the Magistrate Judge in the first instance.'" (quoting *Haynes v. Quality Mkts.*, No. 02-CV-250, 2003 WL 23610575, at *3 (E.D.N.Y. Sept. 22, 2003))); *Saada v. Golan*, No. 18-CV-5292, 2023 WL 1993538, at *2 (E.D.N.Y. Feb. 13, 2023) (stating the same).

[18] While Judge Scanlon did not cite these facts in the R&R, the SEC did present the evidence and make arguments based on the evidence to Judge Scanlon, and thus the Court can consider it. *Cf. Grody*, 2023 WL 6307340, at *2; *Saada*, 2023 WL 1993538, at *2.

analysis of whether to appoint a receiver." *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,

866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012) (citing *Melnick v. Press*, No. 06-CV-6686, 2007 WL

2769490, at *1 (E.D.N.Y. Sept. 21, 2007)).  Judge Scanlon found that "the actions of Mr. Gentile

and the three new managers that he purportedly appointed, as they affect GPB, have resulted in a

fracture in GPB's leadership that is irremediable without [c]ourt intervention," and the resulting

"uncertainty of GPB's position is creating significant consequences, which are damaging its

financial health and, by extension, the finances of its investors." (R&R 26.)  In support of her

finding, Judge Scanlon cited the fact that:

> the three purported managers newly appointed by Mr. Gentile,
> without approval of the Monitor, will receive "up to $400,000 per
> year in compensation," have caused "GPB . . . and the Monitor [to]
> incur[] substantial legal expenses," and "have already attempted to
> reverse a reduction in force implemented by GPB . . . with Monitor
> consent to reduce unnecessary expense."

(*Id.* at 23.)  The attempted reversal of a reduction in force of Highline Management executives

was initiated by the three new managers Gentile appointed. (*See* Hayes' June 30, 2022 Letter 3,

annexed to the Suppl. Decl. of Joseph T. Gardemal III ("Gardemal Suppl. Decl.") as Ex. A,

Docket Entry No. 104 ("[W]e have also learned that GPB has terminated three key executives of

Highline Management, which is directly overseen by GPB.  We do not understand . . . why GPB

would take such action during this period of transition without consultation with the newly

appointed managers. . . . We believe they should be reinstated as soon as practical . . . .").)  The

executives had aggregate salaries of more than $1.7 million per year. (Gardemal Suppl. Decl.

¶ 14.)

Gentile argues that Judge Scanlon's finding that there is "uncertainty" regarding "GPB's

position" is factually untrue because the "Monitor is currently supervising over $1 billion of

GPB's cash equivalents" and the "April 2023 Monitor Report also reported realized values of

28

195%, 213%, and 134% as a result of various mergers & acquisitions and other transactions." (Gentile's Objs. 7–8; *see also* April 2023 Monitor Report 24, 25, 27, Docket Entry No. 137.) As GPB clarifies, the three transactions cited in the April 2023 Monitor Report all pre-date Gentile's appointment of the new managers and amendment of the Operating Agreement. (GPB's Resp. 15 ("But what Gentile conveniently leaves out is that all three of the transactions cited in the Monitor's Report *pre-date his 2022 Memorial Day weekend takeover attempt*; GPB Capital sold the three cited-to Portfolio Companies in November 2021, December 2021, and April 2022, respectively." (emphasis in original)).)

The Court finds that, given Gentile's previous (1) appointment of new managers, whose collective compensation could reach over $1.2 million annually to be paid by GPB, and (2) attempt to reinstate three terminated executives of a company directly overseen by GPB, whose collective compensation amounts to nearly $1.7 million annually to be paid by GPB, Gentile's actions constituted a real and imminent threat of financial harm to GPB and its investors. (*See* Gardemal Decl. ¶ 21(b); Gardemal Suppl. Decl. ¶ 14; Hayes' June 30, 2022 Letter 2; R&R 23, 26.)

Third, the Court finds that legal remedies are inadequate. Because Gentile's actions caused GPB to violate the Amended Order, the Court is not persuaded that "a further amended monitor order . . . explicitly defin[ing] the limits of Mr. Gentile's actions vis-à-vis GPB in his capacity as the owner and sole Member of GPB . . . [would] eliminat[e] any future action the SEC or Monitor may deem detrimental to GPB." (Gentile's Objs. 16.) In addition, it is unclear whether a financial penalty, such as one "under penalty of contempt of court" as suggested by Schneider, (*see* Schneider's Reply 1), against Gentile would be an adequate, alternative legal remedy.

Fourth, the Court finds that the probability of harm to the SEC, GPB, and GPB's investors by denial of the receivership would be greater than the injury to the Objectors. Judge Scanlon found that the SEC and, by extension, GPB's investors, will obtain the benefit of having a receiver preserve the status quo, conserve the existing estate, prevent the dissipation of assets, and "protect the investors by preventing Mr. Gentile and the new purported managers from undermining GPB's finances through improper access to funds and information," (R&R 23–24), concluding that "[t]he investors' and GPB's interests outweigh Mr. Gentile's interests," (*id.* at 24). The Objectors argue that the "R&R failed to weigh the balance of harms" by ignoring that their constitutional rights would be violated if a receiver is appointed and a litigation injunction granted, because they are entitled to have the Delaware state court orders receive full faith and credit. (Gentile's Objs. 20–22; Schneider's Objs. 13–14; Schneider's Reply 3–4.) Because the reimbursement procedures set forth in the Delaware state court orders are exempt from the proposed litigation injunction, (*see infra* Section II.d), any harm to the Objectors is outweighed by the harm to the SEC, GPB, and GPB's investors.

Fifth, the Court finds that the SEC's probability of success is unclear. The Objectors are correct that an indictment is "merely a statement of charges and not itself evidence." (Gentile's Objs. 19 (citing 1-29 Leonard B. Sand, Modern Federal Jury Instructions-Criminal, P. 3.01[1], Instruction 3-1).) *But see Gabelli*, 653 F.3d at 61 (reversing the district court's dismissal of the SEC's request for injunctive relief "since the complaint alleges that for almost three years [defendants] intentionally aided and abetted Advisers Act violations and since 'fraudulent past conduct gives rise to an inference of a reasonable expectation of continued violations'" (quoting *Manor Nursing Ctrs.*, 458 F.2d at 1100)); *Tabah*, 288 F.2d at 675 (noting that while the arrest of virtually all high company officials on fraud allegations "was not new 'evidence' of misdeeds, it

did present a situation where there was a possible complete breakdown of the [company's] high command," a threat which the district judge found "sufficient to tip the balance in favor of a receiver"). Ultimately, at this time, the Court does not have enough information to determine the SEC's probability of success in this action. None of the individual Wright and Miller factors, however, is dispositive. *See, e.g.*, *SEC v. Amerindo Inv. Advisors, Inc.*, No. 05-CV-5231, 2013 WL 1385013, at *13 (S.D.N.Y. Mar. 11, 2013) (appointing a receiver based on evidence of only three of the five Wright and Miller factors), *aff'd*, 639 F. App'x 752 (2d Cir. 2016).

Under these circumstances, the Court finds it appropriate to exercise its statutory and equitable power to convert the monitorship to a receivership. GPB has been under monitorship since February of 2021, during which time its more than 17,000 investors nationwide, approximately 4,000 of whom are seniors, have been unable to access their funds. (*See* SEC's Mem. 3; SEC's Resp. 1.) Accordingly, given the gravity of the allegations and that one of the Individual Defendants has already pled guilty to criminal charges, that GPB's investors have been unable to access their funds for more than thirty-four months, and that GPB's management and Gentile have proven unable to agree or work together to implement GPB's future strategy, the Court exercises its equitable authority to convert the monitorship into a receivership. *See, e.g.*, *Friedlander*, 49 F. App'x at 360 (affirming the district court's appointment of a receiver where the court gave the manager of a hedge fund accused of fraud "the benefit of the doubt initially, and only . . . appoint[ed] a receiver after he failed to act in accordance with commitments he had made to the court"); *Amerindo*, 2013 WL 1385013, at *13 (appointing a receiver "[b]ased on the [i]ndividual [d]efendants' extensive fraudulent conduct, the risk that the value of restrained assets will irreversibly dissipate, and the risk of harm to the SEC, the individual victims, and other investors"); *see also* 15 U.S.C. § 78u(d)(5); *Eberhard*, 530 F.3d at

131; *Zacarias*, 945 F.3d at 895. The Court does not exercise its discretion to convert the monitorship to a receivership lightly, but, given the extreme circumstances of this case, it finds that the requested relief is merited.[19] *See, e.g.*, *Tabah*, 288 F.2d at 674 (affirming the district court's appointment of a receiver despite appointment of a receiver being "a drastic remedy usually imposed only where no lesser relief will be effective").

### d. Imposition of a litigation injunction is appropriate based on the facts of this case

"The Second Circuit has recognized that an anti-litigation injunction or litigation stay in a receiver order is a valid exercise of a district court's equitable powers." *SEC. v. Callahan*, 2 F. Supp. 3d 427, 436 (E.D.N.Y. 2014) (quoting *SEC v. Illarramendi*, No. 11-CV-78, 2012 WL 234016, at *4 (D. Conn. Jan. 25, 2012)); *see also Byers*, 609 F.3d at 92. Although district courts have "broad equitable powers in the context of an SEC receivership," the power to impose a litigation injunction is one "to be exercised cautiously." *Byers*, 609 F.3d at 91 (noting that "the authority of a district court to issue an order staying a non-party from bringing litigation derived from 'the inherent power of a court of equity to fashion effective relief'" (quoting *Wencke*, 622

---

[19] The Objectors also argue that conversion of the monitorship to a receivership is inappropriate since "appointment of a receiver will be utilized to effectuate the liquidation of [GPB]." (Gentile's Objs. 10; *see also* Schneider's Objs. 19.) The Court understands the Second Circuit's "strong reservations as to the propriety of allowing a receiver to liquidate [an estate]," *Eberhard*, 530 F.3d at 131 (quoting *Lankenau*, 350 F.2d at 63), and its guidance that receivership "should not be used as an alternative to bankruptcy," *id.* The Amended Proposed Order, however, adequately addresses the Objectors' concerns. It provides that within forty-five days of the entry of the order, the receiver will "file and serve a full report and accounting of [r]eceivership [a]ssets," (Am. Proposed Order ¶ 42), and "propose to the Court a plan to distribute available [r]eceivership [a]ssets," (*id.* ¶ 6(P)). At that time, the Court will determine whether distribution via receivership or bankruptcy is the appropriate course. Accordingly, the fact that the SEC and GPB contemplate the possible liquidation of GPB via receivership does not prevent or undermine the appointment of a receiver at this time. *See Skaff v. Progress Intern., LLC*, No. 12-CV-9045, 2014 WL 5454825, at *1 (S.D.N.Y. Oct. 28, 2014) (authorizing a receiver to "take possession of [the defendant company] and all its assets and conduct a thorough accounting, but not to liquidate or distribute such assets . . . absent further [c]ourt order").

F.2d at 1369)). "An anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership." *Byers*, 609 F.3d at 92; *SEC v. Ahmed*, No. 15-CV-675, 2022 WL 7508962, at *2 (D. Conn. Oct. 13, 2022) (same). "While such injunctions are to be used sparingly, there are situations in which they are entirely appropriate." *Byers*, 609 F.3d at 92. One such situation is where a receiver must "maintain maximum control over the assets" of a large complex entity to "prevent[] small groups of creditors from placing some entities into bankruptcy, thereby removing assets from the receivership estate to the potential detriment of all." *Byers*, 609 F.3d at 93; *see also SEC v. Morgan*, No. 19-CV-661, 2019 WL 2385395, at *12 (W.D.N.Y. June 5, 2019) (concluding that a litigation injunction was warranted "to protect against the potential for disparate actions in other courts that could ultimately have a negative impact on the assets" in the receivership estate); *United States v. JHW Greentree Cap., L.P.*, No. 12-CV-116, 2014 WL 2608516, at *3–4 (D. Conn. June 11, 2014) (noting that "[a] receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant" (quoting *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005))).

Based on the facts of this case, the Court concludes that the imposition of a litigation injunction is appropriate, consistent with Judge Scanlon's finding. (R&R 30). The Second Circuit has noted that "while [litigation] injunctions are to be used sparingly, there are situations in which they are entirely appropriate." *Byers*, 609 F.3d at 92. Litigation injunctions "prevent[] small groups of creditors from placing some entities into bankruptcy, thereby removing assets from the receivership estate to the potential detriment of all." *Id.* at 93.

The Amended Proposed Order contains a list of twenty-two litigations involving the receivership entities or their assets, (*see* Schedule 3 of Am. Proposed Order), and the Monitor

33

notes that these "pending litigation proceedings, including class action litigation . . . will require

potential reserves, and there are limited funds available for these purposes," (Gardemal Decl.

¶ 29). Such litigations threaten to "remov[e] assets from the receivership estate to the potential

detriment of all." *Byers*, 609 F.3d at 93. Accordingly, keeping in mind the Second Circuit's

caution that such injunctions are to be applied "sparingly," *id.* at 92, the Court nevertheless finds

that the facts of this case warrant the imposition of a litigation injunction. *See Morgan*, 2019

WL 2385395, at *1, *12 (imposing a litigation injunction in a securities fraud case involving $80

million in investor funds); *Callahan*, 2 F. Supp. 3d at 439–40 (declining to lift a litigation

injunction contained in a receiver order imposed pursuant to a securities fraud action involving a

Ponzi scheme); *see also Zacarias*, 945 F.3d at 897, 902–03 (affirming the district court's

imposition of a litigation injunction with respect to a receiver's settlement of a $5 billion Ponzi

scheme and noting that a court's powers in managing a receivership "can include . . . stays of

claims in other courts against the receivership").

The Objectors do not provide sufficient support for their argument that a litigation

injunction will run afoul of orders in the Delaware Action. In support of his objections,

Schneider provides the Court with copies of the judgments and orders in the Delaware Action,

including the order granting summary judgment and the two advancement orders. (*See* Colton

Decl. ¶ 10; Final Order Granting Summ. J.; *Fitracks* Order; Judicial Action Form.) Schneider

contends that since April 20, 2022, he has been "duly submitting invoices for fees and expenses

pursuant to the [*Fitracks* Order]" which "GPB has been reviewing," and that "[t]he procedures

set forth in the [*Fitracks* Order] have been working smoothly since April 2022." (Colton Decl.

¶ 11.) Gentile makes the same arguments as Schneider pursuant to his advancement order from the Delaware Chancery Court.[20]  (Stipulation and Advancement Order.)

Schneider and Gentile do not indicate why their interests will not be protected by the terms of the Amended Proposed Order.  The Amended Proposed Order does not prohibit the payment of Schneider's legal expenses pursuant to the *Fitracks* Order or Gentile's legal expenses pursuant to the Stipulation and Advancement Order because it permits the receiver to dissipate assets by payments ordered by the Court.  (R&R 32; Am. Proposed Order ¶ 6(g) (authorizing payment without regard to a cap and without prior court order for "all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court").)  The terms of the Amended Proposed Order do not pose any bar to Schneider's and Gentile's rights under their advancement orders, since the receiver is required to comply with his legal obligations, including compliance of the existing orders of other courts.[21]

Accordingly, the Court finds that the objections by Gentile, Schneider, and Ascendant Capital to the imposition of a litigation injunction are without merit.

### e.  The Court adopts the Amended Proposed Order in its entirety

The Objectors also argue that the Court should not adopt paragraph 28 of the Amended Proposed Order, which transfers to the receiver "[a]ny and all attorney-client privilege, work product protection, common interest or joint defense privilege, or other privilege or immunity (collectively, the 'Privileges') of the [r]eceivership [e]ntities" and empowers the receiver with

---

[20]  Neither Schneider nor Gentile presented these documents to Judge Scanlon.

[21]  The Court does not understand the terms of the Amended Proposed Order to enjoin the reimbursement procedures pursuant to which Schneider and Gentile submit invoices and requests for reimbursement under their advancement orders.  The Court clarifies that the reimbursement procedures set forth in the *Fitracks* Order and the Stipulation and Advancement Order are exempted from the litigation injunction.

sole authority "to enforce, waive, assign or release any or all Privileges in the exercise of its

duties." (Am. Proposed Order ¶ 28 (emphasis omitted); Gentile's Objs. 24–25; Schneider's

Objs. 21–25.) The Objectors argue that neither Judge Scanlon nor the SEC provided "any basis

for a need to waive GPB's Privileges" and that "waiver authority is unnecessary to preserve

GPB['s] assets, and . . . threatens to impose great expense thereby actually reducing GPB's

assets while also imposing a substantial burden on this Court." (Gentile's Objs. 24 (emphasis

omitted); *see also* Schneider's Objs. 21–24.)  Schneider also argues that GPB cannot unilaterally

waive a common interest privilege because such a privilege "cannot be waived without the

consent of all parties to the privilege." (Schneider's Objs. 21–24 (citation omitted).)  In addition,

Schneider argues that if the receiver is empowered to waive GPB's privileges, the Court should

either "impose a condition that no governmental party may obtain access to any materials for

which a privilege has been waived unless they represent in writing to this Court that they will not

use the materials in any enforcement or criminal proceeding," (*id.* at 25), or require the receiver

to "make a motion on notice" if he believes there is a substantial need to waive privilege to fulfill

his duties, (Schneider's Reply 10 (emphasis omitted)).

> i.  **A receiver can waive the privileges of a corporation to perform its
> enumerated duties, including managing litigation on behalf of a
> corporation**

It is settled law that privileges, such as the attorney-client privilege, work product

privilege, and common interest or joint defense privilege, may be invoked not just by

individuals, but by corporations as well.  *See, e.g.*, *CFTC v. Weintraub*, 471 U.S. 343, 348 (1985)

("[T]he attorney-client privilege attaches to corporations as well as to individuals." (citing

*Upjohn Co. v. United States*, 449 U.S. 383 (1981))); *United States v. Krug*, 868 F.3d 82, 86 (2d

Cir. 2017) ("'The joint defense privilege, more properly identified as the common[-]interest

rule,' is 'an extension of the attorney[-]client privilege.'" (alterations in original) (quoting *United*

36

*States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989))). "[W]hen control of a corporation

passes to new management . . . , the authority to assert and waive the corporation's attorney-

client privilege passes as well." *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 167 (2d

Cir. 2013) (quoting *Weintraub*, 471 U.S. at 349). The Supreme Court has "recognized that

ordinarily the authority to assert and waive the corporation's privileges 'rests with the

corporation's management and is normally exercised by its officers and directors.'" *In re Grand

Jury Proc.*, 219 F.3d 175, 183–84 (2d Cir. 2000) (quoting *Weintraub*, 471 U.S. at 348). "The

identity of the persons entitled to waive the privilege on behalf of a corporation becomes a

considerably more complicated question where . . . the court appoints an outsider — such as a

bankruptcy trustee or receiver — to manage the affairs of the corporation." *United States v.

Shapiro*, No. 06-CR-357, 2007 WL 2914218, at *4 (S.D.N.Y. Oct. 1, 2007) (citing *Weintraub*,

471 U.S. at 349–56). Courts in this Circuit have held that privilege waivers by receivers are

valid "despite the attempts of former corporate officers and directors to shield their corporations'

allegedly privileged communications from disclosure." *Id.* at *5; *see also SEC v. Ryan*, 747 F.

Supp. 2d 355, 367–68 (N.D.N.Y. 2010) (finding that the attorney-client privilege did not prevent

the receiver from obtaining records and information related to the corporation and, even if it did,

"the [r]eceiver, as successor manager, would have the power to waive the privilege"); *CFTC v.

Standard Forex, Inc.*, 882 F. Supp. 40, 44–45 (E.D.N.Y. 1995) (giving effect to a privilege

waiver by a receiver after concluding, over the defendants' objections, that "no prejudice will

result from granting the [r]eceiver control over the attorney-client privilege").

The Objectors do not provide legal support for their argument that (1) the power to waive

GPB's privileges is "unnecessary to address the alleged basis for the receiver, *i.e.*, to preserve

assets,"[22] (Schneider's Objs. 21; *see also* Gentile's Objs. 24–25; Schneider's Reply 9), and (2)

"the only apparent basis for the SEC's request is to achieve a tactical advantage in this case and

the companion Criminal Action," (Schneider's Objs. 24–25; *see also* Schneider's Reply 9).

Although a court will grant a receiver the power to waive privilege "only if there is some valid

reason why the [r]eceiver needs to control [the corporation's] attorney-client privilege,"

*Standard Forex*, 882 F. Supp. at 43, courts have upheld privilege waivers by receivers who were

performing their duties, *Ryan*, 747 F. Supp. 2d at 368 (finding that the receiver would have the

power to waive privilege since he "was directed by the [p]reliminary [i]njunction to collect all

business records" and "is within his rights to ask[] for these documents and data"); *Shapiro*, 2007

WL 2914218, at *6 & n.5 (rejecting the defendant's argument that the receiver does not have the

power to waive privilege since the order appointing the receiver directed him to "preserve the

status quo" because, if interpreted literally, "the [r]eceiver would have been unable to act on

most of his enumerated powers," thus allowing the defendant and former officers "to 'use the

privilege as a shield' to protect themselves from having to disgorge any ill-gotten gains"

(emphasis omitted) (citing *Weintraub*, 471 U.S. at 353–54)); *Standard Forex*, 882 F. Supp. at 43

& n.3 (affirming the magistrate judge's order to a corporation's former attorney to turn over

privileged pre-litigation files to the corporation's receiver because, *inter alia*, "the broad scope of

its order appointing the [r]eceiver evidence[d] an intent to include the attorney-client privilege

with it").

  The Amended Proposed Order authorizes the receiver to, *inter alia*, ascertain the

financial condition of the receivership entities and assets, oversee and manage the receivership

---

  [22] The Objectors do not argue that a receiver does not have the power to waive a
corporation's privileges, only that such power is unnecessary in this case.

entities and assets, prevent the encumbrance or disposal of the receivership assets, preserve the books, records, and documents of the receivership entities and assets, and manage litigation by and against the receivership entities and assets. (*See, e.g.*, Am. Proposed Order ¶¶ 2, 6.) The Amended Proposed Order authorizes the receiver to do more than merely "preserve assets," some of which may require the waiver of GPB's privilege, such as "manag[ing] litigation by and against the [r]eceivership." (Am. Proposed Order ¶ 2); *see also Shapiro*, 2007 WL 2914218, at *7 ("[I]f the [r]eceiver is to be permitted to pursue litigation on [the corporation's] behalf, there is no reason why he should be unable to exercise his discretion to waive its corporate privileges in connection with that litigation or in other contexts.").

      ii.   **GPB can waive its common interest privilege as to its own statements**

      "A client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so." *United States v. Agnello*, 135 F. Supp. 2d 380, 383 (E.D.N.Y. 2001), *aff'd*, 16 F. App'x 57 (2d Cir. 2001); *see also United States v. Hatfield*, No. 06-CR-550, 2009 WL 3806300, at *12 (E.D.N.Y. Nov. 13, 2009) ("A member of a joint defense agreement can waive the privilege with respect to its own communications, but typically cannot disclose privileged information received from other joint defense agreement members." (first citing *Agnello*, 135 F. Supp. 2d at 383; then citing *United States v. Salvagno*, 306 F. Supp. 2d 258, 273 (N.D.N.Y. 2004); and then citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997))); *Sicurelli v. Jeneric/Pentron Inc.*, No. 03-CV-4934, 2005 WL 8156861, at *3 (E.D.N.Y. June 16, 2005) ("Thus, even if the [c]ourt had found the existence of a common interest work product privilege between plaintiffs and Ivoclar, Ivoclar, as the party that either independently commissioned or created [the documents],

was entitled to waive any privilege it may have over such documents." (citing *Agnello*, 135 F. Supp. 2d at 383)).

Schneider argues that the receiver cannot waive GPB's common interest privilege because "[a] common-interest privilege 'cannot be waived without the consent of all parties to the privilege.'" (Schneider's Objs. 22 (quoting *United States v. Napout*, No. 15-CR-252, 2017 WL 980323, at *2 (E.D.N.Y. Mar. 10, 2017)).) However, because GPB is the holder of the common interest privilege with respect to its own privileged communications, it is free to exercise or waive its rights as it chooses. *See Agnello*, 135 F. Supp. 2d at 383 ("All that [the co-defendants] would be entitled to do, to the extent that a joint defense privilege did attach to the conversations, is stop [the privilege waiving defendant] from directly or indirectly revealing the privileged communications of other participants." (first citing 2 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 188 (2d ed. 1994); and then citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922)). To the extent the receiver seeks to waive privileged conversations of others, the receiver is required to "comply with applicable law in the exercise of such privileges or immunities." (R&R 33.) *See, e.g., Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 110 (S.D.N.Y. 2017) ("[W]hen two or more clients are jointly represented by a single law firm concerning a matter of common interest, one of them cannot unilaterally waive the privilege that attaches to communications that they jointly made for the purpose of seeking legal advice." (first citing *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003); and then citing *Johnson Matthey, Inc. v. Rsch. Corp.*, No. 01-CV-8115, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002))); *Hatfield*, 2009 WL 3806300, at *12 ("A member of a joint defense agreement . . . typically cannot disclose privileged information received from other joint defense agreement members." (citations omitted)).

40

The Court finds that GPB consented to appointment of the receiver and the entry of the

Amended Proposed Order, including paragraph 28, which empowers the receiver to waive any

and all privileges or immunities held by GPB.  (Am. Proposed Order 2 ("[T]he Chief Executive

Officer of GPB CH and Highline consents to entry of this Order.").)  Because a receiver can

waive a corporation's privileges and GPB consented to the appointment of the receiver, the

objections by Gentile, Schneider, and Ascendant Capital to the Amended Proposed Order are

without merit.[23]

### III.  Conclusion

For the reasons stated above, the Court (1) grants the SEC's motion to convert the

monitorship into a receivership and impose a litigation injunction, (2) adopts the Amended

Proposed Order, and (3) denies Gentile's motion as moot.

Dated: December 7, 2023
        Brooklyn, New York

                                    SO ORDERED:


                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge

---

[23]  Because the Court grants the SEC's motion, it does not address the SEC's and GPB's
argument that Gentile and Schneider do not have standing to object to the appointment of a
receiver.  (*See* SEC's Resp. 2 n.3; GPB's Resp. 1 n.1.)

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

                        **Plaintiff,**

                    **v.**

GPB CAPITAL HOLDINGS, LLC;
ASCENDANT CAPITAL, LLC;
ASCENDANT ALTERNATIVE
STRATEGIES, LLC;
DAVID GENTILE;
JEFFREY SCHNEIDER; and
JEFFREY LASH,

                    **Defendants.**

**21-cv-00583-MKB-VMS**

**ECF CASE**

## ORDER APPOINTING RECEIVER AND IMPOSING LITIGATION INJUNCTION

**WHEREAS** on February 23, 2021, this Court entered, upon consent of the Securities and

Exchange Commission ("Commission") and defendant GPB Capital Holdings, LLC ("GPB CH"

or "Defendant"), the Order Appointing Monitor (Dkt. 23), which appointed Joseph T. Gardemal

III as independent Monitor (the "Monitor") in this action (the "Monitorship");

**WHEREAS**, on April 14, 2021, this Court entered, upon consent of the Commission and

GPB CH, the Amended Order Appointing Monitor (Dkt. 39);

**WHEREAS**, GPB CH is the general partner or controls the general partner of eight (8)

limited partnerships (the "GPB Funds"), which own or owned in their respective investment

portfolios controlling interests in various operating companies (the "Portfolio Companies");

**WHEREAS**, in total, the GPB Funds collectively have approximately 17,000 limited

partner investors;

**WHEREAS,** pursuant to the limited partnership agreements governing the GPB Funds, GPB CH controls each of the GPB Funds, which GPB Funds possess the direct or indirect ability to control a majority of seats on the applicable boards of directors or managers of the respective Portfolio Companies that remain part of the respective investment portfolio; and

**WHEREAS,** Highline Management, Inc. ("Highline") is a wholly-owned subsidiary of GPB CH currently overseen by a majority independent board of directors, and provides certain consulting and management services to some or all of GPB CH and the GPB Funds;

**WHEREAS,** certain state regulatory authorities have filed administrative and/or civil enforcement actions against GPB CH, specifically, the state securities regulators of Alabama, Georgia, Illinois, Massachusetts, Missouri, New Jersey, New York and South Carolina listed in Dkt. 11-5 (the "State Securities Regulators");

**WHEREAS,** the Commission and the Monitor believe it is in the best interests of the Receivership Entities (as defined below), their investors and creditors, to terminate the Monitorship and appoint a receiver over (i) the entities set forth on <u>Schedule 1</u> hereto, including, without limitation, GPB CH, each of the GPB Funds and Highline (such entities set forth on <u>Schedule 1</u> hereto, collectively, the "Receivership Entities"), and (ii) the Receivership Assets (as defined below), in order to contain costs, effectuate distributions to investors and creditors and wind down the Receivership Entities in a timely, orderly and cost-efficient manner;

**WHEREAS,** the Chief Executive Officer of GPB CH and Highline consents to entry of this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I. <u>Exclusive Jurisdiction</u>**

1. This Court hereby takes exclusive jurisdiction and possession of all of the assets

of the Receivership Entities together with all proceeds thereof (collectively, the "Receivership Assets") of whatever kind, wherever situated, or whenever obtained.

## II. Appointment of Receiver and Termination of Monitor

2. Until further Order of this Court, Joseph T. Gardemal III is hereby appointed to serve without bond as receiver (the "Receiver") for the receivership estate of the Receivership Entities (the "Receivership Estate"), including the Receivership Assets, to, among other duties and rights set forth in this Order and available under applicable law and without limiting any other provisions of this Order, (a) preserve the status quo to enable the Receiver to perform the duties specified hereunder; (b) ascertain the financial condition of the Receivership Entities and Receivership Assets; (c) oversee and manage, consistent with the relevant governing documents and applicable law, the Receivership Entities and Receivership Assets; (d) prevent the encumbrance or disposal of the Receivership Assets contrary to the Receiver's mandate; (e) preserve the books, records, and documents of the Receivership Entities and Receivership Assets; (f) manage litigation by and against the Receivership, the Receivership Entities and the Receivership Assets; (g) propose for Court approval a fair and equitable distribution of the remaining Receivership Assets; and (h) be available to respond to investor inquiries, all as further set forth in this Order.

3. The Monitorship is hereby terminated. Any unpaid fees, costs and expenses of the Monitor and its retained professionals may be paid by the Receiver from the Receivership Estate subject to approval by an Order of this Court.

## III. General Powers and Duties of Receiver

4. The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the Receivership Entities, and any officers, directors, managers, managing

3

members, and general and limited partners of the Receivership Entities, under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ. P. 66, except that the Receiver shall conduct a cost/benefit analysis and consult with the Commission staff prior to commencing any affirmative litigation.

     5.   All of the powers derived from any source of any and all officers, directors, managers, managing members, general and limited partners, employees, investment advisers, accountants, attorneys and other agents and advisers of the Receivership Entities are hereby suspended, except to the extent as may hereafter be expressly granted by the Receiver in its sole discretion and, to the extent necessary (in the sole determination of the Receiver), approved by the Court. The Receiver shall assume and control the operation of the Receivership Entities, and shall preserve all of their assets and claims for the benefit of the Receivership Estate. No person holding or claiming any position of any type with any of the Receivership Entities shall have any authority to act by or on behalf of any of the Receivership Entities, except as may be expressly authorized or delegated by the Receiver in writing.

     6.   Without limiting the other provisions in this Order, the Receiver shall have the following general powers and duties:

     A.     Take and retain immediate possession and control of all Receivership Assets and all books, records and documents of the Receivership Entities, wherever located, related to the Receivership Assets, and to sue for and collect, recover, receive and take into possession from third parties, all Receivership Assets and records relevant thereto;

     B.     Manage, control, operate and maintain the Receivership Entities and hold in the

Receiver's possession by and through the Receivership Estate, custody and control of all

Receivership Assets, subject to the other provisions of this Order;

C.      Take any action which, prior to the entry of this Order, could have been taken by

the officers, directors, managers, managing members, and general and limited partners,

and agents of the Receivership Entities, acting in their respective capacities;

D.      Take such action as necessary and appropriate for the preservation of the

Receivership Estate and Receivership Assets and to prevent the dissipation or

concealment of the Receivership Assets;

E.      Conduct an orderly liquidation of the Receivership Entities and the Receivership

Assets in a manner and over a period of time calculated to maximize their value for

investors and the Receivership Estate;

F.      Have exclusive control of, and be made the sole authorized signatory for, all

accounts at any bank, brokerage firm or financial institution that has possession or control

of any Receivership Assets; *provided, however,* that the Receiver may from time to time

designate additional signatories as determined in the Receiver's sole discretion;

G.      Pay from the Receivership Assets necessary expenses required to preserve and

administer the Receivership Assets and Receivership Estate, but in no event shall the

Receiver, without prior order of the Court, make any payments or transfers of property of

a value in excess of $50,000 (fifty-thousand dollars), except that the Receiver may pay

the following fees, costs, expenses and other charges in the ordinary course without

regard to the foregoing cap and without prior order of the Court: (i) compensation and

benefits to employees, including temporary non-payroll staff, (ii) rent, (iii) insurance

premiums and related costs, (iv) the fees and costs of Phoenix American Financial

5

Services related to administering the **GPB Funds** and all other expenses necessary to administer and operate the **GPB Funds**, (v) the **fees and costs** of **TransPerfect** related to records management, (vi) other routine costs and expenses of the Receivership Estate, including, without limitation, those related to: information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal and other utilities and services, and (vii) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court;

H.      Locate and bring into the Receivership Estate by all reasonable means Receivership Assets that may have been conveyed to, or are under the possession and control of, third parties or otherwise concealed;

I.      Engage and employ agents, claim and noticing agents, persons, firms and other persons and entities, including accountants, attorneys, experts, liquidators, brokers, traders, or auctioneers (collectively, "Retained Personnel"), to assist in the carrying out of the Receiver's duties and responsibilities hereunder, subject to prior order of the Court, and pay Retained Personnel in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions"), as modified by this Order;

J.      Engage and employ (i) the professionals set forth on Schedule 2 attached to this Order (the "Ordinary Course Professional Schedule"), who were previously retained by one or more of the Receivership Entities in the ordinary course and whom the Court hereby approves to be retained under this Order and (ii) such other professionals engaged by the Receiver after the date of entry of this Order date, as long as (a) without further order of this Court, each such professional incurs less than $15,000 in fees and costs on a

6

monthly basis, (b) without further order of this Court, the aggregate amount of all fees and expenses of each such professional does not exceed $300,000, and (c) with respect to any professional not set forth on the Ordinary Course Professional Schedule as it exists on this date, such professional is set forth on an amended Ordinary Course Professional Schedule that is filed with this Court promptly after such professional's engagement ("Ordinary Course Professionals").  The Receiver is hereby authorized to pay the reasonable fees and expenses of each Ordinary Course Professional on a monthly basis from Receivership Assets and the Receiver shall report such payments in the First Status Report and the Quarterly Status Reports (as each such term is defined below), as applicable.  To the extent an Ordinary Course Professional exceeds $15,000 in fees and costs in any one month, unless otherwise ordered by this Court, they will be required to submit a fee application to the Court with respect to such fees and costs and follow the procedures set forth below in paragraphs 51 through 56 for approval of compensation for Retained Personnel with respect to such fees and costs.  And, to the extent the aggregate amount of all fees and costs of an Ordinary Course Professional exceeds $300,000, unless otherwise ordered by this Court, such Ordinary Course Professional will be required to submit fee applications to the Court with respect to such fees and costs that exceed the aggregate cap and follow the procedures set forth below in paragraphs 51 through 56 for approval of compensation for Retained Personnel;

K.     Manage any litigation and claims against the Receivership Entities and/or the Receivership Assets;

L.     Recommend to the Commission whether litigation against third parties should be commenced to recover assets for the benefit of the Receivership Estate and how the

litigation fees and costs should be paid, including on a contingent fee basis;

M.      Commence, maintain, pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Entities (in the name of the Receivership Entities and/or the Receiver), the Receivership Assets, the Receiver or the Receivership Estate;

N.      Bring all other legal actions based on law or equity in any state, federal, or foreign court (including in the name of the Receivership Entities), as the Receiver deems necessary or appropriate in discharging the Receiver's duties as Receiver and maximizing recoveries for investors and creditors of the Receivership Entities;

O.      Sell, assign, transfer or otherwise dispose of any assets of the Receivership Entities either directly or through one or more Retained Personnel, subject to approval by this Court with respect to any material assets;

P.      No later than forty-five (45) days after entry of this Order, propose to the Court a plan to distribute available Receivership Assets (subject to appropriate reserves) to investors and creditors of the Receivership Entities that shall include provisions for (i) an initial distribution to be made by the Receiver, (ii) interim distributions to be made by the Receiver from time to time, (iii) a final distribution to be made by the Receiver, (iv) a bar date for the filing of claims in the Receivership Estate against the Receivership Entities and the Receivership Assets and/or for the filing of objections to a schedule of claims prepared by the Receiver for the purpose of making distributions, except that no limited partner shall be required to file a claim based solely upon such limited partner's equity interest in any GPB CH Fund, (v) a claim review and reconciliation process, (vi) a dispute resolution process for resolving any disputes concerning claims or proposed

8

distributions, (vii) creating and funding reserves, and (viii) such other matters as are determined by the Receiver to be reasonably necessary to facilitate or implement the claim and distribution processes, which plan shall be subject to Court approval;

Q.    Cause the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Estate or Receivership Assets;

R.    In its sole discretion, obtain and/or maintain insurance covering the Receivership Estate, the Receivership Entities and/or the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Estate;

S.    Consult with any party in interest, including the Commission staff, the State Securities Regulators (who shall designate one or more contact persons to communicate with the Receiver, and shall notify the Receiver of any change to the designated contact(s)), the individual defendants, plaintiffs, creditors, and investors regarding any Receivership Estate matter; and

T.    Take such other action as may be approved by the Court.

**IV. Access to Information, Books, Records and Accounts**

7.    The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or Receivership Assets; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

8.    The Receivership Entities and each of their (including former) officers, directors,

managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, shall cooperate fully with the Receiver in his or her efforts to carry out the obligations, duties and purposes set out in this Order, subject to and limited by their Fifth Amendment rights.

9.    The Receiver is authorized to open all electronic mail generated by, directed to, or received by the Receivership Entities and all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

10.    All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit, directly or indirectly, of the Receivership Entities that receive actual notice of this Order shall (i) not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon written instructions from the Receiver; (ii) not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court; and (iii) cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V.  Notice to Third Parties

11.    The Receiver shall promptly give notice of the Receiver's appointment to all known past and present officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees of the Receivership Entities, as the

Receiver deems necessary or advisable to effectuate the operation of the receivership.

12.      All persons and entities owing any obligation or debt to any Receivership Entity shall, until further ordered by this Court, perform and/or pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the applicable Receivership Entity had received such performance or payment.

13.      The Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

14.      The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.  The United States Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail of any individuals, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Estate.  The

11

Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

15. Subject to payment for services provided, any entity furnishing space, water, electric, telephone, sewage, garbage, trash removal, or any other services to the Receivership Entities shall maintain such service and related account in the name of the Receivership Entity for the benefit of the Receiver and Receivership Estate, or transfer such account to the Receiver, unless instructed to the contrary by the Receiver.

## VI. Injunction Against Interference with Receiver

16. The Receivership Entities, and all persons and entities receiving notice of this Order by personal service, mail, electronic mail, facsimile, regular mail, through electronic case filing notices, overnight courier, or in any other manner consistent with due process, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

A. Interfere with the Receiver's efforts to take control, possession, or management of the Receivership Entities or any Receivership Assets; such prohibited actions include but are not limited to, taking any action to remove GPB CH as general partner of any GPB CH Fund or otherwise interfere with GPB CH's control over any GPB CH Fund, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of

the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information or interfering with any claim, distribution and/or wind-down plans or processes established by the Receiver;

C.      Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets; or,

D.      Interfere with or harass the Receiver, any Retained Personnel or any Ordinary Course Professional, or interfere in any manner with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities, or the Receivership Assets.

17.      The Receiver shall promptly notify the Court, the Commission staff, and the State Securities Regulators, of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII. Stay of Litigation

18.      As set forth in detail below, the following proceedings, *excluding* (i) the instant proceeding, (ii) all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, (iii) all actions pending or to be brought by the United

States of America or any of its agencies, and (iv) all actions pending or to be brought by any

state or commonwealth within the United States of America pursuant to such state's or

commonwealth's police and regulatory power, are stayed and/or enjoined until further Order of

this Court:[1]

> All existing or future civil legal proceedings of any nature, including, but not limited to,
> bankruptcy proceedings, arbitration proceedings, foreclosure actions, default
> proceedings, or other actions of any nature involving: (a) the Receiver, in the Receiver's
> capacity as Receiver; (b) the Retained Personnel and/or Ordinary Course Professionals, in
> their respective capacities as such; (c) the Receivership Estate; or (d) the Receivership
> Entities or any Receivership Assets, wherever located.  Any person or entity that seeks to
> put one or more of the Receivership Entities into voluntary or involuntary bankruptcy
> proceedings must seek leave of Court on motion upon no less than 14 (fourteen) days'
> notice to the Receiver and to the Commission staff.  Any such motion must show good
> cause for the filing of voluntary or involuntary bankruptcy proceedings for such
> Receivership Entities.  Any person or entity may seek leave of this Court to proceed
> against the Receiver, in such capacity; the Retained Personnel, in such capacity; the
> Ordinary Course Professionals, in such capacity; the Receivership Estate; the
> Receivership Entities; and the Receivership Assets.

19.     The foregoing stay and injunction shall not prohibit the Receiver from

commencing or continuing any litigation in its own name or in the name of any Receivership

Entity.  For any cause of action accrued or accruing in favor of the Receivership Estate against a

third person or party, any applicable statute of limitation is tolled during the period in which this

---

[1] A non-exclusive list of litigations involving the Receivership Entities and Receivership Assets that are
not otherwise excluded from the stay is set forth on Schedule 3 hereto.

stay of existing legal proceedings and injunction against commencement of new or expanded legal proceedings is in effect as to that cause of action.

### VIII. Managing Assets

20.     The Receiver shall at all times administer the Receivership Assets with the care and diligence that an ordinary prudent individual would use in handling such person's own estate.

21.     Subject to the restrictions in paragraph 6(G), the Receiver may, without further Order of this Court pay expenses that arise in the ordinary course of the Receivership Entities' orderly wind down, on terms and in the manner the Receiver deems most beneficial to the Receivership.

22.     The Receiver is authorized, without leave of Court, to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Entities, including making legally required payments to creditors, employees, and agents of the Receivership Entities and Receivership Estate, communicating with vendors, landlords, investors, governmental and regulatory authorities, and others, and preparing and filing all necessary tax returns, as appropriate and necessary for the orderly wind down of the Receivership Entities consistent with 28 U.S.C. §959(b).

23.     To the extent required, the Receiver shall take all necessary steps to enable the Receivership Estate to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

24.     In connection with the execution and performance of the Receiver's duties and authorities provided for pursuant to this Order, at no point shall the Receiver be deemed to be acting as an "investment adviser" as defined in Section 202(a)(11) of the Investment Advisers

Act of 1940, as amended (an "Investment Adviser"), or in any other capacity other than as Receiver for the Receivership Estate, and the performance of the Receiver's duties and authorities provided for pursuant to this Order shall not require the Receiver to register as an Investment Adviser with the Commission or any other agency or entity.

### IX. Investigate and Prosecute Claims

25.     The Receiver is authorized, empowered and directed to, in its own name or in the name of the Receivership Entities, investigate, prosecute, commence, maintain, defend, intervene in or otherwise participate in, compromise, settle, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may, in the Receiver's sole discretion, be advisable or proper to recover and/or conserve Receivership Assets.

26.     The Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after consultation with Commission staff) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate. The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits and fees, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, damages, injunctive relief, declaratory relief, and such other relief from this Court as may be necessary to enforce this Order.

27.     In furtherance of the Receiver's power to manage litigation and to conduct an investigation, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure and Court orders without further leave of Court.

28.     Any and all attorney-client privilege, work product protection, common interest or

16

joint defense privilege, or other privilege or immunity (collectively, the "Privileges") of the Receivership Entities, the Monitor, the Monitorship, and/or attaching to or arising in or in connection with any of their documents, data or communications (whether written or oral), are hereby transferred and belong exclusively to the Receiver for the benefit of the Receivership Estate. The Receiver therefore has sole authority, and is hereby empowered, to enforce, waive, assign or release any or all Privileges in the exercise of its duties as Receiver.

## X. Bankruptcy Filing

29.     The Receiver may seek authorization of this Court to file a voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any or all of the Receivership Entities. If any Receivership Entity or any Receivership Asset is placed into a bankruptcy proceeding, the Receiver may become, and may be empowered to operate the entity or asset, as a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. The Receiver is vested with management authority for the Receivership Entities and the Receivership Assets and may therefore file such Chapter 11 petitions and have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code. *See, In re Bayou Group, LLC,* 564 F.3d 541, 548-49 (2nd Cir. 2009).

30.     The provisions of Article VII above bar any person or entity, other than the Receiver, from placing any Receivership Entity or any Receivership Asset into bankruptcy without prior leave of Court on motion providing no less than 14 (fourteen) days' notice to the Receiver and to the Commission.

## XI. Conflicts; Liability of the Receiver

31.     The Receiver has a continuing duty to ensure that there are no conflicts of interest

17

between the Receiver, on the one hand, and the Receivership Estate and Receivership Assets, on the other hand.

32. Notwithstanding the foregoing, it is understood that the Receiver is a Managing Director with Alvarez & Marsal Disputes and Investigations, LLC ("A&M DI"). A&M DI together with certain of its affiliates make up the global consulting firm known as Alvarez & Marsal ("A&M"). This Court recognizes that A&M may have relationships with parties in interest in this Receivership Estate (including stakeholders, Retained Personnel, Ordinary Course Processionals and others with an interest in and/or connection to the Receiver and/or Receivership Estate), and it shall not be a conflict of interest for the Receiver or A&M for A&M to act for or adverse to any such parties in interest in matters unrelated to the Receiver's duties hereunder.

33. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter, and, if so ordered, all costs and expenses of procuring any such bond or undertaking shall be deemed expenses reimbursable to the Receiver from the Receivership Estate.

34. The Receiver, Retained Personnel and Ordinary Course Professionals are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to any person or entity for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver, Retained Personnel or Ordinary Course Professionals be liable to anyone for their good faith compliance with their respective duties and responsibilities.

35. The Receiver, Retained Personnel and Ordinary Course Professionals may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that

18

the Receiver or such Retained Personnel or Ordinary Course Professionals have no reasonable

belief to be other than genuine and to have been signed or presented other than by the proper

party or parties or, in the case of facsimile transmissions, to have been sent other than by the

proper party or parties, in each case without obligation to satisfy themselves that the same was

given in good faith and without responsibility for errors in delivery, transmission or receipt.  In

the absence of Receiver's, Retained Personnel's, or Ordinary Course Professional's bad faith, the

Receiver, Retained Personnel, or Ordinary Course Professional, as applicable, may rely as to the

truth of statements and correctness of the facts and opinions expressed therein and shall be fully

protected personally in acting thereon.  The Receiver may consult with legal counsel, Retained

Personnel and Ordinary Course Professionals and shall be fully protected in respect of any action

taken or suffered by the Receiver in accordance with the opinion or advice of legal counsel,

Retained Personnel or Ordinary Course Professionals (whether or not written).  The Receiver

may at any time seek instructions from this Court concerning the acquisition, management or

disposition of the Receivership Assets.  None of the Receiver, nor any Retained Personnel or

Ordinary Course Professionals, nor their respective affiliates shall be liable (personally or

otherwise) to any person (or any predecessor or successor thereto) for any reason whatsoever

arising out of matters relating to the Receivership Estate, the execution of or failure to execute

the Receiver's duties or the performance or nonperformance of services for the Receivership

Estate or the Receiver, except for any liability that is determined by a final order of this Court

that is no longer subject to appeal, to have arisen primarily from the gross negligence, willful

misconduct, fraud, or willful breach of fiduciary duty of such person, and, for the avoidance of

doubt, in no event shall A&M be responsible or liable for the acts or omissions of the Receiver.

Without limiting the generality of the foregoing, the Receiver shall have no liability on account

19

of the Receiver's investment or non-investment of any Receivership Assets or any losses with respect to any such investments of Receivership Assets, provided that such investments are made, or the Receiver's decision not to invest Receivership Assets in any case is made, in accordance with any express Orders of this Court relating directly to investment of assets.

36.     The Receiver and Retained Personnel (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, indemnified and held harmless by each of the Receivership Entities and the Receivership Estate, from and against all losses, claims, judgments, costs, expenses, liabilities and reasonable expenses including legal fees (which shall be paid promptly under the indemnity after Court approval as they arise) which such Indemnified Party may incur or may become subject to in connection with any action, suit, proceeding or investigation that is brought or threatened against such Indemnified Party in respect of their actions or inactions regarding the implementation or administration of the Receivership Estate, or the discharge of its duties hereunder, except for any actions that are determined by a final order of this Court that is no longer subject to appeal, to have arisen primarily from the gross negligence, willful misconduct, fraud, or willful breach of fiduciary duty of such person; *provided, however,* that nothing herein shall limit the immunity of the Receiver and Retained Personnel allowed by law or deprive the Receiver or the Retained Personnel of indemnity for any act or omission for which they have immunity.

37.     This Court shall retain exclusive jurisdiction over any action filed against the Receiver, Retained Personnel and/or Ordinary Course Professionals based upon acts or omissions committed in their representative capacities or in connection with any action filed by any of them asserting an indemnity claim.

38.     In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record, the State Securities Regulators, and the Court of its intention, and the resignation shall not be effective until the earlier of the date on which the Court appoints a successor and thirty (30) days from the date the Receiver shall have given such notice. The Receiver shall then follow such instructions as the Court may provide.

39.     No provision of this Order shall require the Receiver to expend or risk his or their own funds or otherwise incur any financial liability in the performance of any of its duties as Receiver hereunder, or in the exercise of any of its rights or powers.

40.     Prior to taking any action against the Receiver regarding the Receiver's conduct in his capacity as the Receiver, a person must seek and receive leave of this Court. This Court shall retain exclusive jurisdiction over any action or controversy regarding any matters relating to or arising from the Receiver's role and conduct in such role.

41.     This Article XI shall survive the resignation or removal of Joseph T. Gardemal III as Receiver, any Retained Personnel and/or any Ordinary Course Professionals and the termination of the receivership.

### XII. Recommendations and Reports

42.     No later than forty-five (45) days after the entry of this Order, the Receiver shall file and serve a full report and accounting of Receivership Assets (the "First Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership.

43.     The First Status Report shall contain the following:

A.     A summary of the operations of the Receiver;

B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.     A schedule of all the Receiver's receipts and disbursements, including payments to Ordinary Course Professionals (attached as Exhibit A to the First Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Assets;

E.     A description of liquidated and unliquidated claims held by the Receivership Estate and approximate valuations of claims;

F.     The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations; and

G.     Any other information that the Receiver reasonably deems appropriate to include in the First Status Report.

44.     For good cause shown, the Receiver may seek leave of Court to extend the time set for the filing of the First Status Report and any Quarterly Status Report.  In addition, if requested by the Commission or a State Securities Regulator, the Receiver is hereby authorized to share with each of them a list of all known investors and creditors and the amount of their investments and claims, as applicable, redacted to exclude personally identifiable information.

45.     Subsequent to the filing of the First Status Report, the Receiver shall file a quarterly status report (the "Quarterly Status Report") containing substantially the same type of information required to be set forth in the First Status Report.  The Quarterly Status Report shall be filed within twenty (20) days of the end of each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the first full quarter after the First Status Report is filed.

46.     On the request of the Commission or a State Securities Regulator, the Receiver shall provide any documentation that the requester deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's or State Securities Regulator's mission.

## XIII. Fees, Expenses and Accountings

47.     Subject to the specific provisions of this Order, the Receiver need not obtain Court approval prior to the disbursement of Receivership Assets for expenses in the ordinary course of the wind down of the Receivership Estate.

48.     Subject to the specific provisions of this Order, the Receiver is authorized to solicit Retained Personnel and Ordinary Course Professionals to assist the Receiver in carrying out the duties and responsibilities described in this Order.  The Retained Personnel may include, without limitation, A&M DI or other A&M entities.  The Receiver is hereby expressly authorized to utilize the services of A&M as Retained Personnel (rather than utilizing other similarly situated or available personnel or professional services firms).  In no event shall the Receiver or A&M be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

49.     With the exception of Hogan Lovells US LLP and A&M, who were previously retained by the Monitor in this case and whom the Court hereby approves as Retained Personnel under this Order, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.  For the avoidance of doubt, the term "Retained Personnel" shall include any professionals retained to provide services to or for any Receivership Entity, any Receivership Asset, the Receiver, or the Receivership Estate, and any counsel

23

retained for any purpose, but shall exclude all Ordinary Course Professionals.

50.     Within thirty (30) days of entry of this Order, each of Hogan Lovells US LLP and A&M shall file with the Court sworn declarations disclosing any and all material connections that they may have to this case.  With respect to the limited partner investors in the GPB Funds, Hogan Lovells US LLP and A&M are not required to disclose any connections to any such investors to the extent revenue derived from such investor does not exceed one percent (1%) of net revenue of Hogan Lovells US LLP or A&M, as applicable.

51.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Assets as described in the Billing Instructions agreed to by the Receiver, as modified by this Order, a copy of which is available at https://www.sec.gov/oiea/Article/billinginstructions.pdf,.  Such compensation shall require the prior approval of the Court.

52.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Assets (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver and Retained Personnel will serve upon counsel for the Commission a complete copy of its proposed Quarterly Fee Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

53.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the Receivership Estate.  Such cost benefit review may include an evaluation of the results achieved in relation to the costs associated with any particular Receivership Asset.  At the close of the Receivership Estate, the Receiver and Retained

Personnel will each file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver or Retained Personnel, as applicable, during the course of the Receivership Estate.

54.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court in the Commission staff's discretion or such other percentage holdback as the Court may order on its own motion or on the request of the Commission.  The Receiver and Retained Personnel may seek authorization for payment of the applicable holdback amount as part of a subsequent Quarterly Fee Application.  Upon approval by the Court of a request to pay any applicable holdback amount, the Receiver shall be authorized pay from the Receivership Assets such approved holdback amount from the Receivership Assets.  To the extent any fees or expenses are not approved by the Court, they must be offset against the 20% holdback or be disgorged from the professional as appropriate.

55.     Each Quarterly Fee Application shall:

A.     Comply with the terms of the Billing Instructions agreed to by the Receiver, as modified by this Order; and

B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, as modified by his Order (and the fact that the Receiver may benefit (directly or indirectly) from the compensation paid to A&M), the Receiver or Retained Personnel, as applicable, has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of

25

compensation paid or to be paid from the Receivership Assets, or any sharing thereof.

56.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, and the Receiver and each Retained Personnel shall submit a final application for compensation and expense reimbursement.

57.     With respect to any motion or application filed in this case by the Receiver, if no party in interest objects prior to the objection deadline applicable thereto, the Receiver may file a notice of no objection with this Court and request that the Court enter the corresponding order without the need for a hearing.

SO ORDERED:
s/ MKB 12/07/2023

_____

MARGO K. BRODIE
United States District Judge

## Schedule 1 – "Receivership Entities"

| Name | Entity |
|---|---|
| Armada Waste Management GP, LLC (fka GPB Waste Management GP, LLC) | General Partner |
| Armada Waste Management, LP (fka GPB Waste Management, LP) | LP (GPB Fund) |
| Armada WM SLP, LLC (fka GPB WM SLP, LLC) | SLP |
| GPB Auto SLP, LLC | SLP |
| GPB Automotive Income Fund, Ltd. | Cayman Islands Exempted Company |
| GPB AUTOMOTIVE INCOME SUB-FUND, LTD. | Cayman Islands Exempted Company |
| GPB Automotive Portfolio, LP | LP (GPB Fund) |
| GPB Capital Holdings, LLC | General Partner |
| GPB Cold Storage, LP | LP (GPB Fund) |
| GPB H2 SLP, LLC | SLP |
| GPB H3 SLP, LLC | SLP |
| GPB Holdings II, LP | LP (GPB Fund) |
| GPB Holdings III GP, LLC | General Partner |
| GPB Holdings III, LP | LP (GPB Fund) |
| GPB Holdings Qualified, LP | LP (GPB Fund) |
| GPB Holdings, LP | LP (GPB Fund) |
| GPB NYC Development, LP | LP (GPB Fund) |
| GPB NYCD SLP LLC | SLP |
| GPB SLP, LLC | SLP |
| Highline Management Inc. | Service Provider (to GP) |

**Schedule 2 - "Ordinary Course Professionals"**

| Professional | Type |
|---|---|
| Akerman LLP | Legal Advisor |
| Brown Gibbons Lang & Company LLC | Financial Advisor/ Investment Bank |
| Chimento & Webb, P.C. | Legal Advisor |
| Cole-Frieman & Mallon LLP | Legal Advisor |
| Configure Partners, LLC | Financial Advisor/ Investment Bank |
| EisnerAmper LLP | Audit Services |
| Goldberg Segalla LLP | Legal Advisor |
| Gordon & Rees LLP | Legal Advisor |
| Grant Thornton LLP | Forensic Accounting Services |
| Greenspoon Marder LLP | Legal Advisor |
| Grub Brugger | Legal Advisor (Germany) |
| Herrick Feinstein LLP | Legal Advisor |
| Heyman Enerio Gattuso & Hirzel LLP | Legal Advisor |
| Houlihan Lokey, Inc. | Valuation Services |
| Hunton Andrews Kurth LLP | Legal Advisor |
| KPMG | Tax Services |
| Mayer Brown LLP | Legal Advisor |
| McGuireWoods LLP | Legal Advisor |
| Morgan, Lewis & Bockius, LLP | Legal Advisor |
| Nixon Peabody LLP | Legal Advisor |
| Phoenix American Financial Services | Fund Administrator |
| Potter Anderson & Corroon LLP | Legal Advisor |
| Pullman & Comley, LLC | Legal Advisor |
| Reeves & Brightwell LLP | Legal Advisor |
| Risa Heller | Communications Consulting |
| Ropers Majeski PC | Legal Advisor |
| Rosenfeld & Kaplan LLP | Legal Advisor |
| SGC Associates LLP | Tax Services |
| Shapiro Ramos (Jeffrey Shapiro) | Legal Advisor |
| Shearman Sterling LLP | Legal Advisor |
| Skadden Arps Slate M | Legal Advisor |
| Stroock & Stroock & Lavan LLP | Legal Advisor |
| TripleTree | Financial Advisor/Investment Bank |
| Walkers | Legal Advisor (Cayman Islands) |

**Schedule 3 –**
**Non-Exclusive List of Litigation Involving the**
**Receivership Entities and Receivership Assets**

| | |
|---|---|
| 1 | *Tom Alberto, et al. v. GPB Capital Holdings, LLC, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB Holdings, LP, GPB Holdings II, LP , GPB Holdings Qualified, LP, GPB Holdings III, LP, GPB NYC Development, LP, GPB Waste Management, LP, and others* (AAA, Number 01-22-0001-5433) |
| 2 | *Tom Alberto, et al. v. GPB Capital Holdings, LLC, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB Holdings, LP, GPB Holdings II, LP , GPB Holdings Qualified, LP, GPB Holdings III, LP, GPB NYC Development, LP, GPB Waste Management, LP, Ascendant Capital, AAS, Axiom, DJ Partners, MR Ranger, Gentile, Schneider, Lash, Mark Martino*, Case No. 651143-2023 (New York Supreme Court, New York County) |
| 3 | *Phillip J. Cadez v. GPB Holdings LP et al.*, Case No. 2020-0402-SG (Court of Chancery, DE) |
| 4 | *Ceiba Palm LLC v. GPB Capital Holdings, LLC et al., Case No. 2020-021788-CA-01* (Miami Dade Circuit Court, FL) |
| 5 | *Concorde Investment Services, LLC v. GPB Capital Holdings, LLC, et al.*, Case No. 650928/2021 (New York Supreme Court, New York County) |
| 6 | *Barbara Deluca and Drew R. Naylor, et al. v. GPB Holdings LP et al.*, Case No. 1:19-cv-10498 (S.D.N.Y) |
| 7 | *Doctor's Emergency Service, P.A. v. Professional Management, Inc. and Advantedge Healthcare Solutions, Inc.* (Circuit Court for Baltimore City, No. 24-C-23-001840 CN) |
| 8 | *David Gentile v. GPB Capital Holdings, LLC et al.*, Case No. 2021-1102-SG (Court of Chancery, DE) |
| 9 | *David Gentile v. GPB Capital Holdings, LLC et al.*, Case No. 2023-0273-PAF (Court of Chancery, DE) |
| 10 | *In Re GPB Capital Holdings LLP Litigation* (formally: *Adam Younker et al. v. GPB Capital Holdings, LLC, et al.*), Case No. 157679/2019 (New York Supreme Court, New York County) |
| 11 | *Jeff Lipman and Carol Lipman v. GPB Capital Holdings, LLC et al.*, Case No. 2020-0054-SG (Court of Chancery, DE) |
| 12 | *Kinnie Ma et al. v. Ascendant Capital, LLC et al.*, Case No. 1:19-cv-01050 (W.D. Tex) |
| 13 | *Alfredo J. Martinez v. GPB Capital Holdings, LLC*, Case No. 2019-1005 (Court of Chancery, DE) |
| 14 | *Alfredo J. Martinez v. GPB Capital Holdings, LLC*, Case No. 2020-0545 (Court of Chancery, DE) |
| 15 | *Galen G. Miller et al. v. GPB Capital Holdings, LLC et al.*, Case No. 656982/2019 (New York Supreme Court, New York County) |
| 16 | *Parkcar, LLC II v. GPB Capital Holdings, LLC*, Case No. 656113/2020 (New York Supreme Court, New York County) |
| 17 | *Michael Peirce, derivatively on behalf of GPB Automotive Portfolio, LP v. GPB Capital Holdings, LLC et al.*, Case No. 652858/2020 (New York Supreme Court, New York County) |
| 18 | *Mary Purcell et al. v. Rodney Potratz, GPB Capital Holdings, LLC et al.*, Case No. 30-2019-01115653-CU-FR-CJC (California Superior Court, Orange County) |

**Schedule 3 –**
**Non-Exclusive List of Litigation Involving the**
**Receivership Entities and Receivership Assets**

| 19 | *Ismo J. Ranssi, derivatively on behalf of Armada Waste Management, LP v. GPB Capital Holdings, LLC et al.*, Case No. 654059/2020 (New York Supreme Court, New York County) |
|---|---|
| 20 | *Jeffry Schneider v. GPB Capital Holdings, LLC et al.*, Case No. 2021-0963 (Court of Chancery, DE) |
| 21 | *Shareholder Representative Services LLC v. HPI Holdings, LLC*, Case No. 2022-0166 (Court of Chancery, DE) |
| 22 | *Subaru of New England, Inc. v. AMR Auto Holdings-SM LLC d/b/a Prime Subaru Manchester* (Hillsborough Superior Court Northern District, New Hampshire, 216-2022-CV-00786) |

# EXHIBIT E

# M<sup>c</sup>Laughlin&Stern

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 448-1100
FAX (212) 448-0066
www.mclaughlinstern.com

JONATHAN R. JEREMIAS
Partner
(212) 455-0398
jjeremias@mclaughlinstern.com

December 8, 2023

**BY E-MAIL (douglas.fellman@hoganlovells.com)**

Joseph T. Gardemal III
c/o Hogan Lovells US LLP
Douglas A. Fellman, Esq.
555 Thirteenth Street NW
Washington, D.C. 20004

Re: **SEC v. GPB et. al, 21 cv 583 (MKB)(VMS)**

Dear Mr. Gardemal:

This firm represents David Gentile in the above-referenced action. We write on his behalf and jointly with ArentFox Schiff, LLP on behalf of their client, Jeffry Schneider. As you are no doubt aware, Judge Brodie issued a Memorandum and Order dated December 7, 2023, that, among other things, granted the SEC's motion to convert the monitorship of GPB Capital Holdings, LLC ("GPB") into a receivership, and adopted a proposed order naming you, Mr. Gardemal, as the receiver (*see* Dkt. 186, the "December 7th Order"). We write to address certain potential next steps with you in light of that Order.

Specifically, we write to inform you of our intent to file expeditiously a motion to stay the December 7th Order so as to prevent irreparable harm to Messrs. Gentile and Schneider, preserve the status quo, and allow our clients to pursue their appellate remedies. While we believe we have strong grounds for appeal and a substantial likelihood of success on that appeal, the purpose of this letter is not to advocate that position or engender a debate on the issues. Rather, we write to request that you refrain from taking any action that would alter the status quo in a manner that would cause irreparable harm to our clients, or prejudice their appellate rights or the ability of the appellate courts to restore that status quo should our clients prevail. Given that: (i) GPB has been operating under monitorship for almost three years, and (ii) the litigation regarding appointment of a receiver has taken almost 18 months to this point,[1] we believe there is no need to rush into a course of action that could adversely affect our client's appellate rights in any way while seeking a stay.

---

[1]     By making the instant request, Messrs. Gentile and Schneider do not mean to prevent or otherwise delay the process of developing a plan for distributions to investors. It has always been the position of Messrs. Gentile and Schneider that the Monitor should exercise its power to put into place a distribution plan, and nothing in this letter is intended to be inconsistent with that position. *See* Amended Order at ¶ 6(f) (authorizing the Monitor to "approve or disapprove . . . any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds").

---

McLaughlin&Stern

Joseph T. Gardemal III
c/o Hogan Lovells US LLP
December 8, 2023

A few examples may be helpful. We request that until the courts rule on the stay request,[2] you do not attempt to exercise the power to waive the attorney-client privilege and, in so doing, share such privileged information with others, including the DOJ and SEC, currently outside the privilege circle. It is patently impossible to un-ring that bell. Moreover, given that both Messrs. Gentile and Schneider have privilege interests in a substantial volume of material within GPB's control, the likelihood of irreparable harm to them cannot be overstated. Indeed, the harm of divulging privileged material far outweighs any harm of forbearing for what is likely a matter of weeks while the stay motion is decided – a small percentage of the three years of litigation of the instant matter.

In addition, we request that you confirm your intention to leave undisturbed the Delaware court ordered process for advancement of legal fees critical to Messrs. Gentile's and Schneider's Sixth Amendment rights and ability to defend themselves against serious allegations in, among other things, this case and the criminal case *United States v. Gentile, et al.*, No. 21-cr.-54. We make this second request out of an abundance of caution as we believe that the Dec. 7 Order is clear on this point. *See* Dec. 7 Order at 35, n.21 ("The Court does not understand the Amended Proposed Order [appointing a receiver] to enjoin reimbursement procedures pursuant to which Schneider and Gentile submit invoices and request for reimbursement under their advancement orders. The Court clarifies that the reimbursement procedures set forth in the *Fitracks* Order [requiring advancement to Mr. Schneider] and the Stipulation and Advancement Order [requiring advancement to Mr. Gentile] are exempted from the litigation injunction.").

To reiterate, both Mr. Gentile and Mr. Schneider support the prompt distribution of assets to investors pursuant to a prudent plan that is supported by relevant facts and circumstances related to each fund and investor, and that is in accordance with, among other things, the relevant funds' governing documents, applicable law, and binding court decisions. Nothing in this letter should be read to change that long-standing position. We also again invite you to share that plan with us as soon as possible.

Please confirm your agreement to maintain the status quo and refrain from taking the actions described above while we seek a stay to ensure the ability to fully pursue our clients' appellate rights. Of course, we will honestly report to the Court your position in our application(s) for a stay and hope to report that you have agreed to forebear such action at least while we seek a stay.

Finally, as we always have, we welcome the opportunity to meet and confer with you in an attempt to chart an amicable path forward or at least to reduce the number of issues that need be presented to the district court or appellate courts for resolution. We will make ourselves available expeditiously and at your convenience.

---

[2]     To be clear, we intend to move before Judge Brodie for a stay and, if that stay is denied, request a stay pending appeal to the Court of Appeals.

NEW YORK, NY | GARDEN CITY, NY | MILLBROOK, NY | CLARK, NJ | WESTPORT, CT | WEST PALM BEACH, FL | NAPLES, FL

M<sup>c</sup>Laughlin&Stern

Joseph T. Gardemal III
c/o Hogan Lovells US LLP
December 8, 2023

We look forward to your prompt response.

Sincerely,

Jonathan R. Jeremias

cc:     Daniel J. Horwitz, Esq. (by e-mail, Counsel for David Gentile)
        Glenn C. Colton, Esq. (by e-mail, Counsel for Jeffry Schneider)

NEW YORK, NY | GARDEN CITY, NY | MILLBROOK, NY | CLARK, NJ | WESTPORT, CT | WEST PALM BEACH, FL | NAPLES, FL

# EXHIBIT F



Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

Douglas A. Fellman
Partner
202.637.5714
douglas.fellman@hoganlovells.com

December 9, 2023

BY E-MAIL (jjeremias@mclaughlinstern.com)

Jonathan R. Jeremias, Esq.
McLaughlin & Stern
260 Madison Avenue
New York, NY 10016

RE:  Re: SEC v. GPB et. al, 21 cv 583 (MKB)(VMS)

Dear Mr. Jeremias:

This will acknowledge receipt of your December 8, 2023 letter to Joseph T. Gardemal III, the Receiver appointed in the above-referenced action pursuant to the Court's Memorandum and Order dated December 7, 2023.  In response to your December 8 letter, this is to advise that the Receiver will abide by the Court's December 7 Order.

Very truly yours,

HOGAN LOVELLS US LLP

By: _____
Douglas A. Fellman

cc:    Daniel J. Horwitz, Esq. (by e-mail, Counsel for David Gentile)
Glenn C. Colton, Esq. (by e-mail, Counsel for Jeffry Schneider)

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in. Abu Dhabi  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Boulder  Brussels  Caracas  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Madrid  Miami  Milan  Moscow  Munich  New York  Northern Virginia  Paris  Philadelphia  Prague  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Ulaanbaatar  Warsaw  Washington DC  Associated offices: Budapest  Jeddah  Riyadh  Zagreb

# EXHIBIT G

**From:** Rob Chmiel GPB-CAP <<u>rchmiel@gpb-cap.com</u>>
**Date:** June 1, 2022 at 1:46:58 PM EDT
**To:** Matt Judkin <<u>mattjudkin@yahoo.com</u>>
**Cc:** Rick Murphy <<u>Rick@cogentmergers.com</u>>, Michael Fasano
<<u>mfasano@fasanolawfirm.com</u>>, Michael Emanuel <<u>memanuel@gpb-cap.com</u>>, "Kopp, Glen
A." <<u>GKopp@mayerbrown.com</u>>
**Subject: RE: [Caution - External Sender] Notice of Meeting**

Matt,

I am not able to set up a meeting with you, Rick Murphy and Michael Fasano.  Consistent with
the Monitor's letter, dated May 31, 2022, in which the Monitor notified GPB Capital Holdings
LLC (the "Company") that your appointments and the amendments to the Company's LLC
agreement were made in violation of Judge Brodie's April 14, 2021 Order, the Company (i) does
not recognize you as validly appointed managers and (ii) does not accept the amended and
restated limited liability agreement as being validly adopted.  Any Company meeting involving
managers other than myself will need to be postponed until all legal actions involving this
subject matter are resolved.  If you have any questions, have your counsel contact Glen Kopp at
Mayer Brown.  Mayer Brown is the only Company counsel authorized to address this matter.

Sincerely,

Robert Chmiel



**Rob Chmiel |**  CEO
c 646.588.9382
<u>GPB-Cap.com</u>

**From:** Matt Judkin <<u>mattjudkin@yahoo.com</u>>
**Sent:** Tuesday, May 31, 2022 5:18 PM
**To:** Rob Chmiel GPB-CAP <<u>rchmiel@gpb-cap.com</u>>
**Cc:** Rick Murphy <<u>rick@cogentmergers.com</u>>; Michael Fasano <<u>mfasano@fasanolawfirm.com</u>>; Ashley
Charron <<u>acharron@highline-management.com</u>>; Joseph M. Pastore <<u>jpastore@psdlaw.net</u>>
**Subject:** [Caution - External Sender] Notice of Meeting

CAUTION: This email originated from outside of the organization. Do not click links or open
attachments unless you recognize the sender and know the content is safe.

Hi Rob,

As you are aware, we have officially been appointed as additional mangers for GBP Capital Holdings, I am signed as well as 2 others Rick Murphy and Mike Fasano. So with this we are now the 4 managers.

We are looking forward to working with you, and look forward to getting as much data and understanding as possible to do what is truly best for investors.

Of course we need to all meet and get some communication going.

We believe we should have a meeting on Thursday, to do introductions, etc. I have 10 AM CT and 4 PM CT this Thursday available. Please let us know what works. We need to reconvene next Monday June 6th hold an official meeting of the Managers. as an official meeting need 5-days' notice, as this is required per operating agreement. Please let me know what times work for you Monday. Any time after 9 AM CT works well.


Thank you,

Matt Judkin


GPB Capital Holdings, LLC ("GPB Capital") is an SEC Registered Investment Adviser. Registration does not imply a certain level of skill or training. This communication is not an offer to sell or a solicitation of an offer to buy any securities. More information about GPB Capital can be found in its Form ADV Part 2, which is available upon request. The information contained in this email is confidential and intended for the named recipient(s) only. If you are not an intended recipient of this email please notify the sender immediately and delete your copy from your system. You must not read, copy, distribute, or take any further action in reliance on it. Email is not a secure method of communication. E-mail messages may contain computer viruses or other defects, may not be accurately or completely replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient. GPB Capital makes no warranties in relation to these matters.