# 23-8010-cv(L), 23-8035-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

GPB CAPITAL HOLDINGS, LLC,

*Defendant-Appellee,*

*(For Continuation of Caption See Inside Cover)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

MATTHEW I. MENCHEL
ADRIANA RIVIERE-BADELL
KOBRE & KIM LLP
201 South Biscayne Boulevard,
   Suite 1900
Miami, Florida 33131
(305) 967-6100

DANIEL J. HORWITZ
JONATHAN R. JEREMIAS
MCLAUGHLIN & STERN, LLP
260 Madison Avenue, 20th Floor
New York, New York 10016
(212) 448-1100

*Attorneys for Defendant-Appellant David Gentile*

MICHAEL F. DEARINGTON
ARENTFOX SCHIFF LLP
1717 K Street NW
Washington, DC 20006
(202) 857-6000

GLENN C. COLTON
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas,
   42nd Floor
New York, New York 10019
(212) 484-3900

*Attorneys for Defendants-Appellants
Ascendant Capital, LLC and Jeffry Schneider*

– v. –

ASCENDANT CAPITAL, LLC, JEFFRY SCHNEIDER, DAVID GENTILE,

*Defendants-Appellants,*

ASCENDANT ALTERNATIVE STRATEGIES, LLC, JEFFREY LASH,

*Defendants*,

U.S. ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT
OF NEW YORK,

*Intervenor.*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**..................................................................1

**ARGUMENT** .......................................................................3

I. The District Court Erred by Appointing a Receiver Over GPB Without *Any* Showing That the SEC Would Likely Be Successful on the Merits. ..................................................................................3

    A. Equity Treatises and 150 Years of Case Law Require a Substantial Showing of Likelihood of Success on the Merits Before a Court Can Appoint a Receiver. ..........................................................4

    B. The Second Circuit Case Law Cited by the SEC Belies Its Argument, and Its Strained Policy Arguments Also Fail. .................9

    C. The SEC's Argument That This Court Can Substitute Its Own Finding on the Merits for That of the District Court, Without an Evidentiary Basis, Is Erroneous. ......................................................14

II. The District Court Failed to Apply the Clear Necessity Standard Required by Second Circuit Precedent, and the Evidence Came Nowhere Close to Satisfying that Standard. ......................................17

III. The District Court Clearly Erred in Finding "Imminent Risk" of Dissipation of GPB's Assets. .................................................18

IV. The District Court Failed to Find That Alternative Legal Remedies or Less Drastic Equitable Remedies Were Inadequate. ......................24

V. The District Court Erred in Appointing a Receiver Based on GPB's Purported Violation of the Amended Monitor Order. .........................25

i

A.    The District Court Cannot Appoint a Receiver Based on an Alleged Violation of an Order Where, as Here, the Governing Legal Requirements for a Receivership Are Not Satisfied..........................25

B.    Gentile Did Not Cause GPB to Violate the Amended Monitor Order..................................................................................................26

**CONCLUSION**..........................................................................**29**

**CERTIFICATE OF COMPLIANCE**..................................................**31**

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Esbitt v. Dutch-Am. Mercantile Corp.*,
    335 F.2d 141 (2d Cir. 1964) ................................................... 11, 13, 19

*Ferguson v. Tabah*,
    288 F.2d 665 (2d Cir. 1961) ............................................................ 12

*Folk v. United States*,
    233 F. 177 (8th Cir. 1916) ................................................................. 7

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ......................................................................... 13

*Hanssen v. Pusey & Jones Co.*,
    276 F. 296 (D. Del. 1921), *aff'd,* 279 F. 488 (3d Cir. 1922),
    *rev'd on other grounds*, 261 U.S. 491 (1923) ....................................... 7

*Highland Ave. & B.R. Co. v. Columbian Equip. Co.*,
    168 U.S. 627 (1898) ........................................................................... 8

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ......................................................................... 14

*Kelley v. Boettcher*,
    89 F. 125 (C.C.D. Colo. 1898) .......................................................... 6

*Liu v. SEC*,
    140 S. Ct. 1936 (2020) .......................................................... 4, 5, 7, 26

*Moore v. Bank of Brit. Columbia*,
    106 F. 574 (C.C.N.D. Cal. 1901) ....................................................... 7

*Rosen v. Seigel*,
    106 F.3d 28 (2d Cir. 1997) ................................................. 12, 17, 18

*Ryder v. Bateman*,
    93 F. 16 (C.C.W.D. Tenn. 1898) ...................................................... 7

*SEC v. Alan F. Hughes, Inc.*,
    461 F.2d 974 (2d Cir. 1972) ............................................................... 10

*SEC v. Am. Bd. of Trade, Inc.*,
    751 F.2d 529 (2d Cir. 1984) ............................................................... 10

*SEC v. American Board of Trade, Inc.*,
    830 F.2d 431 (2d Cir. 1987) ............................................................... 10

*SEC v. Bausch & Lomb Inc.*,
    565 F.2d 8 (2d Cir. 1977) ..................................................................... 9

*SEC v. Manor Nursing Centers, Inc.*,
    458 F.2d 1082 (2d Cir. 1972) ............................................................. 10

*SEC v. Unifund SAL*,
    910 F.2d 1028 (2d Cir. 1990) ............................................... 8, 9, 11, 12

*Tolbert v. Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001) ................................................................. 16

*United States v. Gentile*,
    No. 1:21-CR-00054 (E.D.N.Y. Apr. 17, 2023) ............................... 17, 27

*United States v. Vasquez*,
    389 F.3d 65 (2d Cir. 2004) ................................................................. 15

*Wilkinson v. Dobbie*,
    29 F. Cas. 1255 (C.C.N.D.N.Y. 1874) .................................................. 6

*Williams v. S. Cotton Oil Co.*,
    45 F.2d 387 (5th Cir. 1930) .................................................................. 7

**Statutes**

15 U.S.C. § 78u(d)(5) .................................................................... 4, 14, 26

**Other Authorities**

American Law Reports, 109 A.L.R. 1212 (1937) ...................................... 5

1 Dan B. Dobbs, Law of Remedies § 1.4 (1993) ....................................... 6

iv

75 C.J.S. Receivers § 17 (2024) .................................................................. 6

U.S. CONST., AMEND. V.............................................................................. 14

## **INTRODUCTION**

The SEC seeks to liquidate and distribute the assets of GPB before establishing that it will likely succeed on the merits—much less prove a single allegation against Gentile. The SEC and GPB briefs confirm that what the SEC seeks through the appointment of a receiver is equivalent to a mandatory permanent injunction—not mere maintenance of the status quo—long before the SEC will ever have to actually prove its allegations at trial. The SEC and GPB briefs also confirm that the District Court erred in myriad other ways when it appointed a receiver over GPB. This Court should therefore reverse the Orders.[1]

The SEC does *not dispute* that the District Court appointed a receiver even though it found the SEC's likelihood of success on the merits "unclear." In these circumstances, without a clear and substantial showing of a likelihood of success on the merits, the appointment of a receiver was contrary to both this Court's requirements for a plaintiff to obtain mandatory equitable relief before trial, as well as the teachings of

---

[1] Capitalized terms used but not defined herein have the meaning(s) ascribed to them in Defendants-Appellants' opening brief.

equity treatises and longstanding equity practice dating back 150 years. The cases cited by the SEC reinforce this conclusion rather than rebut it.

The SEC also fails to refute that the District Court applied the wrong standard of proof, ignoring this Court's "clearly necessary" standard in favor of a preponderance standard. In addition, the SEC does not dispute that the Appointments and Amendments—the purported basis for appointing a receiver over GPB to protect its assets from dissipation—had been rejected by GPB *and* the Monitor, and *also* withdrawn by Gentile, well before the District Court appointed the receiver. And the SEC fails to rebut the fact that the District Court declined to exhaust less drastic legal and equitable remedies—such as enjoining Gentile from making further appointments, under threat of contempt—before resorting to the extraordinary and drastic relief of appointing a receiver over GPB. Each of these errors independently warrants reversal, but together they leave no doubt.

The SEC's brief seeks to divert the Court's attention from these reversible errors and frame the principal issue on appeal as whether Gentile caused GPB to violate the AMO. Not so. This is not a contempt proceeding, and the violation of a court order is not a basis in equity to

appoint a receiver. The SEC does not dispute this critical point, and it cites no authority to the contrary. Nor did GPB violate the AMO, or fail to cure such a violation, as required for the SEC to move for appointment of a receiver under Paragraph 21 of the AMO. As noted, it is *undisputed* that GPB and the Monitor promptly rejected the Appointments and Amendments, belying the argument that GPB violated the AMO. Nor did Gentile violate the AMO, but even if he did, that is not even an arguable basis for a receivership under Paragraph 21 of the AMO, which triggers only when *GPB* violates the AMO.

For the reasons stated in Defendants-Appellants' opening brief, and below, the Court should reverse the Orders.

## ARGUMENT

**I.    The District Court Erred by Appointing a Receiver Over GPB Without *Any* Showing That the SEC Would Likely Be Successful on the Merits.**

The SEC does not dispute that the District Court appointed a receiver over GPB, Gentile's company, despite finding "that the SEC's probability of success" on the merits against Gentile and the other Defendants "is unclear." SPA-30. The SEC argues that showing a

probability of success on the merits is unnecessary. SEC Br. at 40–45. The SEC is wrong.

As demonstrated below, longstanding principles of equity that govern the court's inherent equitable authority and its parallel authority under 15 U.S.C. § 78u(d)(5)[2] require that the SEC make a *substantial* showing of likelihood of success on the merits before a court can appoint a receiver over a defendant's property pending trial. The SEC's failure to make such a showing requires reversal of the Orders.[3]

A. <u>Equity Treatises and 150 Years of Case Law Require a Substantial Showing of Likelihood of Success on the Merits Before a Court Can Appoint a Receiver.</u>

The SEC argues that, "consistent with longstanding equity practice," it need not demonstrate a substantial likelihood of success on the merits before a court appoints a receiver over a defendant's company

---

[2] The SEC acknowledges, as it must, that the court's equitable authority under § 78u(d)(5) is limited to "those categories of relief that were typically available in equity," *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (internal quotation marks omitted), and thus is no greater than the court's inherent equitable authority. *See* SEC Br. at 41 (acknowledging that "longstanding equity practice . . . informs the scope of courts' equitable authority"). This includes "limitations upon [a remedy's] availability." *Liu*, 140 S. Ct. at 1947 (internal quotation marks omitted).

[3] For the same reasons, the SEC's repetition of its allegations in its Counter-Statement of the Case as though they are facts is improper. *See* SEC Br. at 5–9. Unsubstantiated allegations carry no weight on appeal.

prior to trial. SEC Br. at 40. To the contrary, longstanding equity practice holds that such a showing is *always* required.

"[T]he teachings of equity treatises" and "works on equity jurisprudence," which *Liu* relied on to determine which categories of relief were available in equity, 140 S. Ct. at 1942–44, mandate this conclusion. The *American Law Reports* published in 1937 describes the "unquestioned rule" that a plaintiff demonstrate "a reasonable probability" of success on the merits before a court appoints a receiver "pendente lite," *i.e.*, before trial:

> As indicated in 23 R. C. L. p. 15, it appears to be the unquestioned rule that while the court, in passing upon an application for a receiver pendente lite, will not forestall or anticipate a final decision upon the merits, the probability that the plaintiff will ultimately be entitled to a decree or judgment in his action is a material element to be considered in the appointment, and such receiver will not be appointed unless the whole record shows such a reasonable probability.

109 A.L.R. 1212 (1937) (collecting authorities).

Another treatise reinforces the "reasonable probability" requirement and explains that it equates to "a strong likelihood [the plaintiff] will succeed upon the merits at trial":

> **An applicant for the remedy of receivership must generally establish a reasonable probability that the applicant will ultimately prevail in the suit.**

. . . Thus, unless the party seeking receivership shows that there is a strong likelihood it will succeed upon the merits at trial, and that the remedy at law is inadequate, a receiver should not be appointed.

It is not necessary, however, that it should appear absolutely, conclusively, or incontrovertibly that a plaintiff is entitled to the relief prayed for. Ordinarily, it is sufficient if the right to a judgment is probable or if there is a showing of a reasonable probability of ultimate success.

75 C.J.S. Receivers § 17 (footnotes omitted).[4]

This requirement is deeply rooted in equity case law reaching back at least 150 years. *See, e.g.*, *Wilkinson v. Dobbie*, 29 F. Cas. 1255, 1256 (C.C.N.D.N.Y. 1874) (a receiver will not be "appointed, where, upon the hearing of the motion, it is not apparent that the ultimate determination of the suit in favor of the complainants is reasonably probable"); *Kelley v. Boettcher*, 89 F. 125, 128–29 (C.C.D. Colo. 1898) ("As the case is now before the court on a motion for the appointment of a receiver … the court should determine whether it is probable that on the final hearing of the case the allegations of the bill will be made good by competent proof . . .

---

[4] The SEC cites 1 Dan B. Dobbs, Law of Remedies § 1.4 (1993) for the proposition that "[a] receiver might be appointed before trial to preserve the property or manage it pending decisions on the merits." SEC Br. at 41. But Dobbs merely recognizes that a receiver may be appointed before trial, not that a court can appoint a receiver without any merits showing.

."); *Folk v. United States*, 233 F. 177, 193 (8th Cir. 1916) (declining to appoint receiver because "[t]he proof in this case is neither clear nor convincing, nor satisfactory that it is probable that the plaintiffs will ultimately recover"); *accord Ryder v. Bateman*, 93 F. 16, 20–21, 28 (C.C.W.D. Tenn. 1898); *Moore v. Bank of Brit. Columbia*, 106 F. 574, 579, 583 (C.C.N.D. Cal. 1901).[5]

The SEC's argument that the Second Circuit has not expressly required a merits showing before a district court appoints a receiver, SEC Br. at 40, is merely a reflection that it has never considered the issue. This is likely because the SEC has never previously made this argument in an appeal—*not* because no such requirement exists. It also ignores that the SEC has the burden of demonstrating that equity courts traditionally permit the appointment of a receiver in these circumstances. *Liu*, 140 S. Ct. at 1947. The lack of a decision supporting

---

[5] *See also, e.g.*, *Williams v. S. Cotton Oil Co.*, 45 F.2d 387, 388 (5th Cir. 1930) (affirming appointment of a receiver where there was "a strong probability that the plaintiff will prevail"); *Hanssen v. Pusey & Jones Co.*, 276 F. 296, 298 (D. Del. 1921) ("The court will not . . . ignore the probability of plaintiff's finally establishing his alleged right, nor will it, by the appointment of receivers pendente lite, disturb defendant in the possession of its property without a probability that plaintiff will prevail upon the final hearing."), *aff'd*, 279 F. 488 (3d Cir. 1922), *rev'd on other grounds*, 261 U.S. 491 (1923).

its argument is fatal. And the recognition by equity treatises and courts around the country for more than a century that a substantial merits showing is required leaves no question that the SEC is wrong.

Nor does the SEC dispute that this Court requires a substantial merits showing before ordering other preliminary relief, such as an injunction. The SEC's attempt to distinguish a receivership from an injunction fails as the Supreme Court has already recognized that a receivership is "something in the nature of a mandatory injunction—that is, a command to the receiver to take, and to the defendant to surrender, possession," even if it is "technically" a different form of relief. *Highland Ave. & B.R. Co. v. Columbian Equip. Co.*, 168 U.S. 627, 630-31 (1898). And the Second Circuit has held that where "the nature of the preliminary relief the Commission is seeking" is "mandatory," meaning "the relief sought is more than preservation of the status quo," the SEC must make a "clear showing" of likelihood of success on the merits. *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990). Such a holding is dispositive, even without the ample legal authorities that extend this principle to receiverships. The SEC's attempt to limit this foundational

equitable principle to injunctions is unpersuasive.[6]

The required showing of likelihood of success on the merits is particularly important here, where the SEC has expressly stated that the receiver intends to liquidate and disperse the receivership assets, not preserve the status quo pending a trial on the merits. A-276. The putative receiver has stated this intent as well. A-298. If the SEC prevails, its receiver will liquidate and distribute all of GPB's assets without any showing that it will likely be successful on the merits. But *Unifund* is clear: When the proposed course of action goes beyond preserving the status quo—as liquidation does—the SEC *must* make a "clear showing" of likelihood of success on the merits. 910 F.2d at 1039. The SEC has failed to do so.

B.   The Second Circuit Case Law Cited by the SEC Belies Its Argument, and Its Strained Policy Arguments Also Fail.

The three Second Circuit cases cited by the SEC to argue that no merits showing is necessary to obtain a receivership demonstrate that

---

[6] The SEC also does not dispute that it made no "substantial showing" of "risk of recurrence" of the alleged securities laws violations before obtaining mandatory relief. *See* Defs. Br. at 27–32; *Unifund*, 910 F.2d at 1039; *see also SEC v. Bausch & Lomb Inc.*, 565 F.2d 8, 18 (2d Cir. 1977) ("It is well settled that the [SEC] cannot obtain relief without positive proof of a reasonable likelihood that past wrongdoing will recur.").

the opposite is true. *See SEC v. American Board of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987) ("*Am. Board of Trade II*"); *SEC v. Alan F. Hughes, Inc.*, 461 F.2d 974 (2d Cir. 1972); *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082 (2d Cir. 1972); SEC Br. at 36–37, 40.

In all three cases, the court made a substantial merits finding against the defendant *before* appointing a receiver. *See SEC v. Am. Bd. of Trade, Inc.*, 751 F.2d 529, 537 (2d Cir. 1984) ("*Am. Board of Trade I*") (recognizing in an appeal prior to appointment of a receiver that "the SEC made out a case that defendants violated § 17 of the 1933 Act and § 10(b) of the 1934 Act and Rule 10b-5"); *Alan F. Hughes*, 461 F.2d at 978, 983 (district court appointed receiver only after it "found clear violations of the SEC's book-keeping, net capital and hypothecation rules," and the district court found that "[t]he bookkeeping rule violation . . . [was] so obviously violated that it seems wasteful use of words to elaborate further about it," as "defendant practically admits this feature of the charges and the record so indicates"); *Manor Nursing Ctrs.*, 458 F.2d at 1088 (district court appointed "trustee to receive . . . funds" at issue after concluding following "a five day non-jury trial" that "appellants had violated the antifraud provisions of the 1933 and 1934 Acts and the prospectus-

10

delivery requirement of the 1933 Act"). These cases reinforce that courts appoint receivers only *after* a substantial merits showing.

The SEC's assertion that a receivership is an "ancillary remedy" for which no merits showing is required is also incorrect. SEC Br. at 41–42 (citing *Unifund*, 910 F.2d at 1041; *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964)). As an initial matter, neither case cited by the SEC holds that a receivership is an ancillary remedy. *Esbitt* ruled that a receiver's lawsuit to collect on a debt was "ancillary" to the SEC's lawsuit, and thus the federal court had jurisdiction over the receiver's lawsuit. 335 F.2d at 142–43. *Unifund* recognized that an order freezing an account was "ancillary" to "enforcement of any disgorgement remedy that might be ordered in the event a violation is established at trial." 910 F.2d at 1041. Neither case held that appointment of a receiver is ancillary to another remedy. In any event, even if a receivership were ancillary to another remedy, the SEC would still have the burden of demonstrating a substantial likelihood of success on the merits under *Unifund*.

Indeed, *Unifund* held that courts must "bear[] in mind the basic principle that burdensome forms of interim relief require correspondingly substantial justification," *id.* at 1042, and it modified the freeze order due

11

to the inadequate merits showing. This Court reasoned that the SEC's "showing . . . is inadequate to support the extensive trading restriction in the freeze order," and it "presented a thin case for *any* ancillary relief." *Id.* The SEC provided only "a basis to *infer* that the appellants traded on inside information," which was a "meager showing" that did not justify the freeze order and led this Court to modify and reduce the burden of the order consistent with the weak merits showing. *Id.* at 1041–42 (emphasis added). Thus, this Court required a merits showing even for the ancillary relief in *Unifund*, and it clarified that the strength of the merits showing should correspond to the burden of the interim relief. That principle is dispositive here.

As "the appointment of a receiver is considered to be an extraordinary remedy," *Rosen v. Seigel*, 106 F.3d 28, 34 (2d Cir. 1997) (internal quotation marks omitted), and "a drastic remedy," *Ferguson v. Tabah,* 288 F.2d 665, 674 (2d Cir. 1961), the SEC must make a clear and substantial showing of likelihood of success on the merits before a court may order such relief, consistent with *Unifund*. This principle applies *a fortiori* here, where the putative receiver has already stated his intention to immediately liquidate the assets under GPB's control, A-298, rather

12

than "conserve the existing estate," which is the "primary purpose of appointing a receiver." *Esbitt*, 335 F.2d at 143.

The SEC's policy arguments also fall short. The SEC argues that courts should have "flexibility" to appoint receivers when it is in the "best interests" of the company, its investors, or creditors, even if a defendant has not violated securities laws. SEC Br. at 3, 11, 16, 41, 43.[7] But the Supreme Court has rejected such appeals to the "flexibility" of equity where the requested relief has no basis in equity practice: "We do not question the proposition that equity is flexible; but in the federal system, at least, that flexibility is confined within the broad boundaries of traditional equitable relief." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

Moreover, the SEC's proposed approach is not actually "flexible" as the SEC claims. Rather, it would inflexibly favor the government in all cases by allowing courts to strip defendants—including innocent defendants—of their companies or other property without any merits showing by the government or finding of wrongdoing. That is not just bad

---

[7] The SEC also favors receiverships when a company is in "disarray," SEC Br. at 43, which is not the case here, and which is also an improper basis for a receivership absent a substantial merits showing.

policy, it is an unconstitutional deprivation of property without due process. *See* U.S. CONST., AMEND. V. The Court should avoid interpreting § 78u(d)(5) or common law rules of equity in a way that would render them unconstitutional. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (citation omitted)). The SEC's reliance on unsound policy arguments underscores the weakness of its legal arguments.

C.    <u>The SEC's Argument That This Court Can Substitute Its Own Finding on the Merits for That of the District Court, Without an Evidentiary Basis, Is Erroneous.</u>

The SEC briefly argues that this Court should affirm the Orders despite the District Court's finding "that the SEC's probability of success [on the merits] is unclear," SPA-30, purportedly because "the record amply establishes" the SEC's likelihood of success on the merits. SEC Br. at 44–45. The SEC is wrong on the facts and the law.

Critically, the SEC ignores that the District Court's finding is entitled to substantial deference, and it can be disturbed on appeal only

14

if it was clearly erroneous (which it was not). *United States v. Vasquez*, 389 F.3d 65, 72 (2d Cir. 2004). Thus, this Court cannot simply cherry-pick facts from the record to find that the SEC made an adequate merits showing, when the District Court reached the opposite conclusion. This Court would need to conclude that the District Court's finding was clearly erroneous—an argument the SEC does not even assert. Nor can it.

The District Court's finding on this issue was obviously correct, as the SEC did not even *attempt* to show likelihood of success on the merits until its reply brief. *Compare* A-155–67 (SEC opening brief omitting any merits argument), *with* D. Ct. Dkt. No. 103 at 6–7 (SEC reply brief, making a one-paragraph merits argument). And the SEC's reply brief below made only a perfunctory argument, pointing to a single excerpt from Gentile's SEC testimony, A-449–50, which failed to demonstrate a likelihood of success on the merits on any of the SEC's claims, let alone a clear and substantial likelihood.[8] In the excerpt, Gentile vaguely

---

[8] Remarkably, the SEC mischaracterizes the District Court's reference to the SEC's argument as though it were a District Court finding. *Compare* SEC Br. at 38 (statement by the SEC that the court "acknowledged the SEC's unrebutted showing that '[i]n his sworn testimony under oath….'")*, and* SEC Br. at 44 (statement by the SEC that: "As the district court noted, '[i]n his sworn testimony under oath….'")*, with* SPA-27 (actual

references fund performance and distributions to investors, without the SEC even asking him to identify which fund he was referencing. *See* A-449–50. And the SEC failed to explain in its reply brief—just as it fails to explain on appeal—how this excerpt could satisfy any of the required elements of any of its claims. The SEC did not even identify a claim in its complaint that the excerpt purportedly supports. Such a "perfunctory" and undeveloped argument "unaccompanied by some effort at developed argumentation," is "deemed waived." *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001).

The SEC's argument that "Defendants-Appellants do not meaningfully dispute" the allegations, SEC Br. at 44 (citing A-420–21), is untrue. Defendants-Appellants have vigorously defended against the allegations since the SEC filed its complaint, and Gentile and Schneider

---

statement by the District Court: "For example, the SEC stated in its reply to Gentile's opposition of appointment of a receiver that '[i]n his sworn testimony under oath….'"). In this way, the SEC misrepresents its own meritless argument as a finding by the District Court. Moreover, the District Court's reference to the SEC's argument was in relation to "concerns" raised over Gentile's "credibility," not whether the SEC had demonstrated a substantial showing of likelihood of success on the merits, which the District Court found was "unclear." SPA-30. Nor did it relate to whether Gentile had "mishandle[ed] investor funds," as the SEC claims. SEC Br. at 22.

are scheduled for trial in the parallel criminal case on June 3, 2024, having pled not guilty to all charges. *See* Minute Entry, *United States v. Gentile*, No. 1:21-CR-00054 (E.D.N.Y. Apr. 17, 2023), Dkt. No. 210. The portion of Gentile's brief below that the SEC cites in no way suggests that the SEC's allegations have merit and instead expressly argues that the allegations have *no* merit. *See* A-420–21.[9] Nor is it Defendants-Appellants' burden to demonstrate that the SEC's claims are meritless. That burden is squarely on the SEC, which it has not met. In these circumstances, the Court must reverse the Orders.

## II. The District Court Failed to Apply the Clear Necessity Standard Required by Second Circuit Precedent, and the Evidence Came Nowhere Close to Satisfying that Standard.

The District Court also erred by expressly applying a "preponderance of the evidence" standard, SPA-25, rather than Second Circuit precedent authorizing a district court to appoint a receiver "only when *clearly necessary* to protect plaintiff's interest in the property." *Rosen*, 106 F.3d at 34 (emphasis added); *see* Defs. Br. at 37–38.

---

[9] The SEC also cites the indictment in the parallel criminal case, SEC Br. at 44–45, but those are also mere allegations, as the District Court correctly found. *See* SPA-30; Defs. Br. at 33.

The SEC does not dispute that the "clearly necessary" standard from *Rosen* governs, but it erroneously argues that the District Court applied this standard, based on the District Court's passing reference to the standard. Not so. While the District Court referenced the standard from *Rosen*, it expressly stated that it would consider the "the imminent danger of the property being lost" or "diminished in value … ***by a preponderance of the evidence***." SPA-25 (emphasis added). This contravenes *Rosen*, requiring, at a minimum, reversal and remand for application of the correct legal standard.[10]

## III. The District Court Clearly Erred in Finding "Imminent Risk" of Dissipation of GPB's Assets.

The District Court's finding that the Appointments and Amendments posed an "imminent risk" of dissipation of GPB's assets was clearly erroneous even under a preponderance standard.

---

[10] The SEC's argument that Defendants-Appellants do not contest that "the form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion," SEC Br. at 46, ignores Defendants-Appellants' arguments that this Court's precedents require a clear and substantial showing of likelihood of success on the merits before a court orders mandatory preliminary relief of any kind, Defs. Br. at 27–31, as well as clear necessity before a court appoints a receiver, *id.* at 37–40.

18

It is undisputed that the District Court appointed a receiver over GPB approximately *eighteen months after* the SEC requested the receivership, and it is also undisputed that no payments were made to the proposed managers and no dissipation of GPB's assets occurred during that eighteen-month period. Defs. Br. at 40–47. It is also undisputed that a court-appointed Monitor—the putative receiver—actively oversees GPB to ensure there is no dissipation of assets. The SEC also admits that "[t]he monitorship has succeeded in marshaling and preserving assets," SEC Br. at 13 (header), which eliminates the need for a receivership whose "primary purpose . . . is to conserve the existing estate," *Esbitt*, 335 F.2d at 143. The District Court erred in finding imminent harm absent a receivership given these undisputed facts. The harm predicted by the SEC has never, in fact, come to pass—nor would it have come to pass—as the District Court was aware.

In support of its argument that GPB's assets faced imminent danger due to Gentile's Appointments and Amendments, the SEC notes that "Gentile did not withdraw his purported amendments to the Operating Agreement and manager appointments until . . . after the magistrate judge had recommended appointing a receiver." SEC Br. at

19

48–49. This argument misses the point. While the withdrawal made it impossible for the Appointments and Amendments to cause GPB harm, the withdrawal was not even necessary because, as discussed below, *infra* § V(B), the Appointments and Amendments had already been rejected by GPB and also were not approved by the Monitor. Moreover, the SEC's argument fails to account for the undisputed fact that Gentile had withdrawn the previously rejected appointments several months *before* the District Court appointed a receiver. The SEC cannot dispute that, at the time of the District Court's rulings (and after), GPB's assets had not been impacted in any way by Gentile's actions. Instead, the assets have realized significant value over the past two years without a receivership. Defs. Br. at 45.

The SEC's and GPB's arguments that the attempted Appointments and Amendments created uncertainty at the company, SEC Br. at 30, 37–38, 47; GPB Br. at 30–37, or a fracture of leadership, SEC Br. at 47, fare no better. GPB for the first time presents allegations purporting to substantiate the SEC's and GPB's conclusory assertions that Gentile's Appointments and Amendments somehow sent GPB into a state of disarray, by pointing to a letter sent by attorneys for the appointed

managers to GPB and the Monitor (referred to by GPB as the "Hayes Letter"). GPB Br. at 15–17. Since this argument was never raised at or considered by the District Court, this Court cannot consider it on appeal.

The record also does not support a finding that GPB faced any imminent harm. As GPB concedes, the Hayes Letter highlighted that "the Company had terminated" the three managers. GPB Br. at 15. That GPB interpreted the letter as constraining GPB's actions, or creating a "quandary" or "governance crisis" for GPB, is belied by GPB's admission that all parties agreed that GPB had disregarded the Appointments and Amendments, giving them no effect.

GPB's argument that it could not "distribute money to Investors or further divest[] the GPB Funds' assets" because it was unsure if it needed permission from the potential new managers, GPB Br. at 16–17, is contradicted by record evidence including the Monitor's prior statements. The Monitor reported in October 2022—before Gentile withdrew the Appointments and Amendments—that GPB was "continu[ing] to market certain of its assets for sale," A-799, and developing "a distribution plan," A-783. In January 2024, the Monitor boasted about various divestitures GPB had made, including by selling three portfolio companies that

brought the gross proceeds to the funds up to $1.3 billion. Dkt. No. 195 at 12. GPB's assertion that "uncertainty" prevented it from taking "corporate action" such as making divestitures or distributions is false. GPB Br. at 17. The Monitor has also noted that GPB management was responsible for the lack of distributions well before the Appointments and Amendments. *See* A-299 (Monitor declaration). GPB's attempt to shift blame to Gentile finds no support in the record.[11]

The SEC and GPB also assert in conclusory fashion that GPB faced challenges in developing relationships with major banking institutions due to the Appointments and Amendments. *See* SEC Br. at 18, 30; GPB Br. at 18, 35–36. This is not only insufficient to establish "imminent harm" to GPB's assets, but GPB and the SEC have also failed to cite *any* evidence that this is true. *See* A-656–57 (Gentile objections to Report & Recommendation, noting there is no evidence any financial institutions

---

[11] The SEC's claim that Gentile and Schneider "have failed to take any action to facilitate the return of approximately $1 billion in funds to investors despite the availability of those funds," SEC Br. at 31, is misplaced. Gentile and Schneider have no authority to make distributions, and if they took any action to do so, the SEC would have claimed it was improper. Gentile and Schneider have repeatedly supported a proper distribution plan, Defs. Br. at 14 n.6, but GPB's management has failed to implement such a plan, A-299.

were even aware of the Appointments and Amendments, which the SEC and GPB failed to rebut). Tellingly, the SEC and GPB also attribute the banks' alleged actions to "Gentile's continued ownership interests and the limited controls provided by the Amended Monitor Order," SEC Br. at 30; *see* GPB Br. at 18, circumstances that predated the Appointments and Amendments, and date back to GPB's formation.

The SEC and GPB also reiterate their argument (and the Order's clearly erroneous adoption of the same) that the proposed compensation of the appointed managers posed an imminent risk to GPB. *See* SEC Br. at 37; GPB Br. 29–30. But it is undisputed that no compensation was ever paid to the appointed managers. Any alleged risk was eliminated by the time the District Court appointed a receiver. GPB argues that whether such compensation was paid is irrelevant because it nevertheless posed an "imminent risk of harm" to GPB. GPB Br. at 30. But this ignores the point that Appellants-Defendants have consistently raised: compensation *could not* be paid to the appointed managers absent the Monitor's consent. *See* Defs. Br. at 44 n.17. The Monitor never gave such consent. The SEC and GPB fail to address these uncontested facts.

23

Accordingly, the Court must reverse on the ground that, when the District Court appointed a receiver in December 2023, there was no imminent risk of harm posed to GPB's assets, notwithstanding the failed Appointments and Amendments eighteen months earlier.

## IV. The District Court Failed to Find That Alternative Legal Remedies or Less Drastic Equitable Remedies Were Inadequate.

The SEC argues that the District Court "acted well within its discretion in determining that a lesser remedy would not be effective to prevent harm to GPB Capital and investors . . . [b]ased on its years of experience overseeing this litigation." SEC Br. at 49. The SEC does not dispute, however, that the District Court contradicted itself by finding that alternative "legal remedies are inadequate," while at the same time finding it "unclear" if an alternative legal remedy like contempt of court could be adequate. SPA-29. The failure to exhaust legal or less drastic equitable remedies requires reversal.

Such alternative remedies also plainly existed. If the District Court was concerned that Gentile would try to appoint new managers a second time—despite that his prior appointments were ineffectual—it could have enjoined Gentile from appointing new managers in the future, and

if he failed to comply, it could hold him in contempt. It could have also held Gentile in contempt for the prior appointments if it believed that they violated the AMO—which they did not.

The District Court erred by imposing the most drastic form of relief, appointment of a receiver, and the SEC fails to demonstrate otherwise.

## V. The District Court Erred in Appointing a Receiver Based on GPB's Purported Violation of the Amended Monitor Order.

### A. <u>The District Court Cannot Appoint a Receiver Based on an Alleged Violation of an Order Where, as Here, the Governing Legal Requirements for a Receivership Are Not Satisfied.</u>

The alleged violation of a court order is not a basis to appoint a receiver if the prerequisites for a receivership are unsatisfied. Defs. Br. at 58–59. Thus, in this case, the District Court could not appoint a receivership over GPB merely based on a conclusion that Gentile caused GPB to violate the AMO, because the SEC failed to satisfy its burden of demonstrating that a receivership is appropriate under principles of equity. *Id.* Tellingly, the SEC does not dispute this argument.

For this reason, the SEC's focus on seeking to establish that Gentile caused GPB to violate the AMO is a red herring. Even if Gentile caused GPB to violate the AMO—and he did not—it would not justify the District Court's appointment of a receiver as the SEC failed to carry its burden of

demonstrating a substantial likelihood of success on the merits and the other requirements for the appointment of a receiver.

Indeed, violation of a court order may in some cases warrant punishment in some form, such as a fine, but the court cannot use its equitable powers or its authority under § 78u(d)(5) for punitive purposes. *See Liu*, 140 S. Ct. at 1940 (equitable power of the court "historically excludes punitive sanctions"). GPB's argument to the contrary is legally incorrect. *See* GPB Br. at 22 (asserting that "the power of a court to make an order carries with it the equal power to punish for disobedience of that order" (quoting *In re Debs*, 158 U.S. 564, 594 (1895))). Liquidating and distributing a defendant's company's entire asset base before a single allegation has been proven at trial is certainly punitive.

### B. Gentile Did Not Cause GPB to Violate the Amended Monitor Order.

Gentile also did not cause GPB to violate the AMO. It is undisputed that within twenty-four hours after the Monitor notified GPB on May 31, 2022 of his "belief" that the Appointments and Amendments violated the AMO, and that GPB had ten business days to "cure," GPB rejected the Appointments and Amendments. Defs. Br. at 17. Indeed, on June 1, 2022, GPB's CEO and sole manager, Robert Chmiel, advised that "the

26

Company (i) does not recognize you as validly appointed managers and (ii) does not accept the amended and restated limited liability agreement as being validly adopted," and he refused to engage in "[a]ny Company meeting involving managers . . . until all legal actions involving this subject matter are resolved." *Id.* (quoting Dkt. No. 168-3 at 2).[12]

It is also undisputed that the Monitor declined to approve the Appointments and Amendments and later represented to the District Court that the "purported managerial appointments were never approved by the Monitor" and were not "deemed properly appointed under the [AMO]." *Id.* (quoting Dkt. No. 114 at 4, 6). Neither GPB nor the Monitor ever recognized the proposed new managers or took any action at their request, and, accordingly, no amendments to the Company's Operating Agreement took effect. This explains why GPB never paid, nor arranged to pay, the managers that Gentile proposed to

---

[12] The SEC appears at times to acknowledge that GPB did not violate the AMO, as required for the SEC to seek appointment of a receiver under Paragraph 21 of the AMO, as its brief repeatedly alleges that *Gentile* violated the AMO—which is inadequate under Paragraph 21 of the AMO. *See* SEC Br. at 26 ("Gentile violated the [AMO]"); *accord id.* 35 n.9; *see also* A-193 ¶ 21.

appoint in May 2022. *See* A-694 (GPB acknowledging that "the Gentile Managers were never recognized or compensated by the Company").[13]

The District Court also erred in assuming that *only* Gentile could cure the purported violation. *See* SPA 21–22 (noting that Gentile "alone was able to do so"). In contrast, the Monitor believed GPB was responsible for curing the purported breach of the AMO. The Monitor directed notice of the purported breach of the AMO to GPB—not Gentile—and, in response, GPB rejected the Appointments and Amendments. The Monitor, relying on GPB's rejection, further affirmed his belief that any such violation had been cured by repeatedly representing to the District Court that the Appointments and Amendments were unapproved and ineffectual. Thus, the SEC's argument that Gentile failed to cure, SEC Br. at 3, misapprehends that GPB, as the alleged violator of the AMO, was exclusively capable of curing and did cure any alleged violation by rejecting the Appointments

---

[13] The SEC appears to concede the ineffectiveness of the Appointments and Amendments, asserting that "Gentile should not be allowed to benefit from his failure to interfere effectively with GPB Capital …." SEC Br. at 34.

and Amendments. And the AMO made clear that only a failure to cure by GPB enabled the SEC to move for a receivership. A-193 ¶ 21.

Both the SEC's and GPB's mischaracterization of the resignation of the managers, especially the timing thereof, also misses the mark. Because GPB and the Monitor rejected the Appointments and Amendments, there was no reason for the managers to submit formal letters of resignation. And the fact that the managers subsequently submitted letters of resignation left no doubt that the Appointments and Amendments were ineffectual, and posed no risk to GPB's assets, before the District Court appointed a receiver over GPB months later.

## CONCLUSION

The SEC invites this Court to upend more than a century of equity practice by ruling, for the first time ever, that a district court can appoint a receiver over a defendant's company—a receiver who has stated his intent to liquidate all company assets before a trial on the merits can occur, rather than maintain the status quo—without a showing of likelihood of success on the merits, a clear necessity, or an imminent risk of harm to the company's assets, and with alternative legal remedies

29

available to address any risk of purported harm. The Court should reject that invitation and reverse the Orders.

Dated: April 12, 2024

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Adriana Riviere-Badell*
Adriana Riviere-Badell
Matthew I. Menchel
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Tel.: (305) 967-6100
Fax: (305) 967-6120
Adriana.Riviere-
Badell@kobrekim.com
Matthew.Menchel@kobrekim.com

**MCLAUGHLIN & STERN, LLP**

/s/ *Daniel J. Horwitz*
Daniel J. Horwitz
Jonathan R. Jeremias
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
Fax: (212) 448-0066
DHorwitz@ mclaughlinstern.com
JJeremias@mclaughlinstern.com

*Attorneys for Defendant-Appellant David Gentile*

**ARENTFOX SCHIFF LLP**
/s/ *Michael Dearington*
Michael Dearington
1717 K Street NW
Washington, D.C. 20006-5344
Tel.: (202) 857-6000
Fax: (202) 857-6395
Michael.Dearington@afslaw.com

**ARENTFOX SCHIFF LLP**
/s/ *Glenn C. Colton*
Glenn C. Colton
1301 Avenue of the Americas, 42nd
Floor
New York, NY 10019
Tel.: (212) 484-3900
Fax: (212) 484-3990
Glenn.Colton@afslaw.com

*Attorneys for Defendants-Appellants*
*Jeffry Schneider and Ascendant Capital, LLC*

30

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32 of the Federal Rules of Appellate Procedure, Daniel J. Horwitz, a partner at McLaughlin & Stern LLP, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 6,479 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(6).

*/s/ Daniel J. Horwitz*