# 23-08010-CV (L)

## 23-8035-CV (CON)

IN THE

# United States Court of Appeals
# for the Second Circuit

---

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

GPB CAPITAL HOLDINGS, LLC,

*Defendant-Appellee,*

V.

ASCENDANT CAPITAL, LLC; JEFFRY SCHNEIDER; DAVID GENTILE,

*Defendants-Appellants,*

ASCENDANT ALTERNATIVE STRATEGIES, LLC; JEFFREY LASH,

*Defendants,*

U.S. ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT OF NEW YORK,

*Intervenor.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## DEFENDANT-APPELLANT DAVID GENTILE'S PETITION
## FOR PANEL REHEARING AND REHEARING EN BANC

*(For Appearances See Inside Cover)*

MATTHEW I. MENCHEL
ADRIANA RIVIERE-BADELL
KOBRE & KIM LLP
201 South Biscayne Boulevard,
Suite 1900
Miami, Florida 33131
(305) 967-6100

*Attorneys for Defendant-Appellant David Gentile*

# TABLE OF CONTENTS

**RULE 40(B) STATEMENT AND INTRODUCTION** ...........................1

**BACKGROUND** .........................................................................5

**REASONS FOR GRANTING PANEL REHEARING OR REHEARING EN BANC** ............................................................9

    I. The Decision Contravenes Circuit Precedent Concerning the Distinction Between a Shareholder and His Company. .....................9

      a.   Gentile's Actions, Which Were Promptly Rejected by GPB and the Monitor, Cannot be Imputed to GPB to Find a Violation of the AMO and Cannot Support the Receivership......................................9

      b.  GPB's Consent to the AMO Cannot Be Imputed to Gentile Simply Because He Was the Company's Majority Shareholder. ..... 16

**CONCLUSION** ...........................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
  122 F.3d 130 (2d Cir. 1997).........................................................3, 11, 17

*Berger v. Heckler*,
  771 F.2d 1556 (2d Cir. 1985).................................................................18

*Burrell v. United States*,
  467 F.3d 160 (2d Cir. 2006)...................................................................16

*City of New York v. Golden Feather Smoke Shop, Inc.*,
  597 F.3d 115 (2d Cir. 2010)...................................................................10

*Geller v. Branic International Realty Corp.*,
  212 F.3d 734 (2d Cir. 2000)...................................................................18

*In re Tronox Inc.*,
  855 F.3d 84 (2d Cir. 2017)........................................................11, 14, 15

*Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*,
  301 F.3d 50 (2d Cir. 2002).............................................................4, 16, 17

*Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*,
  808 F.2d 982 (2d Cir. 1987)..............................................................3, 11

*Schwan-Stabilo Cosms. GmbH & Co. v. Pacificlink Int'l Corp.*,
  401 F.3d 28 (2d Cir. 2005)..................................................................4, 17

*S.E.C. v. Unifund SAL*,
  910 F.2d 1028 (2d Cir. 1990).............................................................3, 10

## RULE 40(B) STATEMENT AND INTRODUCTION

This case involves the District Court's unprecedented seizure of Appellant David Gentile's company GPB Capital Holdings, LLC ("GPB") at the request of the Securities & Exchange Commission ("SEC"), through imposition of a receivership, despite finding that the SEC's likelihood of success was "unclear." In a decision issued on December 3, 2024 (the "Decision," annexed hereto as Exhibit A), a panel of this Court (the "Panel") affirmed the District Court's order appointing a receiver to oversee and manage GPB—a company in which Gentile was only a majority shareholder at the time—and vacated an earlier stay on that order pending resolution of his appeal.

The Decision justified the District Court's imposition of a receivership over GPB by incorrectly concluding that: (i) the court could exercise its inherent equitable authority to remedy a purported violation of one of its orders—the Amended Monitorship Order ("AMO")—that Gentile had caused GPB to commit and GPB failed to cure; and (ii) Gentile, who was only a majority shareholder of GPB at the time of this purported violation, had somehow consented to be bound by the terms of the AMO even though he was not a party to that order and it

was directed solely at GPB. In so doing, the Decision, on the one hand, improperly attributed Gentile's purported conduct as an individual shareholder to GPB and, on the other hand, improperly imputed GPB's consent to the AMO on to Gentile. By conflating Gentile with GPB, the District Court incorrectly found that GPB had violated the AMO and failed to cure any violation based solely on Gentile's actions, despite the fact that those actions were promptly rejected by GPB, these actions could not be unilaterally imposed on GPB by Gentile without the express approval of the court-appointed monitor, and Gentile did not agree to be bound by the AMO. Pursuant to Federal Rule of Appellate Procedure 40(b)(2), Gentile respectfully petitions the Panel and *en banc* court to rehear this case and vacate the Decision, which conflicts with numerous of this Court's precedents.

In particular, the Decision should be overturned for at least two reasons. *First*, by imputing Gentile's effort to appoint three additional managers and amend its operating agreement (the "A&As") onto the company, the Panel avoided the exceptionally important question of whether the SEC needs to show any likelihood of success on the merits of its claims before a court could impose the drastic remedy of a

receivership. Despite this Court's precedent requiring a "clear" and "substantial" likelihood of success before a court may grant even less extraordinary equitable relief that changes the status quo, *see S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990), the Panel held that the SEC does not have to make *any* such merits showing for a court to appoint a receiver under its equitable power to remedy a violation of a court order and prevent any dissipation of assets that could harm investors.

Instead, the Panel (and the District Court) held that a violation of the AMO was alone sufficient to warrant a receivership solely by attributing Gentile's conduct as majority shareholder to GPB—even though all relevant parties agreed that the order did not enjoin Gentile from taking any action and GPB and its court-appointed monitor were free to and did unequivocally reject Gentile's proposed A&As long before the District Court ruled on the SEC's motion to appoint a receiver. In reaching this conclusion, the Panel ignored this Court's precedent recognizing the separation between an entity and its shareholders, which is only disregarded in circumstances not relevant here, including when a court pierces the corporate veil. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *Puma Indus. Consulting, Inc. v. Daal*

3

*Assocs., Inc.*, 808 F.2d 982, 986 (2d Cir. 1987). Further, while recognizing that a district court can take any "reasonable" action to enforce its own order, the Decision stretched this principle beyond its limits by holding that the District Court could impose a broad receivership in response to any violation supposedly caused by a shareholder even where the purported violation had been independently and timely cured by the company and did not cause it any injury.

*Second*, in finding that Gentile had consented to the terms of an order—the AMO—solely concerning the management of GPB's affairs, the Decision conflicts with this Circuit's longstanding precedent recognizing that a corporation and its shareholders are legally distinct from and therefore not subject to or liable for each other's agreements and independent acts. *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002); *Schwan-Stabilo Cosms. GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28 (2d Cir. 2005). This Court has routinely applied this principle, but the Decision incorrectly held that Gentile somehow "consented to" the AMO between his company and the SEC solely because he was a majority shareholder. Dec. at 10. It is undisputed, however, that Gentile did *not* consent to the

4

AMO: he was neither a party in a personal or representative capacity to the AMO, nor was he in any way involved in the creation of its terms and thus provided no such consent.

Absent rehearing, the Decision will unsettle corporate law in this Circuit and embolden the SEC to bind shareholders and deprive them of their corporate rights through sweeping, unilateral agreements with their companies they neither participated in, negotiated, or were a party to.

## **BACKGROUND**

On February 4, 2021, the SEC sued David Gentile and his company GPB, alleging violations of the federal securities laws. A-27. Shortly after the SEC filed suit, Gentile resigned as CEO of the company so that an interim CEO could run GPB during its litigation with the SEC. A-218. The SEC and GPB then extensively negotiated the AMO. *See generally* A-168. Under the AMO, the Monitor could "approve or disapprove" any GPB decision to (1) retain "any management-level professional or person" or (2) make "any material change to compensation of any executive officer." A-169–170. Further, "[i]f the Monitor believe[d]" GPB was in violation of the AMO by not materially complying with the Monitor's

5

authority to review those decisions, GPB would have ten days to cure the violation. A-193. If GPB did not timely cure the violation, paragraph 21 of the AMO provided that "the [m]onitorship shall convert to a receivership." *Id.* Gentile—who at this time was only a majority company shareholder—was not involved in any negotiations regarding the AMO, did not provide any input regarding their terms, and was not a party in either a personal or representative capacity to the original or amended agreements.[1]

Over a year later, Gentile, with the understanding that, as the SEC itself concedes, the AMO did not "enjoin him from taking any action," A-341, attempted to exercise his rights as GPB's majority shareholder to appoint three additional managers to the company and amend its operating agreement, *i.e.*, the A&As. A-294. Gentile promptly filed a Rule 60(b) motion notifying the District Court of his intended A&As and—for the first time—also proposed amendments to the AMO. *See generally* A-211.

---

[1] Gentile's Brief represented that he "consented . . . to the Monitor's appointment." Br. at 1–2, 9. This only reflected that Gentile stepped down as CEO without interfering with the company's negotiations with the SEC. There is nothing in the record suggesting Gentile participated in, negotiated, or was a party to the AMO.

In response, the Monitor immediately informed GPB that he disapproved of the proposed A&As and considered them in violation of the AMO. A-731. GPB likewise informed Gentile the next day, and within the cure period, that it did not recognize these proposals, Dkt. 168-3 at 2, and declined to take any steps to compensate the proposed managers. Despite GPB's rejection of the proposed A&As within the cure period, the SEC then moved to convert the monitorship into a receivership, arguing that Gentile caused GPB to violate the AMO. A-272. The District Court thereafter granted the SEC's motion and imposed a receivership, despite the SEC declining to make any argument that it could demonstrate a likelihood of success on the merits and, as a result, finding that the SEC's probability of success was "unclear." *See* A-272–288; SPA-30.

The Panel affirmed the District Court's imposition of a receivership on two grounds.

*First*, the Decision ignored longstanding Circuit precedent requiring the SEC to demonstrate a "clear" and "substantial" likelihood of success and instead held that a district court may exercise its inherent authority to enforce its own order—namely, the AMO—to appoint a

receiver. Dec. at 11. The Panel failed to recognize, as a threshold matter, that there was in fact no violation of the AMO. Indeed, the Panel, contrary to settled law, incorrectly held there was a violation by conflating Gentile's and GPB's actions and holding that those actions had somehow caused GPB to violate the AMO and that GPB had failed to timely cure the violation. This was despite the fact that GPB (as well as the Monitor) had immediately rejected Gentile's proposed A&As, which he made after stepping down as CEO of the company and while acting only in his role as a majority shareholder. Under these circumstances, the Panel erred in concluding that the District Court's imposition of a broad receivership was a "reasonable action" needed to secure compliance with the AMO.

*Second*, the Panel held that the AMO allowed the District Court to impose a receivership because Gentile "consented to" the AMO, including paragraph 21 (which provided for an automatic conversion of the monitorship to a receivership in the event of the company's failure to cure a violation within ten days), and that he, again, caused GPB to violate that order through his attempted A&As. Dec. at 10. The Panel's perfunctory holding did not cite any evidence that Gentile in fact

8

"consented to" the AMO—because there is none. *See id.* Instead, the Panel seemingly concluded that Gentile automatically consented to the AMO solely by virtue of his status as majority shareholder of the company to which the order was directed. *Id.*

### REASONS FOR GRANTING
### PANEL REHEARING OR REHEARING EN BANC

## I. The Decision Contravenes Circuit Precedent Concerning the Distinction Between a Shareholder and His Company.

Both of the Decision's rationales—that Gentile's proposed A&As caused a violation of the AMO and that he consented to the AMO—rely on the same fundamental error. Contrary to established Circuit law, the Decision wrongly imputed Gentile's actions to GPB and, conversely, GPB's consent to the AMO to Gentile. Without a rehearing, the Decision sows confusion amongst the district courts regarding foundational principles of corporate separateness and shareholder liability.

a. Gentile's Actions, Which Were Promptly Rejected by GPB and the Monitor, Cannot be Imputed to GPB to Find a Violation of the AMO and Cannot Support the Receivership.

The Panel wrongly held that, contrary to clear Circuit precedent, the SEC was not required to establish its likelihood of success on the merits and, instead, the District Court could impose a broad receivership in response to an illusory violation of the AMO (one based entirely on

9

shareholder proposals that GPB quickly rejected).

The Second Circuit has previously held that where the SEC seeks mandatory equitable relief—meaning, relief that, like a receivership, "accomplishes significantly more than preservation of the status quo"—that agency must demonstrate a "clear" and "substantial" likelihood of success before a court can grant that relief. *Unifund*, 910 F.2d at 1039; *accord City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 121 (2d Cir. 2010). For example, this Court has held that the SEC must "make a substantial showing of likelihood of success" before a district court can grant an injunction prohibiting a defendant from committing future violations of certain securities laws because that relief has "grave consequences"—for example, a possible future contempt finding—and accomplishes more than preserving the status quo. *See Unifund*, 910 F.2d at 1040.

Given the District Court's finding that the SEC's likelihood of success was "unclear," that should have doomed the receivership, which is even more extraordinary and has even graver consequences than an injunction simply prohibiting future violations of the securities laws. *See id.* at 1039. Instead, the Panel excused the SEC's failure to demonstrate

10

a likelihood of success by relying on *In re Tronox Inc.*, 855 F.3d 84 (2d Cir. 2017), to hold that the District Court could impose the receivership to remedy the purported violation of the AMO. Dec. at 8. The Decision, however, ignored that Gentile could not, and did not, cause a violation of the AMO. And, even assuming a violation occurred, it did not warrant the drastic remedy of a receivership.

As a threshold matter, the Decision (like the District Court) wrongly held that Gentile's unilateral actions somehow caused a violation of the AMO, that GPB failed to timely cure any violation, and that there was a risk of GPB's assets being dissipated by improperly imputing Gentile's actions to GPB despite the fact he is separate and distinct from the company and had stepped down for a leadership role at all relevant times.

It is a basic principle of corporate law that "the law deals with a corporation as an entity distinct from its shareholders." *Puma*, 808 F.2d at 986. Courts only disregard that distinction in specific circumstances— for example, when a corporation acts as an "alter ego" of the shareholder such that the court can reverse veil pierce and hold a corporation responsible for its shareholder's actions and liabilities. *Cf. Utah Energy*,

11

122 F.3d at 134 (discussing reverse veil piercing under New York law). Before a court can do so, it must be shown that "the owner exercised complete domination over the corporation" and "that such domination was used to commit a fraud or wrong that injured the party." *See id.*

Here, the Panel had no basis for ignoring the well-established distinction between Gentile and GPB when it held that Gentile, a party not bound by the AMO, violated it. Far from exercising complete domination over the corporation, Gentile had voluntarily stepped down from the company and ceded *all* control over its day-to-day operations to interim company management and the Monitor. He then—understanding that in his personal capacity he was not a party to the AMO and it did not "enjoin him from taking any action"—attempted to exercise his rights solely as majority shareholder of the company subject to interim management and Monitor approval. A-341.

While Gentile's notice of the A&As did state that they were "effective as of the date hereof" and would remain effective "until [the new managers'] resignation or removal," Dec. at 11 (citing Dkt. 168-10 at 6), the company (as well as the Monitor) immediately rejected Gentile's attempts to, among other things, appoint new managers and amend the

12

operating agreement, which dispels any notion that Gentile and GPB were acting as one and the same. Indeed, rather than circumvent the Monitor's authority, his rejection was fully consistent with the provision of the AMO providing that the Monitor must approve or disapprove retention and compensation-based decisions for management and executive-level positions and with the fact that Gentile and the GPB are separate and distinct entities. A-169–170. As a result, Gentile could not, and did not, cause GPB to violate the AMO.

In the same vein, the Decision's references to (i) the District Court's finding of an "imminent risk" that GPB's assets would be dissipated in part because of the salary of Gentile's recommended managers, and (ii) the Magistrate Judge's finding that the A&As caused a "fracture in GPB's leadership" that interfered with the Monitor's work to "move forward in a manner that is productive to [GPB's] investors" were each based on a faulty premise. Dec. at 10–13. Indeed, the Decision ignored that, pursuant to his independent ability to evaluate Gentile's changes, the Monitor and, in turn, GPB *rejected* these appointments outright and *never paid* the managers anything. The Decision therefore had no basis to hold that this immediate rejection of the A&As could somehow affect,

13

let alone put at risk, GPB's assets.[2]  Nor could the illusory and rejected appointments prevent the Monitor from working to ensure GPB was productive to investors.  Because the managers never exercised any authority over GPB, they could not prevent the Monitor from making distributions that, years later, have yet to be made.[3]

Furthermore, even assuming that a violation of the AMO occurred (which it did not), the Decision's reliance on *Tronox* does not excuse the SEC's failure to demonstrate a likelihood of success under these circumstances.  Dec. at 8.  *Tronox* simply allows a district court to "take any *reasonable action* to secure compliance" with its orders.  *See* 855 F.3d at 112–13 (emphasis added) (holding it was reasonable for the district court to order plaintiffs to dismiss state court claims where they

---

[2] In fact, it was the Monitor's premature and, at times, fire sale of GPB's assets—often in contradiction of the investment thesis that motivated their purchase—along with the Monitor's millions of dollars of fees that constituted an actual and imminent risk of dissipation of GPB's assets.

[3] To be clear, Mr. Gentile has repeatedly requested and emphatically supported the creation and implementation of a reasonable and prudent plan (that takes into account GPB's contingencies and liabilities) to return funds to investors during the pendency of any receivership-related litigation.  *See, e.g.*, A-401–404, A-520–521; A-557–560; A-734–737. Nonetheless, despite being empowered to make distributions to investors under the AMO, *see* A-189, GPB and the Monitor have failed to even propose and make available a distribution plan.

14

continued to pursue claims barred by a litigation injunction). It is patently unreasonable to impose a receivership where, like here, any conceivable "violation" of the AMO had already been remedied by GPB's unilateral and independent choice to reject the changes, there was no risk that GPB's assets would be dissipated, and the District Court explicitly found the SEC failed to demonstrate its entitlement to a receivership.[4]

In sum, the Decision disregards Circuit precedent requiring a substantial likelihood of success on the merits by incorrectly holding that Gentile, as a mere shareholder, could cause GPB to violate the AMO and that this purported violation—which had in any event ceased to exist by the time the District Court ruled on the SEC's motion—offered the SEC a complete end run around the required showing for imposition of a receivership. At a minimum, a remand is required for the District Court to determine in the first instance whether the SEC can make that showing.[5]

---

[4] Moreover, the parties in *Tronox* were given several opportunities to comply with the district court's orders. *See id.* Here, the District Court did not provide Gentile or GPB any opportunity to remedy the purported violation, which further demonstrates the unreasonableness of imposing the receivership to remedy any already-cured violation.

[5] While the Decision took judicial notice of Gentile's subsequent convictions in the related criminal action, the District Court was required

b.  GPB's Consent to the AMO Cannot Be Imputed to Gentile Simply Because He Was the Company's Majority Shareholder.

Separate from the District Court's inherent authority to remedy a violation of its own order, the Decision incorrectly held that the District Court could impose a receivership under the AMO because Gentile consented to the order simply by virtue of his role as GPB's majority shareholder and by not objecting to the AMO.  Dec. at 10.  Once again, this cannot be squared with Circuit precedent recognizing the legal distinction between a corporation and its shareholders.[6]

An owner is generally not personally bound by agreements entered into by his company unless he intended to be.  *See, e.g.*, *Thomsen Const.*,

---

to weigh the SEC's evidence and independently determine whether it supported imposing a receivership.  Gentile's non-final convictions cannot alone satisfy this burden.  *See Burrell v. United States*, 467 F.3d 160, 163–64 (2d Cir. 2006).  Moreover, a verdict in the criminal case does not establish a likelihood of success in this case because, among other reasons, the two actions involve different causes of action with different elements and, ultimately, different defenses.  *Compare* A-27, *with* Crim. D. Ct. Dkt. l.

[6] The Decision's affirmance of the receivership based on the AMO's language also fails because it only allowed the District Court to convert the monitorship into a receivership if GPB failed to cure any violation of the AMO within ten days.  A-193.  As explained above, there was no violation of the AMO, and if there was, GPB timely cured it by rejecting the A&As.

301 F.3d at 53; *Pacificlink*, 401 F.3d at 35. And, as explained above, courts only disregard corporate distinction to hold an owner liable—or a corporation liable for the acts of its owner—when the corporation was an alter ego and the corporate veil can be pierced. *See Utah Energy*, 122 F.3d at 134.

The Panel turned those well-established rules on their heads. Because Gentile was only a GPB shareholder when the company and the SEC agreed to the AMO, the Panel should have presumed Gentile was *not* personally bound by them. *See Thomsen Const.*, 301 F.3d at 53. Indeed, there is no evidence that Gentile intended to be bound by either order. Gentile stepped down as CEO of GPB and new management had already been appointed by the time the company and the SEC agreed to the AMO. *Cf. id.* (looking to the position of the signatory when determining whether he was personally bound by company's agreement). It was that new management—*not* Gentile—who negotiated, agreed to, and proposed the AMO. *See id.* And Gentile never acknowledged he was personally bound by the AMO—even the SEC agreed that "Gentile was not a party to the [AMO] in either a personal or a representative capacity." *See* A-341; *Pacificlink*, 401 F.3d at 35. In the absence of any

17

evidence that Gentile agreed or otherwise intended to be bound by the AMO, the Panel wrongly imputed GPB's agreement to the AMO on to Gentile, and the cases cited in the Decision—*Berger v. Heckler*, 771 F.2d 1556, 1567 (2d Cir. 1985) and *Geller v. Branic International Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000)—for the proposition that "[i]f a party has previously 'consented to the relief provided' they cannot challenge the court's subsequent imposition of that relief," Dec. at 9, are thus entirely inapposite. In sum, Gentile did not agree to be bound by the AMO, and therefore, as explained above, his actions could not violate it or cause GPB to violate it.

\*     \*     \*

Without a rehearing, the Decision will signal to district courts in this Circuit that shareholders and their corporations no longer enjoy the legal distinction between each other—instead, they may be bound by, and liable for, each other's agreements and independent actions. Most pressingly, the Decision paves the way for the SEC to strip shareholders of *all* their rights by penning a unilateral agreement with their company that the SEC believes does not "enjoin [the company's shareholders] from taking any action," A-341, but then turning around and arguing that even

18

the exercise of the most basic shareholder powers justifies a receivership.

## CONCLUSION

For these reasons, Gentile respectfully requests that the Court grant this Petition for Rehearing or Rehearing *En Banc*.

Dated: January 17, 2025

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Adriana Riviere-Badell*
Adriana Riviere-Badell
Matthew I. Menchel
201 South Biscayne Boulevard
Suite 1900
Miami, FL 33131
Tel.: (305) 967-6100
Fax: (305) 967-6120
Adriana.Riviere-Badell@kobrekim.com
Matthew.Menchel@kobrekim.com

*Attorneys for Defendant-Appellant*
*David Gentile*

19

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32 of the Federal Rules of Appellate Procedure, Adriana Riviere-Badell, a partner at Kobre & Kim LLP, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 3,898 words and complies with the typeface requirements and length limits of Rule 40(d)(3)(A).

*/s/ Adriana Riviere-Badell*
Adriana Riviere-Badell

## <u>MOTION FOR STAY PENDING</u>
## <u>A PETITION FOR A WRIT OF CERTIORARI</u>

Pursuant to Federal Rule of Appellate Procedure 41(d)(1), in the event neither the Panel or *en banc* Court grant a rehearing of this case, Gentile moves for a 90 day stay of the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.

# EXHIBIT A

23-8010-cv (L)
*SEC v. GPB Capital Holdings, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

       At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand twenty-four.

PRESENT:
          SUSAN L. CARNEY,
          JOSEPH F. BIANCO,
          WILLIAM J. NARDINI,
             *Circuit Judges.*
_____

UNITED STATES SECURITIES & EXCHANGE
COMMISSION,

               *Plaintiff-Appellee,*

      v.                             23-8010-cv (L); 23-8035-cv (Con)

GPB CAPITAL HOLDINGS, LLC,

               *Defendant-Appellee,*

      v.

ASCENDANT ALTERNATIVE STRATEGIES,
LLC, JEFFREY LASH,

               *Defendants,*

ASCENDANT CAPITAL, LLC, JEFFRY
SCHNEIDER, DAVID GENTILE,

*Defendants-Appellants,*

UNITED STATES ATTORNEY'S OFFICE FOR
THE EASTERN DISTRICT OF NEW YORK,

*Intervenor.\**

---

FOR PLAINTIFF-APPELLEE:

MORGAN BRADYLYONS, Bankruptcy Counsel
(Megan Barbero, General Counsel, Michael
A. Conley, Solicitor, Samuel B. Goldstein,
Counsel to the General Counsel, Daniel
Staroselsky, Assistant General Counsel, *on
the brief*), Securities and Exchange
Commission, Washington, District of
Columbia.

FOR DEFENDANT-APPELLEE:

GLENN A. KOPP (Joseph De Simone, Nicolas
E. Rodriquez, *on the brief*), Mayer Brown
LLP, New York, New York.

FOR DEFENDANTS-APPELLANTS:

MICHAEL F. DEARINGTON (Glenn C. Colton,
*on the brief*), ArentFox Schiff LLP,
Washington, District of Columbia, and New
York, New York, *for* Ascendant Capital,
LLC and Jeffry Schneider.

ADRIANA RIVIERE-BADELL (Matthew I.
Menchel, *on the brief*), Kobre & Kim LLP,
Miami, Florida, (Daniel J. Horwitz, and
Jonathan R. Jeremias, *on the brief*),
McLaughlin & Stern, LLP, New York, New
York, *for* David Gentile.

Appeal from the orders of the United States District Court for the Eastern District of New

York (Margo K. Brodie, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**

---

\* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent
with the caption on this order.

2

**DECREED** that the orders of the district court, entered on December 7, 2023, are **AFFIRMED** and the stay is **VACATED**.

Defendants-Appellants Ascendant Capital, LLC ("Ascendant Capital"), Jeffry Schneider, and David Gentile appeal from the district court's orders appointing a receiver and imposing a litigation injunction. Appellants argue the district court erred in converting the court-ordered monitorship of Defendant-Appellee GPB Capital Holdings, LLC ("GPB") into a receivership. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

GPB is an asset management firm for which Gentile served as CEO and sole manager until the complaint was filed, at which point he resigned and non-party Robert Chmiel replaced him. Gentile, however, continued to own 99% of the company's membership interests. Schneider is the sole owner of Ascendant Capital, which served as a GPB branch office and placement agent. The remaining non-party Defendants are also associated with GPB.

On February 4, 2021, Plaintiff-Appellee United States Securities and Exchange Commission (the "SEC") initiated the instant action against the Defendants-Appellants, GPB, Ascendant Alternative Strategies, LLC ("Ascendant Strategies"), and Jeffrey Lash for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940, arising out of an alleged long-running fraud scheme involving the misuse of investor funds and manipulation of financial statements. The complaint alleged, "[s]ince its founding in 2013, GPB Capital has raised in excess of $1.7 billion for at least five limited partnership funds from approximately 17,000 retail investors nationwide, approximately 4,000 of whom are seniors"

3

and "[n]early all of the $1.7 billion raised is still at risk."  Joint App'x at 28.

Shortly after filing the complaint, the SEC sought a court-ordered monitorship over GPB, to which GPB and Gentile consented and no other party objected.  The district court granted this request and entered an order, which appointed Joseph T. Gardemal III as GPB's independent monitor.  Upon an unopposed motion, the monitorship was later amended by the Amended Monitor Order ("AMO"), which affirmed the monitor's "authority to approve or disapprove" of, *inter alia*:  (1) "any retention . . . of any management-level professional or person . . ., subject to an acceptable procedure agreed to with the Monitor" and (2) "any material change to compensation of any executive officer, affiliate, or related party . . . ."  *Id.* at 188–89.  The AMO further provided that the monitor would notify GPB if the company was not in material compliance with the AMO's terms, and, if GPB failed to cure the violation within ten business days, the AMO stated, "upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership."  *Id.* at 192–93, ¶¶ 20, 21.

On March 10, 2021, upon motion from Intervenor the United States Attorney's Office for the Eastern District of New York and with the consent of the parties, the district court stayed this civil action pending the conclusion of a related criminal case and grand jury investigation.[1]  The district court, however, explicitly excluded from the stay "any work performed by the Monitor,

---

[1]  "This Court has discretion to determine whether to take judicial notice of documents that are not part of the record on appeal."  *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021).  Accordingly, we take notice that Gentile, Schneider, and Lash were indicted on multiple counts of securities fraud, wire fraud, and conspiracy in connection with their management of GPB.  *See generally United States v. Gentile*, No. 21-cr-54 (RPK) (PK) (E.D.N.Y. Jan. 29, 2021) ("*Gentile* Criminal Dkt."), ECF No. 1.  Lash pleaded guilty and, after a jury trial, Gentile and Schneider were convicted on all counts.  *See Gentile* Criminal Dkt., ECF Nos. 218, 472–73.  Gentile and Schneider have filed several post-trial motions, which are now pending before the district court, and all three defendants are awaiting sentencing.  *See Gentile* Criminal Dkt., ECF Nos. 487–90.

matters related to the Monitorship, or any future expansion of the Monitorship." *Id.* at 11.

On May 27, 2022, Gentile informed GPB, through GPB's interim CEO and manager Chmiel, that Gentile "ha[d] appointed three new, additional Managers to direct GPB" pursuant to his rights under the operating agreement. Dist. Ct. Dkt. No. 168-10 at 2. Gentile purported to have effectuated these actions and resolutions pursuant to Delaware law and GPB's LLC Agreement based upon his "written consent" as the "Member holding 99% of the Distribution Percentage of GPB." *Id.* at 2, 6. Gentile told Chmiel that he "expect[ed] that [the new managers] w[ould] be given full and immediate access to GPB," and that Chmiel "should immediately cease any and all actions taken or to be taken in the capacity of a Manager," as he now needed a "consensus" from the new managers. *Id.* at 2. Gentile also provided Chmiel a copy of his "Action by Written Consent of the Member Holding 99% of the Distribution Percentage of GPB Capital Holdings, LLC," which stated that, "effective as of the date hereof, [the new managers] are appointed to serve as Managers of the Company until their resignation or removal." *Id.* at 6. With approval from the new managers, Gentile then amended GPB's operating agreement to, *inter alia*, provide compensation arrangements for the new managers of up to $400,000 a year and allow Gentile to unilaterally change GPB's operating agreement in the future without manager approval.

On May 31, 2022, the monitor informed GPB and Gentile that he considered Gentile's May 27, 2022 actions on behalf of GPB to be a violation of the AMO provisions governing monitor approval of management retention and changes to executive compensation. That same day, Gentile filed a motion in the district court to amend the AMO to, *inter alia*, narrow the scope of the monitor's authority and prevent the disposition of GPB's assets pending "a strategic assessment by new management appointed by Mr. Gentile." Joint App'x at 215. Although GPB viewed

Gentile's appointment of the new managers as invalid in light of the AMO, the managers did not resign, nor did Gentile remove them, within ten business days of notice from the monitor. The amendments to GPB's operating agreement also were not withdrawn or amended within that ten-day timeframe.

The SEC subsequently filed a motion, supported by the monitor and GPB itself, to convert the monitorship into a receivership and enjoin all litigation to consolidate the claims against GPB and its affiliates. On July 28, 2023, United States Magistrate Judge Vera M. Scanlon issued a Report and Recommendation ("R&R"), recommending that the district court grant the SEC's motion for a receivership and deny Gentile's motion to amend the monitorship. On December 7, 2023, over the objections of Gentile, Schneider, and Ascendant Capital, the district court reached the same conclusion as that proposed in the R&R, converted the monitorship into a receivership, and imposed a litigation injunction. *See generally SEC v. GPB Cap. Holdings, LLC*, No. 21-CV-583 (MKB) (VMS), 2023 WL 8468467 (E.D.N.Y. Dec. 7, 2023). The district court also issued an order setting forth the terms of the receivership and injunction. Gentile, Schneider, and Ascendant Capital timely appealed and moved to stay the orders pending appeal. The SEC did not oppose the stay request, and we granted it on May 14, 2024. On August 30, 2024, the SEC filed a motion to lift the stay, which Appellants opposed.

## DISCUSSION

"[A] district court's decision to appoint a . . . receiver may be disturbed on appeal only if the district court has abused its discretion." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or

(3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks and citation omitted). Mixed questions of law and fact are reviewed for clear error when predominantly factual but *de novo* when predominantly legal. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

"[C]ourts have consistently held that [the] power [to appoint receivers] exists where necessary to prevent the dissipation of a defendant's assets pending further action by the court." *Am. Bd. of Trade*, 830 F.2d at 436 (internal citation omitted); *see also Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (explaining that receivers "help preserve the status quo," "conserve the existing estate," and "marshal the assets of the defendant" (internal quotation marks and citations omitted)). Indeed, Section 21(d)(5) of the Securities Exchange Act of 1934 broadly provides: "In any action or proceeding brought or instituted by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Moreover, even before the enactment of this provision, and in the "absence of explicit statutory authority, . . . we repeatedly have upheld the appointment of . . . receivers to effectuate the purposes of the federal securities laws." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972); *see id.* (explaining that such appointment is an "appropriate exercise by the district court of its equity powers"); *SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("There is no question that district courts may appoint receivers as part of their broad power to remedy violations of federal securities laws.").

7

In addition, we have held that "[a] court can take any reasonable action . . . to secure compliance [with a court order], and the scope of a district court's equitable powers to remedy past wrongs is broad." *In re Tronox Inc.*, 855 F.3d 84, 112 (2d Cir. 2017) (internal quotation marks and citation omitted). "The court's choice of how to enforce the order is reviewed for abuse of discretion." *Id.*

Here, the district court "convert[ed] the monitorship into a receivership pursuant to the terms of the [AMO] based on GPB's violations of the order, caused by Gentile's actions, and GPB's failure to cure the violations." *GPB Cap. Holdings*, 2023 WL 8468467, at *6. Appellants raise several challenges to the district court's exercise of its discretion in reaching that determination.[2] We find each of those arguments unpersuasive.

First, Appellants assert that the AMO does not give the district court the authority to convert the monitorship into a receivership absent independent findings of "a 'clear' and 'substantial' likelihood of success on the merits—both as to the alleged securities law violations and risk of recurrence—" and "a clear showing that an appointment of a receiver was necessary." Appellants' Br. at 24–25. As set forth below, we conclude that the district court did not abuse its discretion in using its equitable powers to convert the monitorship into a receivership, pursuant to the mandatory language contained in Paragraph 21 of the AMO, to remedy the violation of the AMO, without additional determinations.[3]

---

[2] On appeal, Appellants do not challenge the imposition of the litigation injunction.

[3] Because we affirm on this ground, we need not address whether a "likelihood of success" determination would have been required for this type of receivership if the district court had relied only upon its statutory and equitable power to convert the monitorship into a receivership under the federal securities laws. *See* § 78u(d)(5); *see also Byers*, 609 F.3d at 92. We also need not address whether a "clear necessity"

If a party has previously "consented to the relief provided," they cannot challenge the court's subsequent imposition of that relief. *Berger v. Heckler*, 771 F.2d 1556, 1567 (2d Cir. 1985). In *Berger*, for instance, we explained that prior cases requiring "injunctive relief [to] be no more burdensome to the defendant than necessary . . . are not . . . governing where . . . the defendant consented to the [injunctive] relief provided." *Id.* (citation omitted). We reached a similar conclusion in *Geller v. Branic International Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000), in which a district court ordered a settlement agreement which provided that the case would be sealed. Despite this agreement, the district court subsequently declined to seal on the ground that the parties had failed to show "good cause," as traditionally required under Second Circuit precedent. *Id.* We vacated that decision, holding that, once the order was entered, "discretion of th[e] breadth [exercised by the district court] no longer exist[ed]." *Id.* Ultimately, "[t]he district court has not only the power, but the duty to enforce [a] stipulation which it ha[s] approved," *Sanchez v. Maher*, 560 F.2d 1105, 1108 (2d Cir. 1977), unless it would be "manifestly unjust" to do so, *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990). Indeed, even if a private agreement which has not been adopted by a court "mandates the appointment of a receiver" upon a certain condition, the parties are "entitled to the appointment of a receiver regardless of proving the necessity for the appointment." *Naar v. I.J. Litwak & Co.*, 688 N.Y.S.2d 698, 699 (2d Dep't 1999);[4] *see also Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (explaining

---

determination would have been required under those circumstances or whether the district court's statement that "given the extreme circumstances of this case, [the court] finds that the requested relief is merited" would have satisfied that requirement. *GPB Cap. Holdings*, 2023 WL 8468467, at *15.

[4] *Naar* is instructive here because an "agreement of the parties is to be construed according to principles governing construction of contracts in general," *Sanchez*, 560 F.2d at 1108 (citations omitted), and "the

9

that even an agreement stating that a party "may" apply for a receiver "strongly supports the appointment of a receiver").

Here, GPB, as the subject of the monitorship, as well as Gentile, as the majority owner of GPB, consented to the terms of the AMO, which explicitly provided in Paragraph 21, without limitation, that the relief for an uncured violation of the monitorship "shall" be a receivership. Moreover, none of the other defendants, including Schneider and Ascendant Capital, objected to the AMO.  Therefore, under the mandatory language of the AMO, the district court was not required to make any determination of a likelihood of success on the merits, or any other findings, before converting the monitorship into a receivership once it found a violation of the AMO that was not cured in a timely fashion.

In any event, the district court did not rely only upon the mandatory language of the AMO, but rather explained in great detail the various findings that supported the appointment of the receiver for this violation, including, *inter alia*, the following:  (1) "Gentile's actions and sworn testimony have raised significant concerns about [his] credibility"; (2) "there is an imminent risk that the assets of GPB will diminish in value—harming investors—based on Gentile's prior conduct" due, in part, to "Gentile's previous [] appointment of new managers, whose collective compensation could reach over $1.2 million annually to be paid by GPB, and [] attempt to reinstate three terminated executives of a company directly overseen by GPB, whose collective compensation amounts to nearly $1.7 million annually to be paid by GPB"; (3) "legal remedies [such as amending the AMO or a financial penalty] are inadequate"; and (4) "the probability of

---

interpretation of a contract is ordinarily a matter of state law," *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015).

harm to the SEC, GPB, and GPB's investors by denial of the receivership would be greater than the injury to [Schneider, Ascendant Capital, and Gentile]" from the receivership.[5]  *GPB Cap. Holdings*, 2023 WL 8468467, at *13–14 (internal quotation marks and citation omitted).  The district court concluded by emphasizing:  "The Court does not exercise its discretion to convert the monitorship to a receivership lightly, but, given the extreme circumstances of this case, it finds that the requested relief is merited."  *Id*. at *15.  These findings, although not required under the language of the AMO, were well-supported by the record, including the imminent risk of dissipation of assets, and provided a more than sufficient basis for the district court to exercise its equitable power to impose the receivership, as set forth in the AMO, to remedy a violation of its terms.  In short, even in the absence of a finding of a likelihood of success on the merits by the SEC, or other additional findings, the district court acted well within its discretion in converting the monitorship into a receivership based on an uncured violation of the AMO by Gentile, acting on behalf of GPB.

Second, to the extent Appellants challenge the district court's factual determination that the AMO was violated, we find no clear error in that determination.  The written consent submitted by Gentile on May 27, 2022, which appointed the new managers, stated that the appointments were "effective as of the date hereof" and would remain effective "until [the new managers'] resignation or removal."  Dist. Ct. Dkt. No. 168-10 at 6.  It is uncontested that Gentile appointed these new managers, and that they modified the operating agreement to affect their pay, without any prior

---

[5]  Although the district court made these findings in connection with its alternative holding that it was authorized to impose the receivership under the federal securities laws, those findings also support its use of its equitable powers to impose the receivership to remedy a violation of its prior order, namely, the AMO.

approval from the monitor as required under the AMO.  Therefore, the district court correctly determined Gentile's actions, on behalf of GPB, to be a violation of the AMO.

Finally, the district court also did not clearly err in determining that the violations were not cured, as required by the AMO, within ten business days of notice from the monitor on May 31, 2022, that the AMO had been violated.  Indeed, rather than revoke the managers' appointments, obtain their resignations, or withdraw the changes to the operating agreement, Gentile and the new managers continued to assert their legitimacy after receiving the monitor's notice.  For example, in a June 30, 2022 letter to counsel for GPB and the monitor, counsel for the purported new managers continued to describe his clients as "the newly appointed managers of GPB Capital." Joint App'x at 435.  The purported new managers, through counsel, further claimed that "until GPB's current manager confers with the newly appointed managers and allow[s] [them] to participate in GPB governance and management oversight, . . . liquidation of GPB portfolio company assets, distributions of capital, and major decisions that will affect the course of the GPB funds should not take place." *Id*. at 437.  The fact that the monitor objected to the appointment of the new managers and the changes to the operating agreement did not relieve Gentile and the new managers, acting on behalf of GPB to commit the violations, of the obligation under the AMO to cure those violations within the requisite ten business days of receiving notice from the monitor. Instead, the new managers purportedly resigned well after the ten-day window and Gentile claimed to withdraw their appointments only after the R&R was issued on July 28, 2023.  Moreover, as the district court noted, Magistrate Judge Scanlon found that "Gentile's actions had caused 'a fracture in GPB's leadership that is irremediable without court intervention'" and "'on one hand, GPB, under the purview of the Monitor, has been working to address the state in which Mr. Gentile left

it and move forward in a manner that is productive to its investors,' while 'on the other hand, GPB is in the precarious position of operating with three new 'purported' managers and a 'purportedly' amended Operating Agreement, both of which may actively undermine the aforementioned efforts.'" *GPB Cap. Holdings*, 2023 WL 8468467, at *4 (alterations adopted) (quoting R&R, at 26). Thus, there is no basis to disturb the district court's finding that there was a failure to cure the violations of the AMO within ten business days of notice from the monitor.

In sum, we conclude that the district court did not abuse its discretion in converting the monitorship into a receivership pursuant to the explicit terms of the AMO and its inherent equitable power to enforce its prior court order.

The SEC has also filed a motion to lift this Court's stay of the portions of the district court's orders appointing a receiver pending appeal. In light of our resolution of the merits of this appeal, we find that a stay is no longer necessary and grant the motion to lift the stay. *See, e.g.*, *Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 112 (2d Cir. 2006).

\*                    \*                    \*

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's orders and **VACATE** the stay.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13